UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ALLSTATE INSURANCE COMPANY,
ALLSTATE INDEMNITY COMPANY,
ALLSTATE PROPERTY AND CASUALTY
INSURANCE COMPANY, AND
ALLSTATE FIRE AND CASUALTY
INSURANCE COMPANY,

            Plaintiffs,

vs.

LYONS MEDICAL P.C.,
INSTAR MEDICAL P.C.,
STAR MEDICAL IMAGING P.C.,
MAJESTIC MEDICAL IMAGING P.C.,
ROYAL MEDICAL IMAGING P.C.,
MEDICAL MRI P.C.,
JOHN S. LYONS, M.D. a/k/a JACK LYONS, M.D.,
ERIC FELDMANN, M.D.,
JEFFREY BYRNE,
ANTHONY DEGRADI,
GARY MULLAKANDOV,
MGM VENTURES INC, AND
JAVS VENTURES INC.,

            Defendants.

C.A. No._____

---

## **PLAINTIFFS' COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company, and Allstate Fire and Casualty Insurance Company (collectively "Allstate" and/or "Plaintiffs) by their attorneys, King, Tilden, McEttrick & Brink, P.C., allege as follows:

1

## I.     __INTRODUCTION__

1.     This action involves sham medical professional corporations—Majestic Medical Imaging, P.C. ("Majestic Medical"), Lyons Medical, P.C. ("Lyons Medical"), Instar Medical, P.C. ("Instar Medical"), Star Medical Imaging, P.C. ("Star Medical"), Royal Medical Imaging, P.C. ("Royal Medical"), and Medical MRI, P.C. ("Medical MRI") (collectively, "PC Defendants")—that defrauded Allstate by exploiting the generous benefits available under New York's No-Fault laws, which provide medical expense coverage of at least $50,000.00 to persons involved in automobile accidents.

2.     The PC Defendants were controlled by unlicensed persons Jeffrey Byrne ("Byrne"), Anthony DeGradi ("DeGradi"), and Gary Mullakandov ("Mullakandov") (collectively, "Management Defendants").

3.     The PC Defendants operated from facilities controlled by the Management Defendants, which were located at:

- 409 Rockaway Avenue, Brooklyn, New York ("Brooklyn Facility")

- 141-147 East Merrick Road, Valley Stream, New York ("Valley Stream Facility")

- 101-07 Jamaica Avenue, Richmond Hill, New York ("Richmond Hill Facility")

4.     The PC Defendants were part of an interrelated network of diagnostic imaging facilities that served the Management Defendants' financial interests at the expense of patients.

5.     Defendant John S. Lyons, M.D. a/k/a Jack Lyons, M.D. ("Lyons") is a constant thread running through this scheme.

6.     Lyons is the nominal owner of Lyons Medical, Star Medical, Majestic Medical, Royal Medical, and Medical MRI.  Lyons was held out as the sole officer and shareholder of these

PCs, which is false because Lyons ceded control of Lyons Medical, Star Medical, Majestic Medical, Royal Medical, and Medical MRI to the Management Defendants.

7.      Defendant Eric Feldmann, M.D. ("Feldmann") also took part in this scheme as the nominal owner of Instar Medical, which was another PC controlled by the Management Defendants.

8.      The Management Defendants are unlicensed persons, so their control of medical PCs is against New York law because unlicensed persons are not allowed to control medical PCs.

9.      The Management Defendants used other companies they owned, namely Javs Ventures Inc. ("Javs Ventures") and MGM Ventures Inc ("MGM Ventures"), to gain control of the PC Defendants.

10.     The PC Defendants were entered into sham agreements with Javs Ventures and MGM Ventures, the terms of which enabled the Management Defendants to gain control of the professional fees paid on No-Fault claims.

11.     The Management Defendants controlled the Brooklyn Facility, Valley Stream Facility, and Richmond Hill Facility using the same or similar radiologists, technicians, forms, and patients.

12.     The Defendants sought to conceal and avoid detection of their scheme by using several locations and numerous different PCs, which also helped the Defendants take advantage of expanded patient bases and referring providers.

13.     The PC Defendants submitted hundreds of bills to Allstate for diagnostic radiology services—i.e., magnetic resonance imaging ("MRI") studies.  These diagnostic radiology services were purportedly provided to individuals involved in automobile accidents who were eligible for coverage under an insurance policy issued by Allstate.

14.     As detailed below, the PC Defendants were never eligible to collect No-Fault payments from Allstate during the relevant period because they were unlawfully operated, managed, and controlled by unlicensed persons who were not authorized to (a) provide medical services, (b) own or control a professional service corporation authorized to provide medical services, or (c) profit from a professional service corporation organized to provide medical services.

15.     The PC Defendants were also never eligible to collect No-Fault payments in connection with claims where they: (a) split professional fees with unlicensed persons, which is against New York law; (b) billed for unnecessary diagnostic imaging services, which is against New York's No-Fault laws; (c) took part in unlawful referral arrangements and then billed for services that arose from those agreements, which is against N.Y. Pub. Health Law § 238-a; (d) billed for services performed by independent contractors, which is against New York's No-Fault laws; or (e) charged excessive rates for unnecessary services in violation of the applicable fee schedule.

16.     By this Complaint, Allstate brings this action against the Defendants for: (a) violations of the federal Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1961, *et seq.*; (b) common-law fraud; (c) unjust enrichment; and (d) declaratory relief.

17.     This action seeks actual damages of more than $472,791.00, which represent No-Fault payments that the Defendants wrongfully collected from Allstate through the PC Defendants.

18.     Allstate also seeks a declaration pursuant to 28 U.S.C. § 2201 that it is not legally obligated to pay any No-Fault claims submitted to Allstate by (or on behalf of) the PC Defendants.

19.     All of the acts and omissions of the Defendants described throughout this Complaint were undertaken purposely, knowingly, and intentionally.

20.     The Defendants purposely designed and executed this scheme to elicit payment of automobile insurance contract proceeds from Allstate to, or for the benefit of, the Defendants.

21.     In each claim detailed throughout this Complaint and in the accompanying Exhibits, an Allstate automobile insurance contract was the platform upon which the Defendants sought—and in many instances obtained—payment on claims for medical services that were not compensable under New York's No-Fault laws.

22.     The Defendants knew that the patients identified in this Complaint were eligible for insurance coverage pursuant to automobile insurance policies issued by Allstate.

23.     Allstate estimates that the Defendants, in furtherance of this scheme, purposely and knowingly submitted hundreds of bills on behalf of the PC Defendants knowing that the bills were not compensable under New York's No-Fault laws.

## II.     THE PARTIES

### A.     PLAINTIFFS

24.     Allstate Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company, and Allstate Fire and Casualty Insurance Company are corporations duly organized and existing under the laws of the State of Illinois.

25.     Allstate Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company, and Allstate Fire and Casualty Insurance Company each have their principal place of business in Northbrook, Illinois.

26.     At all relevant times to the allegations contained in this Complaint, Allstate Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company, and Allstate Fire and Casualty Insurance Company were each authorized to conduct business in New York.

B.  **DEFENDANTS**

1.  **John S. Lyons, M.D. a/k/a Jack Lyons, M.D.**

27.  Lyons resides in and is a citizen of the State of New Jersey.

28.  Lyons is licensed to practice medicine in the State of New York.

29.  Lyons was falsely held out to the public and to Allstate as the sole officer, director, and shareholder of Majestic Medical, Lyons Medical, Star Medical, Royal Medical, and Medical MRI.

30.  Lyons participated in the operation and management of the PC Defendants during the relevant period, and is therefore responsible for the fraudulent and non-compensable medical services billed in connection with the claimants at issue in this Complaint.

2.  **Eric Feldmann, M.D.**

31.  Feldmann resides in and is a citizen of the State of New York.

32.  Feldmann is licensed to practice medicine in the State of New York.

33.  Feldmann was falsely held out to the public and to Allstate as the sole officer, director, and shareholder of Instar Medical.

34.  Feldmann participated in the operation of Instar Medical during the relevant period, and is therefore responsible for the fraudulent and non-compensable medical services billed in connection with the claimants at issue in this Complaint.

3.  **Jeffrey Byrne**

35.  Byrne resides in and is a citizen of the State of New York.

36.  Byrne is an unlicensed person, and is not authorized to practice medicine in the State of New York.

37.  Byrne is not allowed to own or control medical PCs in New York.

38.     Byrne is connected to numerous other No-Fault fraud schemes involving the illegal ownership and control of medical providers in New York.  *Farmington Cas. Co. v. All County LLC*, No. 2:22-cv-01067-RPK-ARL (E.D.N.Y.); *GEICO v. Lyons Medical, P.C.*, No. 2:20-cv-2089-DRH-SIL (E.D.N.Y.); *Allstate Ins. Co. v. All County LLC*, No. 1:19-cv-07121-WFK-SJB (E.D.N.Y.); *Metropolitan Prop. and Cas. Ins. Co. v. Rizzuti*, No. 2:09-cv-02676-JFB-ETB (E.D.N.Y.).

39.     Byrne controlled Lyons Medical, Instar Medical, and Star Medical during the course of this scheme.

40.     Byrne owns Javs Ventures, which is a shell company that facilitated Byrne's control over Lyons Medical, Instar Medical, and Star Medical.

41.     Byrne obtained control of the professional fees paid to Lyons Medical, Instar Medical, and Star Medical through sham agreements with Javs Ventures.

42.     Byrne participated in the operation and management of Lyons Medical, Instar Medical, and Star Medical during the relevant period, and is therefore responsible for the fraudulent and non-compensable No-Fault claims submitted in connection with the claimants at issue in this Complaint.

### 4.     Anthony DeGradi

43.     DeGradi resides in and is a citizen of the State of New York.

44.     DeGradi is an unlicensed person, and is not authorized to practice medicine in the State of New York.

45.     DeGradi is not allowed to own or control medical PCs in New York.

46.     DeGradi is connected to numerous other No-Fault fraud schemes involving the illegal ownership and control of medical providers in New York.  *Farmington Cas. Co. v.*

*Patchogue Open MRI, P.C.*, No. 2:22-cv-00999-HG-SIL (E.D.N.Y.); *GEICO v. Lyons Medical, P.C.*, No. 2:20-cv-2089-DRH-SIL (E.D.N.Y.); *Allstate Ins. Co. v. Mendoza*, No. 2:18-cv-04361-SJF-AYS (E.D.N.Y.); *Allstate Ins. Co. v. Payne*, No. 2:18-cv-03972-SJF-GXB (E.D.N.Y.).

47.     DeGradi controlled Lyons Medical, Instar Medical, and Star Medical during the course of this scheme.

48.     DeGradi owns Javs Ventures, which is shell company that facilitated DeGradi's control over Lyons Medical, Instar Medical, and Star Medical.

49.     DeGradi obtained control of the professional fees paid to Lyons Medical, Instar Medical, and Star Medical through sham agreements they had with Javs Ventures.

50.     DeGradi participated in the operation and management of Lyons Medical, Instar Medical, and Star Medical during the relevant period, and is therefore responsible for the fraudulent and non-compensable No-Fault claims submitted in connection with the claimants at issue in this Complaint.

### 5.     **Gary Mullakandov**

51.     Mullakandov resides in and is a citizen of the State of New York.

52.     Mullakandov is an unlicensed person, and is not authorized to practice medicine in the State of New York.

53.     Mullakandov is not allowed to own or control medical PCs in New York.

54.     Mullakandov controlled Majestic Medical, Royal Medical, and Medical MRI during the course of this scheme.

55.     Mullakandov owns MGM Ventures, which is shell company that facilitated Mullakandov's control over Majestic Medical, Medical MRI, and Royal Medical.

56. Mullakandov obtained control of the professional fees paid to Majestic Medical, Medical MRI, and Royal Medical through sham agreements they had with MGM Ventures.

57. Mullakandov participated in the operation and management of Majestic Medical, Royal Medical, and Medical MRI during the relevant period, and is therefore responsible for the fraudulent and non-compensable medical services billed in connection with the claimants at issue in this Complaint.

**6.    Majestic Medical Imaging, P.C.**

58. Majestic Medical is organized as a professional service corporation under New York law.

59. Majestic Medical's principal place of business is located at 409 Rockaway Avenue in Brooklyn, New York.

60. Majestic Medical is an enterprise whose activities affect interstate commerce.

61. Lyons, Mullakandov, and MGM Ventures participated in the operation and management of the Majestic Medical enterprise during the relevant period.

62. Majestic Medical was registered under Lyons' name and medical license, but Majestic Medical was actually operated and controlled by Mullakandov (through MGM Ventures), which is against New York law.

63. Majestic Medical billed for diagnostic radiology services in connection with Allstate claimants.

64. Majestic Medical's bills are fraudulent because the medical services were unnecessary and billed according to predetermined treatment protocols designed to rush patients into as much treatment as soon as possible.

65.     Majestic Medical's bills are also fraudulent because they misrepresent and omit material facts about the ownership of Majestic Medical and the status of the treating physicians.

66.     Majestic Medical violated several applicable New York licensing requirements by (a) splitting professional fees with unlicensed persons, (b) billing for fraudulent or unnecessary medical services, (c) treating patients with predetermined protocols, and (d) billing for independent contractor services.

67.     Majestic Medical also violated applicable New York laws and regulations that prohibit the ownership and control of medical PCs by unlicensed persons.

68.     Accordingly, Majestic Medical was never eligible to collect No-Fault payments from Allstate under N.Y. Ins. Law § 5102.

### 7.      Lyons Medical, P.C.

69.     Lyons Medical is organized as a professional service corporation under New York law.

70.     Lyons Medical's principal place of business is located at 147 East Merrick Road in Valley Stream, New York.

71.     Lyons Medical is an enterprise whose activities affect interstate commerce.

72.     Lyons, Byrne, DeGradi, and Javs Ventures participated in the operation and management of the Lyons Medical enterprise during the relevant period.

73.     Lyons Medical was registered under Lyons' name and medical license, but Lyons Medical was actually operated and controlled by Byrne, DeGradi, and Javs Ventures, which is against New York law.

74.     Lyons Medical billed for diagnostic radiology services in connection with Allstate claimants.

75.     Lyons Medical's bills are fraudulent because the medical services were unnecessary and billed according to predetermined treatment protocols designed to rush patients into as much treatment as soon as possible.

76.     Lyons Medical's bills are also fraudulent because they misrepresent and omit material facts about the ownership of Lyons Medical and the status of the treating physicians.

77.     Lyons Medical violated several applicable New York licensing requirements by (a) splitting professional fees with unlicensed persons, (b) billing for fraudulent or unnecessary medical services, and (c) treating patients with predetermined protocols.

78.     Lyons Medical also violated applicable New York laws and regulations that prohibit the ownership and control of medical PCs by unlicensed persons.

79.     Accordingly, Lyons Medical was never eligible to collect No-Fault payments from Allstate under N.Y. Ins. Law § 5102.

### 8.     Instar Medical, P.C.

80.     Instar Medical is organized as a professional service corporation under New York law.

81.     Instar Medical's principal place of business is located at 147 East Merrick Road in Valley Stream, New York.

82.     Instar Medical is an enterprise whose activities affect interstate commerce.

83.     Feldmann, Byrne, DeGradi, and Javs Ventures participated in the operation and management of the Instar Medical enterprise during the relevant period.

84.     Instar Medical was registered under Feldmann's name and medical license, but Instar Medical actually was operated and controlled by Byrne, DeGradi, and Javs Ventures, which is against New York law.

85. Instar Medical billed for diagnostic radiology services in connection with Allstate claimants.

86. Instar Medical's bills are fraudulent because the medical services were unnecessary and billed according to predetermined treatment protocols designed to rush patients into as much treatment as soon as possible.

87. Instar Medical's bills are also fraudulent because they misrepresent and omit material facts about the ownership of Instar Medical.

88. Instar Medical violated several applicable New York licensing requirements by (a) splitting professional fees with unlicensed persons, (b) billing for fraudulent or unnecessary medical services, and (c) treating patients with predetermined protocols.

89. Instar Medical also violated applicable New York laws and regulations that prohibit the ownership and control of medical PCs by unlicensed persons.

90. Accordingly, Instar Medical was never eligible to collect No-Fault payments from Allstate under N.Y. Ins. Law § 5102.

**9.     Star Medical Imaging, P.C.**

91. Star Medical is organized as a professional service corporation under New York law.

92. Star Medical's principal place of business is located at 147 East Merrick Road in Valley Stream, New York.

93. Star Medical is an enterprise whose activities affect interstate commerce.

94. Lyons, Byrne, DeGradi, and Javs Ventures participated in the operation and management of the Star Medical enterprise during the relevant period.

95.     Star Medical was registered under Lyons' name and medical license, but Star Medical actually was operated and controlled by Byrne and DeGradi, which is against New York law.

96.     Star Medical billed for diagnostic radiology services in connection with Allstate claimants.

97.     Star Medical's bills are fraudulent because the medical services were unnecessary and billed according to predetermined treatment protocols designed to rush patients into as much treatment as soon as possible.

98.     Star Medical's bills are also fraudulent because they misrepresent and omit material facts about the ownership of Star Medical and the status of the treating physicians.

99.     Star Medical violated several applicable New York licensing requirements by (a) splitting professional fees with unlicensed persons, (b) billing for fraudulent or unnecessary medical services, (c) treating patients with predetermined protocols, and (d) billing for independent contractor services.

100.     Star Medical also violated applicable New York laws and regulations that prohibit the ownership and control of medical PCs by unlicensed persons.

101.     Accordingly, Star Medical was never eligible to collect No-Fault payments from Allstate under N.Y. Ins. Law § 5102.

**10.     Royal Medical Imaging, P.C.**

102.     Royal Medical is organized as a professional service corporation under New York law.

103.     Royal Medical's principal place of business is located at 101-07 Jamaica Avenue in Richmond Hill, New York.

104.   Royal Medical is an enterprise whose activities affect interstate commerce.

105.   Lyons, Mullakandov, and MGM Ventures participated in the operation and management of the Royal Medical enterprise during the relevant period.

106.   Royal Medical was registered under Lyons' name and medical license, but Royal Medical actually was operated and controlled by Mullakandov (through MGM Ventures), which is against New York law.

107.   Royal Medical billed for diagnostic radiology services in connection with Allstate claimants.

108.   Royal Medical's bills are fraudulent because the medical services were unnecessary and billed according to predetermined treatment protocols designed to rush patients into as much treatment as soon as possible.

109.   Royal Medical's bills are also fraudulent because they misrepresent and omit material facts about the ownership of Royal Medical.

110.   Royal Medical violated several applicable New York licensing requirements by (a) splitting professional fees with unlicensed persons, (b) billing for fraudulent or unnecessary medical services, and (c) treating patients with predetermined protocols.

111.   Royal Medical also violated applicable New York laws and regulations that prohibit the ownership and control of medical PCs by unlicensed persons.

112.   Accordingly, Royal Medical was never eligible to collect No-Fault payments from Allstate under N.Y. Ins. Law § 5102.

**11.   <u>Medical MRI, P.C.</u>**

113.   Medical MRI is organized as a professional service corporation under New York law.

114.    Medical MRI's principal place of business is located at 101-07 Jamaica Avenue in Richmond Hill, New York.

115.    Medical MRI is an enterprise whose activities affect interstate commerce.

116.    Lyons, Mullakandov, and MGM Ventures participated in the operation and management of the Medical MRI enterprise during the relevant period.

117.    Medical MRI was formed under Lyons' name and medical license, but Medical MRI was actually operated and controlled by Mullakandov (through MGM Ventures), which is against New York law.

118.    Medical MRI billed for diagnostic radiology services in connection with Allstate claimants.

119.    Medical MRI's bills are fraudulent because the medical services were unnecessary and billed according to predetermined treatment protocols designed to rush patients into as much treatment as soon as possible.

120.    Medical MRI's bills are also fraudulent because they misrepresent and omit material facts about the ownership of Medical MRI and the status of the treating physicians.

121.    Medical MRI violated several applicable New York licensing requirements by (a) splitting professional fees with unlicensed persons, (b) billing for fraudulent or unnecessary medical services, (c) treating patients with predetermined protocols, and (d) billing for independent contractor services.

122.    Medical MRI also violated applicable New York laws and regulations that prohibit the ownership and control of medical PCs by unlicensed persons.

123.    Accordingly, Medical MRI was never eligible to collect No-Fault payments from Allstate under N.Y. Ins. Law § 5102.

### 12.  **MGM Ventures Inc**

124.  MGM Ventures Inc is a domestic business corporation organized under New York law.

125.  MGM Ventures' principal place of business is located at 409 Rockaway Avenue in Brooklyn, New York.

126.  Mullakandov owns or controls MGM Ventures.

127.  Mullakandov used MGM Ventures to obtain control over Majestic Medical, Medical MRI, and Royal Medical and their professional fees, which is illegal because medical PCs are not allowed to share professional fees with unlicensed persons.

128.  MGM Ventures participated in the operation and management of the Majestic Medical, Medical MRI, and Royal Medical enterprises during the relevant period, and is therefore responsible for the fraudulent and non-compensable No-Fault claims mailed or submitted to Allstate in connection with the claimants at issue in this Complaint.

### 13.  **Javs Ventures Inc.**

129.  Javs Ventures Inc. is a domestic business corporation organized under New York law.

130.  Javs Ventures' principal place of business is located at 147 East Merrick Road in Valley Stream, New York.

131.  DeGradi and Byrne own Javs Ventures, which is named after them, upon information and belief—**J**(effrey Byrne) **A**(nthony DeGradi) **V**(alley) **S**(tream).

132.  Javs Ventures entered into agreements with Lyons Medical, Instar Medical and Star Medical, the terms of which enabled DeGradi and Byrne to gain control over the professional fees paid to Lyons Medical, Instar Medical and Star Medical, which is against New York law.

16

133.    Javs Ventures participated in the operation and management of the Lyons Medical, Instar Medical, and Star Medical enterprises during the relevant period, and is therefore responsible for the fraudulent and non-compensable No-Fault claims mailed or submitted to Allstate in connection with the claimants at issue in this Complaint.

## III.    JURISDICTION AND VENUE

134.    Subject matter jurisdiction over this action is conferred upon this Court by 28 U.S.C. §§ 1331 and 1332.

135.    Supplemental jurisdiction over the plaintiffs' state law claims is proper pursuant to 28 U.S.C. § 1367.

136.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) whereas the vast majority of the acts known to Allstate alleged herein were carried out within the Eastern District of New York.

137.    At all relevant times, the Defendants have engaged in purposeful activities in New York by seeking and submitting payment demands for claims made under New York's No-Fault laws, as detailed, *infra*.

138.    The Defendants' activities in and contacts with New York were purposefully sought and transacted to take advantage of the benefits available under New York's No-Fault laws.

139.    As the allegations and causes of action in the within Complaint arise from (a) the Defendants' unlawful acts committed in the State of New York, and (b) the fraudulent and non-compensable billing that the Defendants generated and submitted from within the State of New York seeking payment under New York's No-Fault laws, there is no question that there exists a substantial relationship or connection between the State of New York, the transactions at issue, and Allstate's causes of action.

## IV.   APPLICABLE NO-FAULT LAWS AND LICENSING STATUTES

### A.   GENERAL OVERVIEW OF NEW YORK'S NO-FAULT LAWS

140.   Allstate underwrites automobile insurance in the State of New York.

141.   New York's No-Fault laws are designed to ensure that injured victims of motor vehicle accidents have an efficient mechanism to pay reasonable fees for necessary healthcare services.

142.   Under New York's Comprehensive Motor Vehicle Insurance Reparations Act (N.Y. Ins. Law § 5101, *et seq.*), and the regulations promulgated pursuant thereto (11 N.Y.C.R.R. § 65, *et seq.*) (collectively, "the No-Fault Laws"), automobile insurers are required to provide Personal Injury Protection Benefits (hereinafter, "No-Fault benefits") to Allstate claimants.

143.   Under the New York No-Fault Laws, individuals are entitled to be compensated for "basic economic loss" resulting from injuries caused by the operation of a motor vehicle.

144.   "Basic economic loss" is defined to include "all necessary expenses" for medical services.  N.Y. Ins. Law § 5102(a)(1); 11 N.Y.C.R.R. § 65-1.1.

145.   No-Fault benefits include at least $50,000.00 per eligible person for reasonable expenses that are incurred for necessary healthcare goods and services.

146.   In determining basic economic loss, the expenses incurred under Insurance Law § 5102(a)(1) "shall be in accordance with the limitations" of Insurance Law § 5108.

### B.   ELIGIBILITY REQUIREMENTS UNDER NEW YORK'S NO-FAULT LAWS

147.   Medical providers are not eligible to collect payment under New York's No-Fault laws if they fail to meet *__any__* applicable New York State or local licensing requirements necessary to perform those services in New York.  *See* 11 N.Y.C.R.R. § 65-3.16(a)(12).

18

148.    An insurer may withhold No-Fault benefit payments to a medical provider when there is a "willful and material failure" by the provider to abide by licensing and incorporation statutes. *State Farm Mut. Auto. Ins. Co. v. Mallela*, 827 N.E.2d 758, 761 (N.Y. 2005); 11 N.Y.C.R.R. § 65-3.16(a)(12).

149.    Parties may "look beyond the face of licensing documents" to demonstrate illegal ownership and control. *Mallela*, 827 N.E.2d at 761. Numerous factors may be considered when determining actual control of a medical provider, such as one-sided agreements, control of assets, profit sharing, and the extent of the nominal owner's role in the entity's business. *See Andrew Carothers, M.D., P.C. v. Progressive Ins. Co.*, 79 N.Y.S.2d 439, 443-444 (App. Term, 2nd Dept. 2013).

150.    If shown, a provider's illegal corporate practice "may support a finding that the provider is not an eligible recipient of reimbursement under 11 N.Y.C.R.R. § 65-3.16(a)(12) without meeting the traditional elements of common-law fraud." *Andrew Carothers, M.D., P.C. v. Progressive Ins. Co.*, 128 N.E.3d 153, 163 (N.Y. 2019).

## 1.    Unlawful Control of PCs

151.    Fraudulently incorporated medical providers are not entitled to collect No-Fault payments, and a provider commits fraud by submitting No-Fault claims when it is owned or controlled by non-physicians. *Allstate Ins. Co. v. Lyons*, 843 F. Supp. 2d 358, 371 (E.D.N.Y. 2012).

152.    Lay ownership is forbidden in New York because it compromises patient care and brings other types of fraud such as billing for medically unnecessary services and billing at inflated rates. *See State Farm Mut. Auto. Ins. Co. v. Mallela*, 372 F.3d 500, 503-504, 507 (2d Cir. 2004).

153.    The term "fraudulently incorporated" has been interpreted to mean any "corporate practice that shows 'willful and material failure' to abide by licensing and incorporation statutes." *See Carothers*, 128 N.E.3d at 163 (quoting *Mallela*, 827 N.E.2d at 761).

154.    New York Business Corporation Law § 1507 prohibits a professional service corporation from issuing shares to individuals unless they are "engaged in the practice of such profession in such a corporation."  It also prohibits such shareholder(s) from entering into any agreement, granting proxies, or transferring control to individuals who are not authorized by law to practice the profession for which the professional corporation is authorized to practice.

155.    Pursuant to New York Business Corporation Law § 1508, no individual may be a director or officer of a professional service corporation unless he is authorized by law to practice in this state a profession that such corporation is authorized to practice.

156.    Under New York Education Law § 6530(19), it is professional misconduct for a licensed physician to permit any person to share in the fees for professional services, other than a partner, employee, associate of a professional firm or corporation, professional subcontractor or consultant authorized to practice medicine, or a legally authorized trainee practicing under the supervision of a licensee.

157.    Under New York Education Law § 6530, it is also professional misconduct for a licensed physician to (a) practice the profession fraudulently, (b) order excessive tests or treatment not warranted by the condition of the patient, and (c) fail to maintain a record for each patient that accurately reflects the evaluation and treatment of the patient.

### 2.    Unlawful Use of Independent Contractors

158.    Medical providers are prohibited from collecting No-Fault payments for services provided by independent contractors.  *See* 11 N.Y.C.R.R. § 65-3.11.

159.    If a PC uses independent contractors, instead of employees, to provide medical services, then the PC is not eligible to seek or collect payment under New York's No-Fault laws. *See* Opinion Letters, New York State Department of Financial Services f/k/a the Department of Insurance ("DOI"), annexed hereto as Exhibit 1.

### 3.    Unlawful Referral Arrangements

160.    New York law prohibits unprofessional conduct in the practice of medicine, nursing, and chiropractic, which includes exploiting patients for financial gain.  8 N.Y.C.R.R. § 29.1(b)(2) (prohibiting medical, nursing, and chiropractic professionals from "exercising undue influence on the patient or client, including the promotion of the sale of services, goods, appliances or drugs in such manner as to exploit the patient or client for the financial gain of the practitioner or of a third party").

161.    New York law prohibits physicians and physician assistants from "[d]irectly or indirectly offering, giving, soliciting, or receiving or agreeing to receive, any fee or other consideration to or from a third party for the referral of a patient or in connection with the performance of professional services."  *See* N.Y. Educ. Law § 6530(18); *see also* 8 N.Y.C.R.R. § 29.1(b)(3) (prohibiting physicians, physician assistants, nurse practitioners, and chiropractors from "directly or indirectly offering, giving, soliciting, or receiving or agreeing to receive, any fee or other consideration to or from a third party for the referral of a patient or client or in connection with the performance of professional services.").

162.    Under New York Public Health Law § 238-a(1)(a), a practitioner authorized to order x-ray or imaging services may not make a referral to another provider in which the ordering practitioner has a financial relationship.  Prohibited financial relationships include compensation

agreements, contracts that exceed fair market value, and agreements in which compensation is variable based on the volume of referrals.

### C.  CLAIMING REIMBURSEMENT UNDER NEW YORK'S NO-FAULT LAWS

163.   Claimants can assign their No-Fault benefits to healthcare providers.

164.   Under a duly executed assignment, a claimant's medical provider may submit claims directly to an insurance company and receive payment for necessary medical services rendered.

165.   Medical providers can submit claims for No-Fault benefit payments by using the claim form required by the DOI (known as "Verification of Treatment by Attending Physician or Other Provider of Health Service" or more commonly as an "NF-3 form").

166.   NF-3 forms are important because they certify that the provider's request for payment is not materially false, misleading, or fraudulent.  11 N.Y.C.R.R. § 65.3-11(a); N.Y. Ins. Law § 403(d).

167.   Under New York law, medical providers must verify their NF-3 submissions subject to the following warning:

> "Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime."

N.Y. Ins. Law § 403(d).

168.   A medical provider makes a material misrepresentation when it submits an NF-3 form that either omits or misrepresents material information about its eligibility to seek or collect payment under New York's No-Fault laws.

169.    Providers are not allowed to misrepresent their No-Fault eligibility when submitting claims.  A provider's misrepresentation (or omission) of material facts can take many forms, such as giving false or misleading information about (a) the ownership of a PC seeking payment, (b) the necessity of the service, (c) the identity of the actual provider of the service, and (d) compliance with the requirements of the applicable fee schedule.

170.    A medical provider's representations about PC ownership and control are material because New York law requires that all professional medical service corporations be owned and controlled by appropriately licensed medical professionals.  *See* N.Y. Bus. Corp. Law §§ 1503, 1507.

171.    A medical provider's representations of the necessity of the service are material because providers are only eligible to collect No-Fault payments under N.Y. Ins. Law § 5102(a) if the billed-for services are necessary.  *See* N.Y. Ins. Law § 5102(a)(1); 11 N.Y.C.R.R. § 65-1.1; *Long Island Radiology v. Allstate Ins. Co.*, 830 N.Y.S.2d 192, 194 (App. Div. 2nd Dept. 2007) ("Since the defense of lack of medical necessity may indisputably be raised by the defendants against the injured party, it is available as against radiologists who accept assignments of no-fault benefits." (internal citations omitted)).

172.    Additionally, a medical provider's representations about the actual provider of the billed-for services are material because, under New York law, a medical provider operating as a PC is only eligible to bill for and collect charges from an insurer for healthcare services pursuant to N.Y. Ins. Law § 5102(a) if the billed-for services are provided by an owner or employee of the PC.

173.    Therefore, if a PC uses independent contractors, instead of employees, to provide medical services, then the PC is not eligible to seek or collect payment under New York's No-Fault laws.

174.    Finally, a medical provider's misrepresentations regarding compliance with the applicable fee schedule is material because the New York Workers' Compensation Board has established a schedule of fees known commonly as the "Workers' Compensation Fee Schedule" ("Fee Schedule").

175.    The Fee Schedule is used by healthcare providers and insurers to determine the level of reimbursement payable on legitimate claims.

176.    Under New York's No-Fault Laws, healthcare providers are prohibited from submitting charges that exceed the amounts set forth in the Fee Schedule.

177.    Additionally, New York's No-Fault Laws expressly provide that "[a] provider of health care services is not eligible for reimbursement under section 5102(a)(1) of the Insurance Law if the provider fails to meet **any** applicable New York State or local licensing requirement necessary to perform such service in New York." *See* 11 N.Y.C.R.R. § 65-3.16(a)(12) (emphasis added).

178.    Accordingly, if a professional healthcare service provider fails to meet any applicable licensing requirement necessary to perform a service, then the provider is not lawfully entitled to seek or collect No-Fault benefits under New York's No-Fault laws.

179.    As alleged herein, the Defendants failed to meet several laws and regulations when providing healthcare services to claimants during the course of this scheme; therefore, the PC Defendants were not eligible to seek or collect No-Fault benefits from Allstate.

## V.    FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

180.    New York's No-Fault system provides eligible claimants with compensation for necessary medical services.

181.    Claimants are allowed to assign their No-Fault benefits to medical providers, which enables the providers to submit claims directly to insurers.

182.    Prompt payment of No-Fault claims is required following the submission of facially valid bills.

183.    New York's No-Fault laws and enacting regulations are clear that providers are not eligible for payment under Insurance Law § 5102 if they fail to meet any state or local licensing requirement necessary to perform such service in New York.

184.    The PC Defendants were operated in violation of applicable New York licensing requirements because they (a) split professional fees with unlicensed persons, (b) billed for unnecessary diagnostic imaging services, (c) took part in unlawful referral arrangements, (d) billed for services performed by independent contractors, (e) charged excessive rates for unnecessary services, and (f) were controlled by unlicensed persons.

185.    The Defendants knew that the PC Defendants were not eligible to collect No-Fault payments yet they persisted in submitting claims to Allstate.

186.    Byrne and DeGradi have a history of involvement in No-Fault schemes using other diagnostic imaging providers. *See Allstate Ins. Co. v. All County, LLC*, No. 1:19-cv-07121-WFK-SJB (E.D.N.Y.) (alleging that Byrne maintained unlawful ownership and controlling interests in All County, LLC, an Article-28 certified diagnostic and treatment center); *Allstate Ins. Co. v. Payne*, No. 1:18-cv-03972-SJF-GRB (E.D.N.Y.) (alleging that DeGradi unlawfully operated and controlled—and split professional fees with—several radiology practices through management

25

companies owned by DeGradi); *Metropolitan Prop. and Cas. Ins. Co. v. Rizzuti*, No. 2:09-cv-02676-JFB-ETB (E.D.N.Y.) (alleging that Byrne, and others, owned and controlled a radiology practice, Elmont Open MRI & Diagnostic Radiology, P.C. d/b/a All County Open MRI, the predecessor of All County, LLC, in violation of New York law).

187.    Lyons also has a history of participation in No-Fault fraud schemes in New York, which also involved illegal PC ownership and billing for bogus MRIs.  *See Allstate Ins. Co. v. Lyons*, No. 1:11-cv-02190-JG-VVP (E.D.N.Y.) (alleging that Lyons conspired with unlicensed persons "to produce hundreds of fraudulent MRI reports" that misrepresented the conditions represented in the films and falsely diagnosed and identified nonexistent conditions as a means to obtain No-Fault benefits to which the lay-owned medical clinics were not entitled).

188.    The Defendants' scheme revolved around billing for as many MRIs as possible. The MRIs were not medically necessary; rather, they were billed because of predetermined treatment protocols and unlawful patient referrals.

189.    Patient health and safety was compromised because of this scheme—claimants were needlessly subjected to a battery of invasive tests and procedures because of the MRIs billed by the PC Defendants.

190.    The Defendants knew the PC Defendants were submitting No-Fault claims that were not compensable under New York law.

A.    THE NEXUS AMONG ALL OF THE DEFENDANTS

191.    The Defendants are all connected even though the PC Defendants operated in different locations.

192.    The Defendants are bound together by Lyons, whose relationship to the PC Defendants, Feldmann, and the Management Defendants enabled the scheme to operate from different locations during the relevant period.

193.    Several of the PC Defendants, including Majestic Medical, Star Medical, and Medical MRI, also used the same independent contractor radiologists; they also shared the same technicians and other employees.

194.    Instar Medical shared employees with Lyons Medical.

195.    Star Medical even shared patients with the Richmond Hill Facility.

196.    The PC Defendants also had collusive referral relationships with corrupt providers.

197.    The Defendants needed patients that were ordered to undergo MRIs, which meant they also needed providers that would order MRIs and then steer the patients to the PC Defendants.

198.    The MRI orders came from facilities with demonstrated histories of involvement in No-Fault fraud schemes, such as the clinics located at 79-45 Metropolitan Avenue, Flushing, NY and 105-10 Flatlands Avenue, Brooklyn, NY.  Both of these clinics are well-known hubs of fraudulent activity.  *See GEICO v. Barakat*, No. 1:22-cv-07532-NGG-RML (E.D.N.Y.) (alleging that non-physicians unlawfully controlled fraudulently incorporated PCs that operated at numerous clinics, including at 79-45 Metropolitan Avenue, where they enjoyed steady streams of patients pursuant to unlawful referral arrangements); *Allstate Ins. Co. v. Metro Pain Specialists Professional Corporation*, No. 1:21-cv-05586-DG-RER (E.D.N.Y.) (alleging that Metro Pain entered into arrangements with the managers of the clinic at 101-05 Flatlands Avenue to gain access to a steady stream of patients in exchange for payments disguised as rent for the use of office space); *Allstate Ins. Co. v. Hollis Novel Comprehensive Medical, P.C.*, No. 1:20-cv-06108-ENV-RER (E.D.N.Y.) (alleging that several non-physicians controlled the clinic at 105-10

Flatlands Avenue and caused providers operating from the clinic to bill for medically unnecessary treatments and services and refer patients for additional unnecessary services).   Several other fraudulent clinics were also involved:

| Clinic Location | PC Defendant | Related Litigation |
|---|---|---|
| 764 Elmont Road, Elmont, NY | Instar Medical | • *GEICO v. Healthy Age Medical, P.C.*, No. 19-cv-02398-AMD-VMS (E.D.N.Y.)<br> o Clinic at 764 Elmont Road illegally owned and controlled by unlicensed laypersons, per complaint.<br>• *United States v. Rose*, No. 19-cr-00789-PGG (S.D.N.Y.)<br> o Clinic at 764 Elmont Road involved in massive unlawful referral scheme, per wiretap records. |
| 279 Burnside Avenue, Lawrence, NY | Instar Medical<br>Lyons Medical | • *GEICO v. 5 Borough Anesthesia, LLC*, No. 20-cv-04305-PKC-RML (E.D.N.Y.)<br> o Clinic at 279 Burnside Avenue is a "one stop shop" for insurance fraud, per complaint. |
| 180-09 Jamaica Avenue, Queens, NY | Instar Medical | • *GEICO v. Jeanniton*, No. 22-cv-01275-PKC-JRC (E.D.N.Y.)<br> o Clinic at 180-09 Jamaica Ave was a "revolving door" of numerous healthcare providers, per complaint. |
| 219 Hempstead Turnpike, West Hempstead, NY | Instar Medical | • *GEICO v. Progressive Medical Care, P.C.*, No. 21-cv-06575-JS-SIL (E.D.N.Y.)<br> o Clinic at 219 Hempstead Turnpike is a "revolving door" of providers under the control of unlicensed persons who "cultivated and controlled the patient base[]" at the clinic, per complaint.<br>• *GEICO v. Big Apple Medical Equipment, Inc.*, No. 20-cv-05786-PKC-JRC (E.D.N.Y.) (alleging same). |
| 152-80 Rockaway Boulevard, Jamaica, NY | Lyons Medical<br>Royal Medical | • *GEICO v. Ahmad*, No. 22-cv-06713-ARR-RLM (E.D.N.Y.)<br> o Clinic at 152-80 Rockaway Blvd involved in illegal referral scheme, per complaint. |

| Clinic Location | PC Defendant | Related Litigation |
|---|---|---|
|  |  |  |
| 430 West Merrick Road, Valley Stream, NY | Lyons Medical<br>Star Medical | • *GEICO v. Landow*, No. 21-cv-01440 NGG-RER (E.D.N.Y.)<br>  o Clinic at 430 West Merrick Road is a "one-stop shop for no-fault insurance fraud" and involved in illegal referral scheme, per complaint.<br>• *GEICO v. Ahmad*, No. 22-cv-06713-ARR-RLM (E.D.N.Y.)<br>  o Clinic at 430 West Merrick Road involved in illegal referral scheme, per complaint.<br>• *GEICO v. Stybel*, No. 22-cv-02834-PKC-MMH (E.D.N.Y.)<br>  o Clinic at 430 West Merrick Road controlled by laypersons and involved in illegal referral scheme, per complaint. |
| 139 North Central Avenue, Valley Stream, NY | Lyons Medical | • *GEICO v. Landow*, No. 21-cv-01440-NGG-RER (E.D.N.Y.)<br>  o Clinic at 139 North Central Avenue involved in illegal referral scheme, per complaint. |
| 2379 Ralph Ave, Brooklyn, NY | Majestic Medical | • *GEICO v. Landow*, No. 21-cv-01440-NGG-RER (E.D.N.Y.)<br>  o Clinic at 2379 Ralph Avenue involved in illegal referral scheme, per complaint. |
| 222-01 Hempstead Avenue, Queens Village, NY | Majestic Medical | • *GEICO v. Landow*, No. 21-cv-01440-NGG-RER (E.D.N.Y.)<br>  o Clinic at 222-01 Hempstead Avenue involved in illegal referral scheme, per complaint.<br>• *GEICO v. Ahmad*, No. 22-cv-06713-ARR-RLM (E.D.N.Y.)<br>  o Clinic at 222-01 Hempstead Avenue controlled by laypersons and involved in illegal referral scheme, per complaint. |
| 62-69 99th Street, Rego Park, NY | Medical MRI | • *GEICO v. Stybel*, No. 22-cv-02834-PKC-MMH (E.D.N.Y.)<br>  o Clinic at 62-69 99th Street controlled by laypersons and involved in illegal referral scheme, per complaint. |

| Clinic Location | PC Defendant | Related Litigation |
|---|---|---|
| | | |
| 175 Fulton Avenue, Hempstead, NY | Star Medical | • *GEICO v. Stybel*, No. 22-cv-02834-PKC-MMH (E.D.N.Y.)<br>　○ Clinic at 175 Fulton Avenue controlled by laypersons and involved in illegal referral scheme, per complaint. |

199.　　Referrals for MRIs billed by the PC Defendants were also generated by providers with their own histories of involvement in fraud schemes:

| Prescriber | PC Defendant | Prior Healthcare/No-Fault Fraud Actions |
|---|---|---|
| Ruben Oganesov, M.D. | Star Medical | • *GEICO v. Emmons Avenue Medical Office, P.C.*, No. 22-cv-03922-RPK-PK (E.D.N.Y.)<br>　○ Oganesov, who practiced and resided in MA, engaged in illegal referral and kickback arrangements to obtain patients who were purportedly subjected to unnecessary services, per complaint.<br>• *GEICO v. Oganesov*, No. 22-cv-05693-ENV-PK (E.D.N.Y.)<br>　○ Oganesov conspired with non-physicians to use a PC to submit fraudulent charges for medically unnecessary services purportedly provided to patients obtained through unlawful referral arrangements, per complaint. |
| Ana Romeo, M.D. | Instar Medical | • *GEICO v. Healthy Age Medical, P.C.*, No. 19-cv-02398-AMD-VMS (E.D.N.Y.)<br>　○ Romeo ceded control of a PC to laypersons who controlled the clinic at 764 Elmont Road in Elmont, NY; patients were obtained through unlawful payments for referrals and subjected to a predetermined treatment protocol, per complaint. |
| Michael Jeanniton, DC | Instar Medical | • *GEICO v. Jeanniton*, No. 22-cv-01275-PKC-JRC (E.D.N.Y.) |

| Prescriber | PC Defendant | Prior Healthcare/No-Fault Fraud Actions |
|---|---|---|
| | | o Jeanniton billed for unnecessary services purportedly performed at clinics controlled by laypersons who steered patients to Jeanniton in exchange for kickback payments, per complaint. |
| Peter Margulies, DC | Instar Medical; Star Medical | • *GEICO v. Big Apple Medical Equipment, Inc.*, No. 20-cv-05786-PKC-JRC (E.D.N.Y.)<br>o Margulies fraudulently prescribed durable medical equipment to patients from a clinic at 219 Hempstead Tpke, Hempstead, NY in exchange for kickback payments from the supplier, per complaint. |
| Walter Mendoza, DC | Instar Medical | • *Allstate Ins. Co. v. Elite Medical Supply, Inc.*, No. 17-cv-00443-CBA-JO (E.D.N.Y.)<br>o Mendoza prescribed medically unnecessary durable medical equipment in exchange for kickback payments from the supplier, per complaint. |
| Sonia Armengol, M.D. | Lyons Medical; Royal Medical | • *GEICO v. Armengol*, No. 20-cv-06052-RPK-SJB (E.D.N.Y.)<br>o Armengol purported to render medically unnecessary treatments and services at clinics that were controlled by non-physicians who steered patients to the clinics for the unnecessary treatments, per complaint.<br>• *State Farm Mut. Auto. Ins. Co. v. Lexington Medical Diagnostic Services, P.C.*, No. 18-cv-03312-DLI-PK (E.D.N.Y.)<br>o Armengol engaged in improper financial and illegal kickback and/or referral arrangements and provided healthcare services pursuant to a predetermined treatment protocol, per complaint. |
| Arkam Rehman, M.D. | Star Medical | • *Liberty Mut. Ins. Co. v. AVK Rx, Inc.*, No. 22-cv-07329-GRB-SIL (E.D.N.Y.)<br>o Per complaint, Arkam Rehman, M.D.'s physician credential was stolen to generate fraudulent prescriptions. |

| **Prescriber** | **PC Defendant** | **Prior Healthcare/No-Fault Fraud Actions** |
| --- | --- | --- |
| | | |
| Glenn Whitney, DC | Star Medical | • *GEICO v. Jacques*, No. 14-cv-05299-KAM-VMS (E.D.N.Y.)<br>   ○ Whitney engaged in unlawful referral arrangements involving the payment of kickbacks in exchange for patient referrals, per complaint.<br>• *GEICO v. Whitney*, No. 18-cv-05013-DLI-SMG (E.D.N.Y.)<br>   ○ Whitney breached terms of settlement agreement by submitting unlawful charges and engaging in an illegal kickback and referral scheme, per complaint. |
| John McGee, D.O. | Star Medical | • *Allstate Ins. Co. v. Rauch,* No. 22-cv-02424-JMA-LGD (E.D.N.Y.)<br>   ○ McGee provided bogus referrals for testing services in exchange for kickback payments, per complaint<br>• *Allstate Ins. Co. v. Ilyaich,* No. 13-cv-05464-NG-LB (E.D.N.Y.)<br>   ○ McGee ceded control over PCs to non-physicians, per complaint. |
| Phyllis Gelb, M.D. | Star Medical | • *Liberty Mut. Ins. Co. v. AVK Rx, Inc.*, No. 22-cv-07329-GRB-SIL (E.D.N.Y.)<br>   ○ Gelb entered into illegal, collusive agreements to prescribe and direct large volumes of prescriptions for predetermined medications to specific pharmacies, per complaint.<br>• *GEICO v. Ahmed*, No. 22-cv-01679-ENV-SJB (E.D.N.Y.)<br>   ○ Gelb involved in illegal PC ownership and patient referral scheme, per complaint. |
| Rafael Sezan, M.D. | Star Medical | • *Liberty Mut. Ins. Co. v. GM Wellness Medical, P.C.*, No. 22-cv-02064-DG-CLP (E.D.N.Y.)<br>   ○ Sezan participated in illegal PC ownership and patient referral scheme, per complaint. |
| John Bucci, DC | Majestic Medical | • *GEICO v. Chumaceiro*, No. 20-cv-02220-DG-PK (E.D.N.Y.) |

| Prescriber | PC Defendant | Prior Healthcare/No-Fault Fraud Actions |
|---|---|---|
| | | o Bucci participated in illegal PC ownership and patient referral scheme at 409 Rockaway Avenue in Brooklyn, NY (i.e., the Brooklyn Facility), per complaint. |
| Rafael Delacruz-Gomez, M.D. | Majestic Medical | • *GEICO v. Wellmart Rx, Inc.*, No. 19-cv-04414-KAM-RLM (E.D.N.Y.)<br>  o Delacruz-Gomez provided illegal prescriptions for medications to a particular pharmacy in exchange for unlawful kickbacks and other financial incentives, per complaint.<br>• *GEICO v. Direct Rx Pharmacy, Inc.*, No. 19-cv-05876-FB-LB (E.D.N.Y.)<br>  o Delacruz-Gomez engaged in an illegal, collusive agreement with a pharmacy to generate prescriptions for medically unnecessary and predetermined medications, per complaint.<br>• *Liberty Mut. Ins. Co. v. Life Health Care Medical, P.C.*, No. 19-cv-00095-PKC-LB (E.D.N.Y.)<br>  o Delacruz-Gomez ceded control over a PC to non-physicians who caused the PC to bill for medically unnecessary treatments and services, per complaint.<br>• *Allstate Ins. Co. v. New Century Pharmacy, Inc.*, No. 19-cv-05702-ENV-VMS (E.D.N.Y.)<br>  o Delacruz-Gomez entered into an unlawful relationship with the owner of a pharmacy for referrals of prescriptions for medically unnecessary medications and purported to perform medically unnecessary and excessive treatment, per complaint. |
| Patricia Kelly, D.O. | Majestic Medical; Medical MRI; Royal Medical | • *GEICO v. Rego Park Pharmacy LLC*, No. 22-cv-05477-MKB-RER (E.D.N.Y.)<br>  o Kelly entered into illegal, collusive financial agreements with a pharmacy in exchange for large volumes of fraudulent prescriptions for medications pursuant to a predetermined protocol, per complaint. |

| **Prescriber** | **PC Defendant** | **Prior Healthcare/No-Fault Fraud Actions** |
|---|---|---|
| Quazi Rahman, M.D. | Medical MRI | - *GEICO v. Longevity Medical Supply, Inc.*, No. 20-cv-01681-RPK-VMS (E.D.N.Y.)<br>  - Rahman entered into an unlawful financial relationship with a medical equipment supplier for the provision of prescriptions for medically unnecessary equipment pursuant to a predetermined protocol, per complaint.<br>- *Liberty Mut. Ins. Co. v. Eldar Kadymoff Medical, P.C.*, No. 20-cv-02293-PKC-CLP (E.D.N.Y.)<br>  - Rahman participated in scheme involving predetermined treatment protocol and illegal PC ownership, per complaint. |
| Jean Pierre Barakat, M.D. | Medical MRI; Star Medical | - *GEICO v. Barakat*, No. 22-cv-07532-NGG-RML (E.D.N.Y.)<br>  - Barakat ceded control over medical practices in his name to non-physicians who dictated the treatments and services purportedly provided pursuant to illegal referral and kickback arrangements, per complaint.<br>- *GEICO v. Direct Rx Pharmacy, Inc.*, No. 19-cv-05876-FB-LB (E.D.N.Y.)<br>  - Barakat entered into illegal, collusive agreement with a pharmacy and its owner for the referral of prescriptions for unnecessary drugs and medications in exchange for kickbacks, per complaint.<br>- *Allstate Ins. Co. v. New Century Pharmacy, Inc.*, No. 19-cv-05702-ENV-VMS (E.D.N.Y.)<br>  - Barakat entered into an unlawful relationship with the owner of a pharmacy for referrals of prescriptions for medically unnecessary medications and purported to perform medically unnecessary and excessive treatment, per complaint.<br>- *GEICO v. Barakat*, No. 17-cv-01066-NGG-LB (E.D.N.Y.)<br>  - Barakat ceded control of a PC to non-physicians, which PC was caused to submit charges for medically unnecessary |

| Prescriber | PC Defendant | Prior Healthcare/No-Fault Fraud Actions |
|---|---|---|
| | | treatments pursuant to a predetermined protocol, per complaint. |
| Joseph Bater, DC | Medical MRI | • *State Farm Mut. Ins. Co. v. Tandingan PT, P.C.*, No. 22-cv-01582-EK-CLP (E.D.N.Y.)<br>  o Bater ceded control of a PC to laypersons who implemented a predetermined treatment protocol and obtained patients for the PC through illegal kickback and referral arrangements with the owners and controllers of numerous multi-disciplinary clinics, per complaint.<br>• *GEICO v. Chiropractic Diagnostic, P.C.,* No. 20-cv-02046-BMC (E.D.N.Y.)<br>  o Bater ceded control over a PC to laypersons who controlled the PC, including by dictating the treatment protocol and orchestrating a kickback scheme for the referral of patients, per complaint.<br>• *GEICO v. JB Chiropractic Services, P.C.,* No. 18-cv-06088-CBA-SJB (E.D.N.Y.)<br>  o Bater ceded control over medical practices to laypersons and obtained patients, who were subjected to an unnecessary and predetermined treatment protocol, through illegal kickback and referral arrangements, per complaint. |
| Stella Amanze, PA | Royal Medical | • *GEICO v. Zaitsev*, No. 20-cv-03495-FB-SJB (E.D.N.Y.)<br>  o Amanze performed, without the required supervision, medically unnecessary treatments and services on behalf of several PCs and misrepresented the patients' conditions in medical records to create a false justification for the billed-for services, per complaint. |
| Cathy Delerme-Pagan, M.D. | Royal Medical; Star Medical | • *GEICO v. New Century Pharmacy Inc.*, No. 19-cv-06802-ENV-RER (E.D.N.Y.)<br>  o Delerme-Pagan entered in an illegal referral arrangement with a pharmacy's owners for the referral of prescriptions of medically unnecessary medications |

| Prescriber | PC Defendant | Prior Healthcare/No-Fault Fraud Actions |
|---|---|---|
| | | pursuant to a predetermined protocol in exchange for unlawful kickbacks, per complaint. |

200.    The Defendants also obtained MRI orders from clinics connected to a criminal scheme, which has been named one of the largest No-Fault insurance takedowns in history.  *See* Press Release, *U.S. Attorney Announces the Arrest of 13 Individuals for $100 Million Healthcare Fraud, Money Laundering, and Bribery Scheme* (Jan. 12, 2022), attached hereto at Exhibit 2.

201.    The PC Defendants billed for MRIs ordered through clinics located at 105-10 Flatlands Avenue in Brooklyn, NY and 204-12 Hillside Avenue in Hollis, NY.

202.    These clinics were controlled by unlicensed persons who implemented predetermined treatment protocols that the clinics' providers were required to follow.  Providers were required to order MRIs, durable medical equipment, prescription drugs, and additional services at the initial examinations.

203.    Claimants were not given a choice where to get the MRIs.  Claimants were steered to the PC Defendants for MRIs, and the use of pre-printed MRI order forms facilitated the steering of MRI orders to the PC Defendants.

**B.    THE UNLAWFUL OPERATION AND CONTROL OF THE PC DEFENDANTS**

**1.    Lyons Medical, Instar Medical, and Star Medical**

204.    DeGradi and Byrne already controlled a facility located at 147 East Merrick Road in Valley Stream, NY ("Valley Stream Facility") prior to the start of this scheme.

205.    The Valley Stream Facility housed a diagnostic imaging facility from which DeGradi and Byrne illegally operated and controlled several different radiology PCs (i.e., non-

36

parties Southwest Medical Imaging, P.C. and Patchogue Open MRI, P.C.).  *See Farmington Cas.*
*Co. v. Patchogue Open MRI, P.C.*, No. 2:22-cv-00999-HG-SIL (E.D.N.Y.) (alleging that
Patchogue Open MRI, P.C., which operated under the name "Southwest Radiology" from the
Valley Stream Facility, was unlawfully owned, operated, and controlled by DeGradi); *Allstate Ins.*
*Co. v. Payne*, No. 1:18-cv-03972-SJF-GRB (E.D.N.Y.) (alleging that Southwest Medical Imaging,
P.C. was unlawfully owned, operated, and controlled by one or more non-physicians, including
DeGradi).

206.     Lyons had a pre-existing connection to the Valley Stream Facility as the nominal
owner of a different radiology PC controlled by DeGradi.  *See Allstate Ins. Co. v. Payne*, No. 1:18-
cv-03972-SJF-GRB (E.D.N.Y.) (alleging that another physician "was able to 'purchase' complete
'ownership' of Patchogue Open MRI from its previous 'owner' (i.e., John Sherry Lyons, M.D.)
for the nominal amount of $1.00").

207.     Lyons had also worked at another facility owned and controlled by Byrne.

208.     A new radiology PC named Lyons Medical was installed at the Valley Stream
Facility in or around June 2018.

209.     Lyons was listed as the owner of Lyons Medical, but this was false because the PC
was actually controlled by DeGradi and Byrne.

210.     Lyons Medical was an existing entity, which enabled DeGradi and Byrne to swiftly
replace the Valley Stream Facility's outgoing radiology PC.

211.     The Defendants used Javs Ventures to control Lyons Medical.

212.     The Valley Stream Facility's equipment was owned by DeGradi and Byrne through
Javs Ventures, and the equipment was leased to Lyons Medical through an agreement with Javs

Ventures, the terms of which, upon information and belief, were structured such that Lyons Medical would pay Javs Ventures far more than the actual value of the equipment.

213.    The agreement between Lyons Medical and Javs Ventures enabled the Management Defendants to obtain control over the professional fees paid to Lyons Medical.

214.    DeGradi and Byrne used Lyons Medical to continue their illegal operation and control of the Valley Stream Facility and its associated radiology PCs.

215.    DeGradi and Byrne's control over Lyons Medical is demonstrated by the fact that its bills were supported by documents from the prior radiology PC (non-party Southwest Medical Imaging, P.C.), such as a prescription form in connection with claimant A.S. (claim no. 0509140547):

## SOUTHWEST MEDICAL IMAGING, PC.

147 E. Merrick Road • Valley Stream, NY 11580
Tel: 516-825-6500
Fax: 516-825-0696
**PLEASE CALL 24 HRS. IN ADVANCE TO CANCEL OR RESCHEDULE**

216.    Lyons was not a bona fide owner of Lyons Medical.  Lyons was not physically present at the Valley Stream Facility and was not involved in the daily operations of Lyons Medical.

217.    Lyons Medical's bills were stamped with a copy of Lyons' signature, which raises doubts about Lyons' role in Lyons Medical's billing for services:



218.    Additionally, MRI reports submitted to Allstate by Lyons Medical through the U.S. Mail falsely identified Lyons as a Diplomate of the American Board of Radiology, as demonstrated by the representative example below relating to services purportedly provided to claimant A.S. (claim no. 0509140547) on July 18, 2018, even though according to public records available through the American Board of Radiology, Lyons never obtained this certification.

# Lyons Medical, PC.

### Jack Lyons, MD
**_Diplomate, American Board of Radiology_**

219.    In or about December 2018, DeGradi and Byrne sought to replace Lyons Medical with a different PC.

220.    DeGradi and Byrne recruited Feldmann to be the nominal owner of Instar Medical.

221.    Feldmann was selected because he worked for Lyons Medical.  _Feldmann v. Byrne_, Index No. 614106/2020 (N.Y. Sup. Ct., Nassau Cnty.) ("[i]n and around October 2018, Feldmann became employed by Lyons Medical and began reading MRIs and other scans for Lyons Medical via teleradiology.").

222.   Feldmann verified that he began reading MRIs for Lyons Medical in October 2018.

223.   Feldmann further verified that he was approached by Byrne "about a potential business opportunity" shortly after starting to work for Lyons Medical.  Feldmann also identified Javs Ventures as a company that was used to manage radiology PCs that operated from the Valley Stream Facility.

224.   According to Feldmann's verified complaint, during a meeting between Feldmann and Byrne on November 18, 2018, "Byrne explained to Feldmann that Lyons was no longer interested in operating Lyons Medical and that it would be a good opportunity for Feldmann to open his own practice."

225.   Feldmann's verified complaint stated that "[b]ased upon his meeting with Byrne and specifically the representations made by Byrne about the quality of the location and staff, Feldmann decided to open a practice at the Valley Stream Facility."

226.   Like Lyons, Feldmann was not a bona fide PC owner.  Feldmann was not present at the Valley Stream Facility and had no role in day-to-day operations.

227.   Control over the operation and management of Instar Medical was ceded to DeGradi and Byrne while Feldmann actually worked for a different facility.  According to Feldmann, he had a "full time job at a Long Island hospital."

228.   Instar Medical had the hallmarks of DeGradi and Byrne's illegal control, sharing virtually identical documentation with Lyons Medical:

## INSTAR MEDICAL, PC.

147 E. Merrick Road • Valley Stream, NY 11580
**Tel: 516-825-6500**
**Fax: 516-825-0696**
*PLEASE CALL 24 HRS. IN ADVANCE TO CANCEL OR RESCHEDULE*

**LYONS MEDICAL, PC.**

147 E. Merrick Road • Valley Stream, NY 11580
Tel: 516-825-6500
Fax: 516-825-0696
**PLEASE CALL 24 HRS. IN ADVANCE TO CANCEL OR RESCHEDULE**

229.    Many of the MRIs billed by Instar Medical were ordered using Lyons Medical

documentation.

230.    Instar Medical also billed for services that were ordered using documentation from

non-party Southwest Medical Imaging, P.C.—which was another radiology PC controlled by

DeGradi and Byrne—such as prescription forms in connection with claimant N.M. (claim no.

0528403371):

**SOUTHWEST MEDICAL IMAGING, PC.**

147 E. Merrick Road • Valley Stream, NY 11580
Tel: 516-825-6500                                    1/23
Fax: 516-825-0696
**PLEASE CALL 24 HRS. IN ADVANCE TO CANCEL OR RESCHEDULE**

231.    Instar Medical continued to use the same telephone number (516-825-6500)

previously used by Lyons Medical and Southwest Medical Imaging, which telephone number is

associated with "Allied Management."  Byrne is a member of non-party Allied Management

Group LLC ("AMG") through which he owns and controls MRI centers, including non-party All

County, LLC.

232.    And like Lyons Medical, Instar Medical's bills were stamped with a copy of

Feldmann's signature:



233.    Assuming control over Instar Medical enabled DeGradi and Byrne to continue running the scheme at the Valley Stream Facility.  Instar Medical was a continuation of Lyons Medical; it used the same equipment and staff, and received imaging orders from the same group of fraudulent providers.

234.    As with Lyons Medical, Instar Medical also entered into arrangements with Javs Ventures, which gave DeGradi and Byrne control over the operation and management of Instar Medical, including the professional fees paid on No-Fault claims.

235.    Javs Ventures owned the equipment at the Valley Stream Facility and leased it to Instar Medical.  *See Farmington Cas. Co. v. Patchogue Open MRI, P.C.*, No. 2:22-cv-00999-HG-SIL (alleging that DeGradi caused Instar Medical to enter into certain agreements, including for the sublease of MRI equipment).

236.    Byrne admitted that Instar Medical and Feldmann "used the Medical Imaging Equipment [at the Valley Stream Clinic] from approximately December 2018 through March 2019."

237.    Feldmann was kept in the dark about many aspects of Instar Medical's operation of the Valley Stream Clinic, including the operation of the facility itself.

238.     According to Feldmann, the relationship soured when "Byrne began demanding an astronomical sum for the rental of the medical equipment from JAVS."   Byrne demanded additional money from Feldmann to pay for patient referrals—Byrne told Feldmann that he "would need to give certain people 'thousands of pineapples' if the referral stream of patients would continue," thus requesting that Feldmann pay for referrals to Instar Medical.

239.     Feldmann allegedly "refused Byrne's request" and Instar Medical soon stopped operating from the Valley Stream Clinic.

240.     Instar Medical was then replaced at the Valley Stream Facility by Star Medical, another PC nominally owned by Lyons.

241.     Like Lyons Medical and Instar Medical, Star Medical was also controlled by DeGradi and Byrne.

242.     Star Medical began operating from the Valley Stream Facility in or about December 2019, but used a different address than the prior PCs.

243.     Star Medical started using an address of 141 East Merrick Road instead of 147 East Merrick Road when billing Allstate:



## STAR MEDICAL IMAGING PC
### 141 E. MERRICK ROAD , VALLEY STREAM, NY 11580

| PATIENT NAME: | A███████D██████ |
| DATE OF SERVICE: | 02/07/2020 |
| REFERRING PHYSICIAN: | DR.CRAIG FISHLER |

244.    The 141 East Merrick Road address is located in the same building as 147 East Merrick Road; in fact, the addresses are located directly adjacent to each other.

245.    In or about the time that Star Medical began operating from the Valley Stream Facility, the physical address number affixed to the entrances at 141 and 147 East Merrick Road were swapped: 141 became 147 and vice versa to create the false appearance that Star Medical operated from a different location than Lyons Medical and Instar Medical.

246.    Prior to Star Medical's operation from the Valley Stream Facility, the front of the building appeared as 141B East Merrick Road:



247.    During the period that Star Medical operated from the Valley Stream Facility, the same entrance was now identified as 147 East Merrick Road, while the rear entrance (i.e., the medical imaging facility entrance) was identified as 141 East Merrick Road:



248. The building's signage then directed patients to a generally-named provider—"Medical Imaging, P.C."—located in the rear of the facility.

249. The manipulation of the entrance numbers at the Valley Stream Facility and Star Medical's use of the 141 East Merrick Road address was purposely undertaken to conceal the connections between Lyons Medical, Instar Medical, and Star Medical.

250. In fact, Star Medical claimants were still directed to the 147 East Merrick Road address even though Star Medical was supposedly located at a different address:



251.     Star Medical operated in the same fraudulent manner as each of the fraudulently incorporated PCs that operated at the Valley Stream Facility before it, including, but not necessarily limited to, Lyons Medical and Instar Medical.

252.     Star Medical purportedly used the same equipment as Lyons Medical and Instar Medical, including the same MRI equipment leased by Javs Ventures to Instar Medical and Lyons Medical at the Valley Stream Facility.

253.     Lyons was not a bona fide owner of Star Medical.  Lyons was not physically present at the 141 East Merrick Road/147 East Merrick Road location, and was not involved in the daily operations of Star Medical.

254.     Moreover, Star Medical's MRI reports, bills, and assignment of benefits forms were stamped with copies of Lyons' signature, further demonstrating Lyons' lack of control over the PC.

2. **Majestic Medical**

255.    Mullakandov recruited Lyons to form Majestic Medical, which was incorporated under Lyons' name and licensing credentials on November 5, 2019.

256.    Majestic Medical was formed to replace the outgoing radiology PC—non-party Dynamic Medical Imaging, P.C. ("Dynamic")—at the Brooklyn Facility, which was located at 409 Rockaway Avenue in Brooklyn, NY.  Notably, Dynamic was part of a different No-Fault fraud scheme at the Brooklyn Facility prior to departure.  *See Allstate Ins. Co. v. Dynamic Medical Imaging P.C.*, No. 1:23-cv-07481-EK-RML (E.D.N.Y.).

257.    Like the Valley Stream Facility, the Brooklyn Facility was operated and controlled by unlicensed persons.

258.    At first, services at the Brooklyn Facility were billed under Lyons' own tax identification number.  Eventually, the services were billed through Majestic Medical once the PC was formally organized.

259.    Lyons was a logical choice to serve as the nominal PC owner at the Brooklyn Facility since Lyons and Mullakandov previously conspired to open a different sham radiology PC (i.e., Royal Medical) at the Richmond Hill Facility, which was also controlled by Mullakandov.

260.    There are clear connections between the Brooklyn Facility and Richmond Hill Facility.

261.    For example, during the relevant period, medical office space at 409 Rockaway Avenue, Brooklyn, New York was listed for rent with the contact person for the listing identified as "Gary" with a telephone number of 917-885-4656, which is a mobile number listed under the name "Gary Mullakandov."

262.    This rental listing for 409 Rockaway Avenue also advertised a "room for rent at *our* Queens location 101-07 Jamaica Avenue, Richmond Hill, NY."  (Emphasis added.).

263.    This rental listing thus reveals that the Brooklyn Facility and Richmond Hill Facility were related and part of a shared scheme.

264.    Moreover, Lyons and Majestic Medical submitted prescription forms in support of No-Fault claims that listed the phone numbers for both the Brooklyn Facility and Richmond Hill Facility in the heading:

265.     Majestic Medical entered into a "commercial lease agreement" with MGM Ventures in February 2020 for the use of the "MRI Center" and equipment located in the basement of 409 Rockaway Avenue.  The agreement was signed by Lyons on behalf of Majestic Medical and Mullakandov on behalf of MGM Ventures.  Notably, the Majestic Medical-MGM Ventures agreement covered the same equipment that was previously used by Dynamic at the same location.

266.     However, according to non-party physician Paresh Rijsinghani, M.D. ("Rijsinghani")—the nominal "paper" owner of Dynamic—the equipment at the Brooklyn Facility was "cheap" and "so old that a service contract was not prudent."  Rijsinghani actually thought that the Brooklyn Facility's equipment was sold or discarded when Dynamic departed, but was wrong.

267.     The Brooklyn Facility's equipment was not discarded; it was sold to MGM Ventures in July 2019 by a different entity, which had been in control of Dynamic prior to its departure from the Brooklyn Facility.

268.     Indeed, Majestic Medical took Dynamic's position at the Brooklyn Facility, but kept using the same equipment and personnel, albeit under the control of Mullakandov and MGM Ventures.

269.     For example, non-party radiologist Ralph Dauito, M.D. ("Dauito") worked for other radiology providers at the Brooklyn Facility (e.g., non-parties Dynamic and All County LLC), and continued working for Majestic Medical after Dynamic's departure from the Brooklyn Facility.

270.     Mullakandov used MGM Ventures to gain control over the operation and management of Majestic Medical, including Majestic Medical's professional fees and profits.

### 3.    Royal Medical Imaging, P.C. and Medical MRI, P.C.

271.    This scheme also operated from the Richmond Hill Facility, which was located at 101-07 Jamaica Avenue in Richmond Hill, New York.

272.    Lyons was the sham nominal owner of 2 radiology PCs that were installed at the Richmond Hill Facility—first, Royal Medical, and later Medical MRI.  Notably, Medical MRI was formed within weeks of Star Medical and Majestic Medical.

273.    Upon information and belief, Mullakandov controlled the Richmond Hill Facility, including the imaging equipment, staff, and technicians used at the facility.

274.    Mullakandov is an unlicensed person, so he was prohibited from delivering or billing for medical services, including MRIs.

275.    Mullakandov recruited Lyons to overcome this legal obstacle.

276.    Upon information and belief, as with the other PC Defendants, agreements were structured between Royal Medical and Medical MRI, and shell companies controlled by Mullakandov.

277.    Royal Medical and Medical MRI were operated in the same fraudulent manner as the other PC Defendants.

278.    For instance, a stamp of Lyons' signature was used to execute bills and other claim-related documentation submitted to Allstate in support of Royal Medical and Medical MRI's No-Fault claims, which allowed Mullakandov (or those acting under his direction and control) to operate Royal Medical and Medical MRI in Lyons' absence, as shown in the following example for claimant A.T. (claim no. 0564148831):

279.     Likewise, this same stamped signature was applied to an NF-3 form submitted to Allstate by Medical MRI in connection with MRIs billed at the Richmond Hill Facility on February 11, 2020 for claimant L.M. (claim no. 0574059929):



280.     Additionally, NF-3 forms and MRI reports submitted to Allstate by Royal Medical through the U.S. Mail falsely identified Lyons as a Board Certified Radiologist even though Lyons never obtained this certification, according to the American Board of Radiology:

| 16. IF TREATING PROVIDER IS DIFFERENT THAN BILLING PROVIDER COMPLETE THE FOLLOWING: | | | | | |
| Treating Provider's Name | Title | Licence or Certificate No. | Business Relation ( check applicable box) | | |
| | | | EMPLOYEE | INDEPENDENT CONTRACTOR | OTHER(SPECIFY) |
| Lyons John, M.D. | Board Certified Radiologist | 147837 | | | OWNER |

281.    Even though Lyons was the reported owner of Royal Medical and Medical MRI, the PCs were under Mullakandov's direction and control.

282.    The Richmond Hill Facility also shared patients with the Valley Stream Facility, which was controlled by DeGradi and Byrne.

283.    Royal Medical billed Allstate for unnecessary MRIs for claimant T.H. (claim no. 0553460429) on October 22, 2019.

284.    Later, Star Medical billed Allstate for unnecessary MRIs for claimant T.H. on January 27, 2020.

285.    Claimant W.A. underwent an initial evaluation on February 9, 2022 and was sent to Medical MRI for MRIs of the cervical spine, lumbar spine, left shoulder, left wrist, and left hand:

286.   Medical MRI subsequently billed Allstate for several unnecessary MRIs for claimant W.A. (claim no. 0658843362) on April 18, 2022 and April 25, 2022.

287.   However, months later, in September 2022, Star Medical billed for an MRI of W.A.'s thoracic spine pursuant to a nearly identical, yet undated, Medical MRI form that contained handwritten additions for a thoracic spine MRI:

288.    Patients of Star Medical were also sent to the Richmond Hill Facility for MRIs.

289.    For example, the prescription form reproduced below for Star Medical claimant

G.B. (claim no. 0614879732) directed G.B. to the Richmond Hill Facility for an MRI.



290.    However, Star Medical's bill represented these services as having been performed at the Valley Stream Facility:

| 15. REPORT OF SERVICES RENDERED -- ATTACH ADDITIONAL SHEETS IF NECESSARY | | | | |
|---|---|---|---|---|
| DATE OF SERVICE | PLACE OF SERVICE INCLUDING ZIP CODE | DESCRIPTION OF TREATMENT | FEE SCHEDULE TREATMENT CODES | TOTAL CHARGE |
| 04/01/202 | 141 E Merrick Road Valley Stream, NY 11580 | MRI Thoracic spine | 72146 | $1,055.60 |
| | | | | $1,055.60 |

291.    Likewise, the prescription form reproduced below for Star Medical claimant J.F. (claim no. 0614879732) also directed J.F. to the Richmond Hill Facility for imaging services.

292.    However, according to Star Medical's bill for these services purportedly rendered on April 1, 2021 for J.F., Star Medical represented these services as having been performed at the Valley Stream Facility:

| 15. REPORT OF SERVICES RENDERED -- ATTACH ADDITIONAL SHEETS IF NECESSARY | | | | |
| --- | --- | --- | --- | --- |
| DATE OF SERVICE | PLACE OF SERVICE INCLUDING ZIP CODE | DESCRIPTION OF TREATMENT | FEE SCHEDULE TREATMENT CODES | TOTAL CHARGE |
| 04/01/2021 | 141 E Merrick Road Valley Stream, NY 11580 | MRI Cervical spine | 72141 | $967.70 |
| | | | | $967.70 |

| 15. REPORT OF SERVICES RENDERED -- ATTACH ADDITIONAL SHEETS IF NECESSARY | | | | |
| --- | --- | --- | --- | --- |
| DATE OF SERVICE | PLACE OF SERVICE INCLUDING ZIP CODE | DESCRIPTION OF TREATMENT | FEE SCHEDULE TREATMENT CODES | TOTAL CHARGE |
| 04/01/2021 | 141 E Merrick Road Valley Stream, NY 11580 | MRI Lumbar spine | 72148 | $1,003.20 |
| | | | | $1,003.20 |

293.    Additionally, Medical MRI shared the same radiology technician employed by other PC Defendants that operated at the Brooklyn Facility and Valley Stream Facility during the relevant period.

294.    Specifically, non-party radiology technician Rafal Drozd ("Drozd") worked for both Majestic Medical and Medical MRI during the course of this scheme.

295.    Drozd also worked as a radiology technician for Star Medical during the same period.

296.    Moreover, Medical MRI billed Allstate for services purportedly rendered by non-party radiologist, Dauito, who was also identified as the treating provider on bills submitted to Allstate by Dynamic Medical, Majestic Medical, and Star Medical during the relevant period.

297.    Medical MRI further billed Allstate for services purportedly performed by another non-party radiologist, Alan Greenfield, M.D. ("Greenfield"), who also was identified as the

treating provider on bills submitted by Majestic Medical and Star Medical during the relevant period.

### C.   FRAUDULENT BILLING FOR UNNECESSARY MRIs

298.   This scheme was driven by medically unnecessary MRIs.

299.   Claimants were rushed into undergoing imaging studies shortly after the purported accident, which is outrageous because MRIs should only be ordered when there is documented evidence of persistent pain following failure of conservative management, and only in select cases, or where there are specific clinical indications justifying early imaging.

300.   The timing of the MRIs is important in this case because claimants were suffering from degenerative conditions, rather than acute injuries caused by automobile accidents.

301.   In cases of degenerative conditions, MRIs only become appropriate if the patient's pain persists following a course of conservative care, which means it was not possible for the necessity of the MRIs to arise within the short period following the reported accident.

302.   The MRIs ordered based on vague, minor, or non-specific pain complaints are improper, and the PC Defendants violated New York law by accepting orders and billing for services when there was no valid basis to do so.

303.   Justification for early imaging of the spinal axis includes clinical concerns for (a) fracture, (b) progressive neurological decline, such as weakness in a limb, (c) compression of the spinal cord resulting in impaired coordination (i.e., myelopathy with ataxia), (d) progressive gait decline, or (e) concerns for malignancy or infection.

304.   Justification for early imaging of a joint includes (a) concern for fracture or dislocation, or (b) concern for malignancy or infection.

305.     In the absence of these clinical signs to justify early imaging, imaging should not be ordered until an individual receives 4 to 6 weeks of conservative care through either physical therapy or chiropractic services.

306.     Early imaging results often inappropriately are used to justify overtreatment, including invasive pain management procedures and surgeries.

307.     The Defendants' misconduct and misrepresentations caused Allstate to make No-Fault payments to the PC Defendants in connection with claims where the PC Defendants had no right to be paid.

308.     The representative examples below demonstrate the PC Defendants' billing for unnecessary imaging studies that led to additional unnecessary testing, treatment, and procedures.

        **1.**      **<u>Star Medical – False Medical Billing Exemplars</u>**

           **a.**      *A.D. (claim no. 0573172335)*

309.     Claimant A.D. was supposedly involved in a motor vehicle accident on December 20, 2019.

310.     A.D. visited the emergency room as a walk-in patient and was diagnosed with a left arm contusion.  Notably, A.D. denied any neck or back pain during the encounter:

**ED Provider Note**

Last Updated: 12/20/2019 10:06:10 PM   [Entered: 12/20/2019 9:14:00 PM]   Authored By: Wider, Megan M (Physician Assistant)

HISTORY OF PRESENT ILLNESS:
International Travel:
International Travel within 21 days? No[1]
Preferred Language to Address Healthcare:
• Preferred Language to Address          English
  Healthcare
Child Abuse Assessment (patients less than 13 yrs):
Chief Complaint: motor vehicle collision.
• Chief Complaint: The patient is a ▮▮▮▮▮ complaining of MVC.
• HPI Objective Statement: ▮▮ otherwise healthy here after MVA at 4pm. ▮▮ was the restrained driver in a vehicle struck on drivers side of vehicle, unknown speed on side street. No airbags deployed, self extricated, no LOC. ▮▮ reports left arm pain. Denies headache, nausea, vomiting, vision changes, dizziness, numbness, weakness neck or back pain. Denies CP or SOB. Denies abdominal pain.
• Presenting Symptoms: left arm pain
• Associated Symptoms: none

311.    Thereafter, A.D. was examined by a chiropractor, non-party Craig Fishler, DC ("Fishler") at a clinic located at 430 West Merrick Road in Valley Stream, NY.  Fishler has been accused of referring patients for unnecessary MRIs during initial examinations.  *See GEICO v. Trinity Med., P.C.*, No. 1:20-cv-03080-NGG-RLM (E.D.N.Y.).  The facility at 430 West Merrick Road is a "one-stop shop for no-fault insurance fraud" according to allegations made in other actions concerning illegal PC ownership and patient referral schemes at the location.  *See GEICO v. Landow*, No. 21-cv-01440-NGG-RER (E.D.N.Y.); *GEICO v. Ahmad*, No. 22-cv-06713-ARR-RLM (E.D.N.Y.); *GEICO v. Stybel*, No. 22-cv-02834-PKC-MMH (E.D.N.Y.).

312.    There was no evidence of cervical spine pain—Fishler reported that A.D. did not have any neck pain, headaches, or any central nervous system symptoms—yet Fishler ordered MRIs of the cervical and lumbar spine during A.D.'s first office visit.

313.    The MRI orders were made by marking a pre-printed checklist, which presumed that MRIs of both the cervical and lumbar spine would be ordered in all cases:



RECOMMENDATIONS
( ) X-rays of the _____ to rule out fracture, dislocation, and bone pathology.
( ) Consider videofluoroscopy of the cervical spine to rule out ligamentous instability/laxity, malalignment and abnormal motion.
(X) Refer out for physiotherapy program to strengthen and rehabilitate damaged musculo-ligamentous structures and control the inflammatory process.
(X) Refer to a Neurologist ( to evaluate for concussion and discogenic radiculopathy).
( ) Refer to an Orthopedist ( to evaluate for post –traumatic disc involvement, fracture/dislocation, and upper/lower extremity injury).
( ) Refer to an Oral Surgeon to evaluate for TMJ dysfunction.
(X) MRI of the cervical and lumbar spine should be ordered to rule out suspected disc macrotrauma. MRI would determine the size, location and severity of disc involvement and confirm if there is neuroforaminal encroachment causing nerve root compression or spinal stenosis with HNP that may be compressing the spinal cord.

314.    Star Medical billed Allstate for the cervical and lumbar spine MRIs for A.D. on January 20, 2020 and January 31, 2020, respectively.

315.    Star Medical then billed Allstate for an MRI of A.D.'s left shoulder on February 7, 2020.

316.    Star Medical submitted a falsified prescription form in support of the bill for A.D.'s left shoulder MRI.

317.    Star Medical's bills for A.D.'s earlier cervical and lumbar spine MRIs were supported by an undated order form purportedly completed and signed by Fishler, which contained markings for MRIs of the cervical and lumbar spine:

318.    The undated MRI order form submitted in support of Star Medical's bill for A.D.'s left shoulder MRI contained markings for cervical and lumbar spine MRIs as the prior order form, but also contained an additional—but different—marking for a left shoulder MRI:

319.    The MRI order form submitted by Star Medical was either altered, or was pre-marked in an effort to ensure orders for cervical and lumbar spine MRIs were steered to Star Medical in all cases.

320.    Based on the same set of different markings for cervical and lumbar spine MRIs without contrast appearing on different forms, it appears that these orders were presupposed for all patients.  Star Medical is not entitled to No-Fault payments for A.D.'s MRIs because there was no basis to order them in the first place—there was no evidence to justify early MRIs.

321.    Because the diagnostic medical imaging billed to Allstate by Star Medical was excessive, medically unnecessary, and falsely charged, Star Medical's charges for A.D. are false, and thus are not compensable under New York's No-Fault laws.

**b.    *D.K. (claim no. 0572305399)***

322.    Claimant D.K. was supposedly involved in a motor vehicle accident on December 14, 2019.

323.    D.K. was then evaluated at a clinic located at 787 Meacham Avenue in Elmont, NY.

324.    D.K. was ordered to undergo MRIs of both shoulders and the cervical and lumbar spine at the end of the initial examination.

325.    The MRIs were ordered even though D.K. had no evidence of injury that warranted immediate imaging.

326.    D.K.'s MRI orders were referred to Star Medical:



327.    D.K.'s MRI orders were also referred to non-party All County LLC ("All County"), which is a different imaging provider owned by DeGradi and Byrne:



328.    Star Medical billed Allstate for D.K.'s cervical spine MRI on February 7, 2020.

63

329. All County billed Allstate for D.K.'s left and right shoulder MRIs on February 21, 2020.

330. Star Medical then billed Allstate for D.K.'s left shoulder and lumbar spine MRIs on March 9, 2020.

331. Star Medical billed for D.K.'s left shoulder MRI even though it had already been billed to Allstate by All County.

332. Star Medical and All County shared patients and double-billed for unnecessary and duplicative services in connection with D.K.

333. Because the diagnostic medical imaging billed to Allstate by Star Medical was excessive, medically unnecessary, and falsely charged, Star Medical's charges for D.K. are false, and thus are not compensable under New York's No-Fault laws.

334. Overall, Allstate was induced to pay at least $879.73 to Star Medical for these fraudulent services rendered to D.K. during the relevant period.

### c.  *P.W. (claim no. 0643702995)*

335. Claimant P.W. was supposedly involved in a motor vehicle accident on August 28, 2021.

336. On September 1, 2021, P.W. was examined by non-party Phyllis Gelb, M.D. ("Gelb"), a provider with a history of participating in No-Fault fraud schemes that involved predetermined treatment protocols. *See GEICO v. Ahmed*, No. 1:22-cv-01679-ENV-SJB (E.D.N.Y.); *Liberty Mut. Ins. Co. v. AVK Rx, Inc.*, No. 2:22-cv-07329-GRB-SIL (E.D.N.Y.).

337. P.W. was ordered to undergo MRIs of the cervical and lumbar spine mere days after the alleged accident.

338.    The MRIs were ordered using a pre-printed prescription form, which was stamped with Gelb's signature:



339.    There was no evidence that P.W. needed early MRIs.

340.    Star Medical billed Allstate for P.W.'s cervical and lumbar spine MRIs on September 8, 2021 and September 29, 2021, respectively.  The MRI reports were authored by non-party radiologist Dauito, an independent contractor who supposedly interpreted images for Star Medical, All County, and many other radiology providers during the relevant period.

341.    Incredibly, Dauito recommended that P.W. undergo needle EMG testing to correlate the cervical spine MRI findings, which is not an appropriate recommendation for a reading radiologist to make.

342.   P.W.'s other providers then used Star Medical's MRIs as a basis to support further unnecessary services over the next several weeks, including invasive pain management injections and surgeries.

343.   Because the diagnostic medical imaging billed to Allstate by Star Medical was excessive, medically unnecessary, and falsely charged, Star Medical's charges for P.W. are false, and thus are not compensable under New York's No-Fault laws.

### 2.   Royal Medical – False Medical Billing Exemplars

#### a.   *G.S.* (*claim no. 0548784909*)

344.   Claimant G.S. was supposedly involved in a motor vehicle accident on May 30, 2019.

345.   G.S. underwent an initial examination on June 3, 2019, which was conducted by a nurse practitioner under the supervision of non-party physician Sonia Armengol, M.D. ("Armengol") at a clinic located at 205-16 Jamaica Avenue in Hollis, NY.  Armengol has a long history of involvement in No-Fault fraud schemes as a "treating provider" at numerous clinics. *See GEICO v. Armengol*, No. 1:20-cv-06052-RPK-SJB (E.D.N.Y.); *State Farm Mut. Auto. Ins. Co. v. Lexington Med. Diag. Servs., P.C.*, No. 1:18-cv-03312-DLI-PK (E.D.N.Y.).   Other providers operating from the 205-16 Jamaica Avenue clinic have similar records of involvement in No-Fault schemes that revolve around predetermined treatment protocols and billing for unnecessary services. *See State Farm Mut. Auto. Ins. Co. v. Modern Chiropractic, P.C.*, No. 2:19-cv-05895-RRM-SJB (E.D.N.Y.).

346.   G.S. was ordered to undergo MRIs of the right knee, cervical spine, and lumbar spine at this initial examination, which were billed by Royal Medical on June 11, 2019 (cervical spine and right knee) and July 9, 2019 (lumbar spine).

347.    There was no clinical justifications for the early MRIs for G.S.

348.    There was no evidence that G.S. suffered from radiating pain, numbness, tingling into the limbs, or progressive neurologic compromise that could possibly justify early spinal imaging studies.

349.    Because the diagnostic medical imaging billed to Allstate by Royal Medical was excessive, medically unnecessary, and falsely charged, Royal Medical's charges for G.S. are false, and thus are not compensable under New York's No-Fault laws.

350.    Overall, Allstate was induced to pay at least $620.16 to Royal Medical for these fraudulent services rendered to G.S. during the relevant period.

### b.    *D.M. (claim no. 0554428268)*

351.    Claimant D.M. was supposedly involved in a motor vehicle accident on July 23, 2019.

352.    D.M. was examined the same day by non-party physician Joseph Raia, M.D., who did not order MRIs.

353.    D.M. was then evaluated again the next day by a chiropractor at the same clinic, who ordered MRIs of D.M.'s cervical and lumbar spine.  The MRIs were ordered even though there were no new findings to support early imaging.

354.    D.M.'s evaluations did not produce evidence that early MRIs were needed—there was no radiation of pain, numbness, or tingling into the limbs.

355.    Royal Medical billed Allstate for D.M.'s unwarranted cervical spine and lumbar spine MRIs on July 25, 2019 and September 3, 2019, respectively.

356.     Because the diagnostic medical imaging billed to Allstate by Royal Medical was excessive, medically unnecessary, and falsely charged, Royal Medical's charges for D.M. are false, and thus are not compensable under New York's No-Fault laws.

### c.     *P.W. (claim no. 0555850569)*

357.     Claimant P.W. was supposedly involved in a motor vehicle accident on August 2, 2019.

358.     P.W. then sought treatment from non-party Metro Pain Specialists, P.C. ("Metro Pain") at a clinic located at 204-12 Hillside Avenue in Hollis, NY.

359.     At the time, the 204-12 Hillside Avenue clinic was involved in several No-Fault fraud schemes.  *See State Farm Mut. Auto. Ins. Co.  v. Metro Pain Specialists, P.C.*, No. 1:21-cv-05523-MKB-PK (E.D.N.Y.);  *GEICO v. Starrett City Medical, P.C.*, No. 1:21-cv-00059 (E.D.N.Y.); *Allstate Ins. Co. v. Hollis Novel Comprehensive Medical, P.C.*, No. 1:20-cv-06108-ENV-RER (E.D.N.Y.).

360.     The 204-12 Hillside Avenue clinic was also involved in a massive criminal scheme. Numerous persons were indicted in *United States v. Rose*, No. 1:19-cr-00789-PGG (S.D.N.Y.) for paying bribes to 911 dispatchers, medical personnel, police officers, and others in exchange for confidential patient information, which was used to recruit patients and steer them to a preferred network of clinics.  Wiretap evidence indicates that patients were steered to the 204-12 Hillside Avenue clinic. *See United States v. Rose*, No. 1:19-cr-00789-PGG (S.D.N.Y.), Dkt. No. 398-5, at pp. Exhibit A 1162-Exhibit A 1163 (Affidavit of New York State Police Investigator Paul Schneeloch ("Schneeloch") dated December 8, 2016), attached hereto as Exhibit 3.  Several unlicensed persons—non-parties Peter Khaim, Roman Israilov, and Alexander Gulkarov—are indicted for their illegal operation and control of several No-Fault clinics, including the 204-12

Hillside Avenue clinic.  *United States v. Khaim*, No. 1:20-cr-00580 (E.D.N.Y.); *United States v. Gulkarov*, No. 1:22-cr-00020-PGG (S.D.N.Y.).

361.    A non-party physician Patricia Kelly, D.O. ("Kelly") evaluated P.W. at the 204-12 Hillside Avenue clinic, where Kelly worked for Metro Pain.  Kelly has been accused of participating in a fraudulent prescription and kickback scheme while working for Metro Pain at the 204-12 Hillside Avenue clinic.  *See GEICO v. Orthopain Supply, Inc.*, No. 1:23-cv-03413-RPK-RER (E.D.N.Y.); *GEICO v. Rego Park Pharmacy LLC*, No. 1:22-cv-05477-MKB-RER (E.D.N.Y.).

362.    There was no evidence that P.W. needed early MRIs, yet Kelly ordered 4 separate MRIs of P.W.'s feet and ankles.  Indeed, Kelly did not even document any examination of P.W.'s foot or ankle.

363.    Royal Medical billed Allstate for P.W.'s unnecessary ankle and feet MRIs on August 23, 2019 and August 30, 2019, respectively.

364.    These 4 MRIs of P.W.'s feet and ankles were inappropriately ordered at the initial evaluation of P.W. based solely on his subjective complaints of pain.

365.    Because the diagnostic medical imaging billed to Allstate by Royal Medical was excessive, medically unnecessary, and falsely charged, Royal Medical's charges for P.W. are false, and thus are not compensable under New York's No-Fault laws.

### d.    *A.T. (claim no. 0564148831)*

366.    Claimant A.T. was supposedly involved in a motor vehicle accident on September 30, 2019.

367.    A.T. commenced physical therapy and chiropractic treatment the next day on October 1, 2019.

368.    On October 3, 2019, A.T. was examined by a physician.

369.    The chiropractor, physical therapist, and physician all diagnosed A.T. with symptoms compatible with a sprain/strain injury and axial neck and low-back pain.  A.T.'s treating providers did not report any joint pain or any radiation of pain, numbness, or tingling into the limbs.

370.    Despite the absence of any radicular symptoms into the limbs and a lack of conservative treatment, the physician ordered MRIs of A.T.'s cervical and lumbar spines at the time of the initial examination.

371.    Royal Medical billed Allstate for the unnecessary MRIs of A.T.'s cervical and lumbar spine on October 15, 2019 and October 22, 2019, respectively.

372.    Because the diagnostic medical imaging billed to Allstate by Royal Medical was excessive, medically unnecessary, and falsely charged, Royal Medical's charges for A.T. are false, and thus are not compensable under New York's No-Fault laws.

### 3.    Majestic Medical – False Medical Billing Exemplars

#### a.    *R.A. (claim no. 0578202475)*

373.    Claimant R.A. was supposedly involved in a motor vehicle accident on February 12, 2020.

374.    R.A. then sought treatment at a clinic located at 2379 Ralph Avenue in Brooklyn, NY.  The 2379 Ralph Avenue clinic is a "one-stop shop for no-fault insurance fraud," according to the complaint filed in *GEICO v. Landow*, No. 1:21-cv-NGG-RER (E.D.N.Y.).

375.    R.A. was ordered at the initial visit to undergo MRIs of the cervical, lumbar, and thoracic spine, plus MRIs of the left shoulder and left hip.  The orders were made using a pre-printed checklist that contained a huge assortment of additional services to prescribe, and that also

pre-supposed the purpose of the cervical, lumbar, and thoracic spine MRIs (e.g., "to rule out discogenic injury"):



376.    R.A. underwent a left shoulder MRI at a different facility on February 20, 2020, which was the same day as R.A.'s initial examination.

377.    Majestic Medical then billed Allstate for R.A.'s cervical spine and left hip MRIs on February 28, 2020, the lumbar spine MRI on March 5, 2020, and the thoracic spine MRI on March 12, 2020.

378.    R.A. did not need the MRIs in the first place, and spreading the timing of the MRIs over several different days was also unnecessary; but doing so enabled Majestic Medical to extract maximum profit by avoiding the Fee Schedule's rules for reducing the charges for additional services provided on the same day of service.

379.    R.A. then went back to the 2379 Ralph Avenue clinic for a follow-up visit, during which R.A. was ordered—for a second time—to undergo MRIs of the lumbar and thoracic spine.

380.    There was no evidence that R.A. needed early MRIs.

381.    The repeat ordering of the lumbar and thoracic spine MRIs shows that the results of R.A.'s MRIs were not considered, meaning they were unnecessary—which also means the MRIs billed to Allstate by Majestic Medical are not compensable.

71

**b.**   *S.G. (claim no. 0628036048)*

382.   Claimant S.G. was supposedly involved in a motor vehicle accident on May 30, 2021.

383.   S.G. was then evaluated at a clinic located at 2673 Atlantic Avenue in Brooklyn, NY, and was ordered to undergo MRIs of the cervical, thoracic, and lumbar spine.  The MRIs were ordered by non-party physician Kamal Tadros, M.D. ("Tadros"), who has been the subject of allegations that he participated in a scheme to unlawfully obtain No-Fault benefits, including for medically unnecessary treatment.  *See GEICO v. Trinity Med., P.C.*, No. 1:20-cv-03080-NGG-RLM (E.D.N.Y.).

384.   Tadros specifically steered the MRIs for S.G. to Majestic Medical:

| Referrals/Response Letter |
|---|
| **To:** PC Majestic Medical lm<br>**From:** Kamal Tadros MD<br>**Sent:** 06/10/2021 18:57:06<br>**Subject:** Patient Referral<br>**Regarding:** S████ G████<br><br>72141- Cervical Spine MRI w/o contrast72146- Thoracic Spine MRI w/o contrast72148- Lumbar Spine MRI w/o contrast<br><br>Sincerely,<br><br>Kamal Tadros MD |

385.   Majestic Medical billed for S.G.'s thoracic spine MRI on June 15, 2021, and then Majestic Medical billed for S.G.'s cervical and lumbar spine MRIs on July 1, 2021.

386.   S.G. did not need early MRIs—there was no radiating pain or neurologic symptoms in the limbs.

387.   The staggered timing was also unnecessary.  Billing for the thoracic spine MRI on a different day than the cervical and lumbar spine MRIs enabled the Defendants to defeat the Fee Schedule rules for billing same-day services in contiguous body areas.  Indeed, the MRIs were

ordered at the same time on a pre-printed Majestic Medical order form, which was undated and unsigned:



388.     The lack of necessity is also demonstrated by the fact that Tadros ignored S.G.'s MRI results at the next follow-up examination despite urgently ordering the imaging during the initial examination.

389.     Because the diagnostic medical imaging billed to Allstate by Majestic Medical was excessive, medically unnecessary, and falsely charged, Majestic Medical's charges for S.G. are false, and thus are not compensable under New York's No-Fault laws.

**c.     *E.A. (claim no. 0634635064)***

390.     Claimant E.A. was supposedly involved in a motor vehicle accident on July 8, 2021.

391.    E.A. was then evaluated by non-party physician Cathy Delerme-Pagan, M.D. ("Delerme-Pagan") at a facility located at 1650 Eastern Parkway in Brooklyn, NY.  Delerme-Pagan has been sued for writing unnecessary prescriptions as part of an unlawful referral scheme. *See GEICO v. New Century Pharmacy Inc.*, No. 1:19-cv-06802-ENV-RER (E.D.N.Y.).

392.    E.A. was ordered to undergo MRIs of the cervical and lumbar spine during the initial examination, which was before any attempt at conservative treatment.

393.    Majestic Medical billed for E.A.'s cervical spine MRI on September 1, 2021, and the lumbar spine MRI on September 9, 2021.

394.    E.A. was seen again at the 1650 Eastern Parkway clinic on September 15, 2021, just days after the MRIs.  This time, E.A. was evaluated by a different provider, non-party Tri-borough NY Medical Practice, P.C. ("Tri-borough").  Notably, E.A.'s evaluation did not reference the prior MRIs billed by Majestic Medical.  E.A. was then ordered to undergo bilateral MRIs of the shoulders and knees.

395.    E.A.'s MRI orders were issued on pre-printed Majestic Medical forms that were stamped, but not signed, by the prescribers:



396.    Majestic Medical then billed Allstate for E.A.'s left shoulder MRI on October 11, 2021.

397.    Notably, on October 12, 2021, a different provider billed Allstate for diagnostic ultrasounds of E.A.'s shoulders, knees, and lumbar spine.  Each report stated that "no prior studies are available" and concluded with recommendations for MRIs, all of which demonstrates how the unnecessary MRIs were never factored into the patient's care.

398.    E.A. did not need early MRIs—there was no radiating pain or neurologic symptoms in the limbs, nor was there any attempt at conservative care.

399.    E.A. also did not need the second round of MRIs, especially the duplicative MRI of the left shoulder.

400.    The lack of medical necessity for the MRIs is demonstrated by the fact that Majestic Medical's MRIs were not meaningfully considered or discussed in any of the subsequent patient reports, but instead were ordered as means to justify future treatment.

401.    Because the diagnostic medical imaging billed to Allstate by Majestic Medical was excessive, medically unnecessary, and falsely charged, Majestic Medical's charges for E.A. are false, and thus are not compensable under New York's No-Fault laws.

### 4.    Medical MRI – False Medical Billing Exemplars

#### a.    *R.F. (claim no. 0630745701)*

402.    Claimant R.F. was supposedly involved in a motor vehicle accident on May 27, 2021.

403.    R.F. was then evaluated on June 15, 2021 by non-party physician Hong Pak, M.D. ("Pak") at a facility located at 245 Rockaway Avenue in Valley Stream, NY.  Pak was implicated in a scheme that involved fraudulent prescriptions, including prescriptions from Pak that appeared forged.  *See GEICO v. Boulevard 9229 LLC*, No. 1:22-cv-02160-BMC (E.D.N.Y.).

404. The same day, R.F. was also examined by non-party Joseph Richichi, D.C. ("Richichi"), a chiropractor who was working through non-party Ocean Blue Chiropractic, P.C. at the 245 Rockaway Avenue facility.

405. Medical MRI then billed Allstate for an MRI of R.F.'s cervical spine on July 16, 2021, and an MRI of the lumbar spine on July 30, 2021.

406. The MRIs were ordered by Richichi according to Medical MRI's reports:

**MEDICAL MRI PC**

101-07 Jamaica Ave Richmond Hill, NY, 11418
Phone:(718) 374-3388 Fax:(347) 308-5757

| PATIENT NAME: | F█████ R█ |
| REFERRING PHYSICIAN: | DR.JOSEPH RICHICHI |
| SERVICE: | MRI CERVICAL SPINE |
| DATE OF SERVICE: | 07/16/2021 |

**MEDICAL MRI PC**

101-07 JAMAICA AVE. RICHMOND HILL, NY 11418

| PATIENT NAME: | F█████ R█ |
| DATE OF SERVICE: | 07/30/2021 |
| REFERRING PHYSICIAN: | DR.JOSEPH RICHICHI |

**MRI LUMBAR SPINE**

407. This is false because no MRI orders were given in Richichi's initial chiropractic examination report:

**OCEAN BLUE CHIROPRACTIC, PC**

INITIAL CHIROPRACTIC EXAMINATION

DATE OF ACCIDENT: 5/27/21    DATE OF EXAM: 6/15/21

Name: R_____ F_____    Date of Birth_____

Based on my evaluation., the following diagnostic tests are clinically necessary to form an effective treatment plan to confirm initial diagnosis:
X-Ray: Cervical Spine __ Thoracic Spine __ Lumbar Spine __

Right/Left Shoudler __ Right/Left Knee __ Right/Left Ankle __

MRI: Cervical Spine __ Thoracic Spine __ Lumbar Spine __

__ At the present time the prognosis is guarded.

__ Prognosis is deferred pending receipt of medical background information, results of diagnostic tests, and further observation and management.

__ Based on the physical examination and the presented history, it is my professional opinion that the patient's precondition is casually related to the incident in this initial examination.

Sincerely,

Joseph Richichi, DC_____

Date 6-15-21

408. Medical MRI submitted a pre-printed order form for R.F.'s MRIs, which did not identify the referring physician; instead, the form contained an apparent erasure of Pak's name:

**MEDICAL MRI PC**
Doctor of Diagnostics
Tel: 718-374-3388 Fax: 347-308-5757
01-07 Jamaica Ave, Richmond Hill NY. 11418

Physician *Lette
Please be advised
under my care, I f
Clinical Indicatio

Patient's Name _____
Referred by _____
Address _____    Phone

409.     Medical MRI charged Allstate nearly $2,000 in connection with R.F. for MRIs that were never actually prescribed.  Even if the MRIs had been validly prescribed, Medical MRI's bills are still not compensable because R.F. did not need early MRIs.

410.     Because the diagnostic medical imaging billed to Allstate by Medical MRI was excessive, medically unnecessary, and falsely charged, Medical MRI's charges for R.F. are false, and thus are not compensable under New York's No-Fault laws.

b.     *J.A. (claim no. 0618457550)*

411.     Claimant J.A. supposedly was involved in a motor vehicle accident on March 1, 2021.

412.     J.A. was then evaluated on March 4, 2021, and ordered to undergo MRIs of the left knee, left hip, and lumbar spine.

413.     Medical MRI billed Allstate for J.A.'s MRIs on March 9, 2021 (left knee) and March 17, 2021 (lumbar spine and left hip).

414.     J.A. did not need early MRIs; in fact, J.A.'s initial provider did not actually make any MRI referrals according to the examination report—J.A's report stated that MRIs would be referred if symptoms persisted for more than 3 weeks after the accident:

415. However, orders were sent to Medical MRI on March 5, 2021 for MRIs of the lumbar spine, hip, and knee. The prescription for J.A.'s MRIs appeared on an unsigned pre-printed Medical MRI order form:



416. Medical MRI's bills for J.A. are not compensable because the MRIs were not validly prescribed. And even if the MRIs had been properly prescribed, the bills are still not

compensable because J.A. did not need early MRIs—there was no radiating pain or neurologic symptoms in the limbs, nor was there any attempt at conservative care.

417.    Because the diagnostic medical imaging billed to Allstate by Medical MRI was excessive, medically unnecessary, and falsely charged, Medical MRI's charges for J.A. are false, and thus are not compensable under New York's No-Fault laws.

c.    *J.N. (claim no. 0598463446)*

418.    Claimant J.N. was purportedly involved in a motor vehicle accident on August 31, 2020.

419.    On September 2, 2020, J.N. was evaluated by a chiropractor who ordered an MRI of J.N.'s cervical spine based solely on a complaint of neck pain.

420.    There was no indication for this spinal MRI study ordered because there was no documentation of any neurologic symptoms that would potentially justify the early imaging study before J.N. was afforded the opportunity to attempt conservative care.

421.    Nonetheless, Medical MRI charged Allstate for this unnecessary cervical spine MRI for J.N. on September 15, 2020.

422.    Because the diagnostic medical imaging billed to Allstate by Medical MRI was excessive, medically unnecessary, and falsely charged, Medical MRI's charges for J.N. are false, and thus are not compensable under New York's No-Fault laws.

d.    *C.F. (claim no. 0642316848)*

423.    Claimant C.F. was purportedly involved in a motor vehicle accident as a restrained passenger on September 7, 2021.

424.    On September 10, 2021, C.F. was examined by Hong Pak, M.D. ("Pak") who allegedly provided fraudulent prescriptions for medically unnecessary medications and durable

medical equipment. *See Liberty Mut. Ins. Co. v. AVK Rx, Inc.*, No. 2:22-cv-07329-GRB-SIL (E.D.N.Y.); *GEICO v. Wallegood, Inc.*, No. 1:21-cv-01986-PKC-RLM (E.D.N.Y.).

425.   Pak documented C.F.'s complaints of spinal axis pain, bilateral shoulder pain, and left elbow pain.

426.   Despite failing to document any justification for early imaging studies, Pak ordered 5 separate MRIs at this initial visit of C.F.'s entire spinal axis and both shoulders.

427.   Medical MRI billed Allstate for these unnecessary MRIs for C.F. on September 25, 2021 (right shoulder and cervical spine), on October 9, 2021 (left shoulder), and on November 3, 2021 (lumbar spine).

428.   Based on this unjustified series of MRIs ordered at C.F.'s initial visit, C.F. received a course of unnecessary pain management treatment including a cervical epidural steroid injection on November 1, 2021 and a percutaneous discectomy procedure on November 8, 2021.

429.   Because the diagnostic medical imaging billed to Allstate by Medical MRI was excessive, medically unnecessary, and falsely charged, Medical MRI's charges for C.F. are false, and thus are not compensable under New York's No-Fault laws.

### e.   *L.L. (claim no. 0644325052)*

430.   Claimant L.L. was purportedly involved in a motor vehicle accident on September 29, 2021.

431.   L.L. was examined by Pak several days later on October 1, 2021.

432.   Pak ordered 5 MRIs of L.L.'s spinal axis and both knees at this initial examination despite no attempt at conservative intervention and even though there were no concerning neurologic findings on the physical examination of L.L.

433.   Medical MRI charged Allstate for unnecessary MRIs for L.L. on October 25, 2021 (lumbar spine) and November 1, 2021 (cervical spine).

434.   Because the diagnostic medical imaging billed to Allstate by Medical MRI was excessive, medically unnecessary, and falsely charged, Medical MRI's charges for L.L. are false, and thus are not compensable under New York's No-Fault laws.

### 5.   Lyons Medical – False Medical Billing Exemplars

#### a.   *F.P.* (*claim no. 0515642304*)

435.   Claimant F.P. was supposedly involved in a motor vehicle accident on August 31, 2018.

436.   On September 5, 2018, F.P. was evaluated by non-party chiropractor Walter Mendoza, D.C. ("Mendoza") at a clinic located at 31 Guy Lombardo Avenue in Freeport, NY. Mendoza has a history of involvement in alleged No-Fault schemes to defraud, including as a source of prescriptions for medically unnecessary durable medical equipment.  *See Allstate Ins. Co. v. Elite Medical Supply of New York, LLC*, No. 1:17-cv-00443-CBA-JO (E.D.N.Y.).

437.   Lyons Medical then billed Allstate on September 13, 2018 for MRIs of F.P.'s cervical and lumbar spine.  Lyons Medical then billed Allstate again on September 14, 2018 for an MRI of F.P.'s thoracic spine.

438.   Lyons Medical's bills are not compensable because F.P.'s MRIs were not actually prescribed.

439.   Lyons Medical's narrative reports identify Mendoza as the prescribing provider but this is false:

 

440.    Mendoza did not order any MRIs in the report of F.P.'s initial examination.

441.    Mendoza's pre-printed follow-up examination form the following day also was not marked for any MRIs:

442.    Even if the MRIs had been properly prescribed, Lyons Medical's bills are still not compensable because J.A. did not need early MRIs—there was no radiating pain or neurologic symptoms in the limbs, nor was there any attempt at conservative care.

443.    Moreover, F.P. was evaluated by an orthopedist at the same clinic on September 6, 2018 whose report does not indicate pain in F.P.'s thoracic and lumbar spine.

444.    Mendoza's next evaluation of F.P. also fails to discuss the prior MRI studies, which further demonstrates that the MRIs are unnecessary.

445.    F.P.'s providers did not document any neurologic findings to warrant early MRIs, and the MRIs of F.P.'s entire spinal axis were unwarranted especially where F.P.'s other providers (emergency department and orthopedist) did not find mid-back or low back pain.

446.     Because the diagnostic medical imaging billed to Allstate by Lyons Medical was excessive, medically unnecessary, and falsely charged, Lyons Medical's charges for F.P. are false, and thus are not compensable under New York's No-Fault laws.

### b.     C.J. (claim no. 0515919793)

447.     Claimant C.J. was supposedly involved in a motor vehicle accident on September 5, 2018.

448.     C.J. was then evaluated by non-party Igor Zilberman, N.P. on September 6, 2018, which was the day after the accident.

449.     C.J. was ordered to undergo MRIs of the cervical spine, lumbar spine, and right shoulder during the initial evaluation even though there was no evidence to support the need for early MRIs.

450.     Lyons Medical billed Allstate on September 12, 2018 for C.J.'s cervical and lumbar MRIs, and then on September 13, 2018 for C.J.'s right shoulder MRI.

451.     There was no need for Lyons Medical to stagger the timing of C.J.'s MRIs other than to maximize profit; indeed, billing the right shoulder MRI on a different day than the cervical and lumbar spine MRIs enabled the Defendants to defeat the Fee Schedule rules for billing same-day services in contiguous body areas.

452.     The unnecessary MRIs led to additional unnecessary treatment—C.J. was subjected to invasive pain management injections and surgeries based on the MRIs.

453.     Because the diagnostic medical imaging billed to Allstate by Lyons Medical was excessive, medically unnecessary, and falsely charged, Lyons Medical's charges for C.J. are false, and thus are not compensable under New York's No-Fault laws.

c.      **L.W. (claim no. 0522461367)**

454.    Claimant L.W. was supposedly involved in a relatively minor motor vehicle accident on October 9, 2018.

455.    On October 25, 2018, L.W. was examined by a chiropractor for complaints of neck pain, upper back pain, lower back pain, and referred pain to the shoulders and hips.

456.    This chiropractor ordered MRIs of L.W.'s cervical and lumbar spine, which Lyons Medical billed to Allstate on November 5, 2018.

457.    On October 26, 2018, L.W. was evaluated by another physician for complaints of neck pain, bilateral shoulder pain, lower back pain, right hip pain, and right thumb pain.  This physician ordered 4 separate MRI scans, including bilateral shoulder MRIs, a brain MRI, and an MRI of the right hand.

458.    Lyons Medical billed Allstate over $5,000 for these unnecessary MRIs purportedly performed for L.W. on November 5, 2018 (cervical and lumbar spine), November 7, 2018 (bilateral shoulders), and November 8, 2018 (brain and right hand).

459.    Lyons Medical billed Allstate for 6 different MRI scans for L.W. within 1 month of the subject loss even though there was no evidence to justify early MRIs and no attempt at conservative care.

460.    Because the diagnostic medical imaging billed to Allstate by Lyons Medical was excessive, medically unnecessary, and falsely charged, Lyons Medical's charges for L.W. are false, and thus are not compensable under New York's No-Fault laws.

461.    Overall, Allstate was induced to pay at least $2,446.23 to Lyons Medical for these fraudulent services rendered to L.W. during the relevant period.

#### d. A.S. *(claim no. 0509140547)*

462. Claimant A.S. was supposedly involved in a motor vehicle accident on June 21, 2018.

463. On July 5, 2018, A.S. underwent an initial medical evaluation and an initial chiropractic evaluation.

464. Four separate MRI scans were ordered for A.S.'s bilateral shoulders, cervical spine, and lumbar spine—none of which were indicated.

465. Each of these MRIs was ordered and performed within 1 month of the purported underlying motor vehicle accident without adequate attempts at conservative care and without any clinical indications to justify such early imaging.

466. Lyons Medical charged Allstate more than $3,500 for these 4 unnecessary MRI studies for A.S. on July 11, 2018 (cervical and lumbar spine) and July 18, 2018 (bilateral shoulders).

467. Because the diagnostic medical imaging billed to Allstate by Lyons Medical was excessive, medically unnecessary, and falsely charged, Lyons Medical's charges for A.S. are false, and thus are not compensable under New York's No-Fault laws.

### 6. Instar Medical – False Medical Billing Exemplars

#### a. T.B. *(claim no. 0528267271)*

468. Claimant T.B. was purportedly involved in a motor vehicle accident on December 7, 2018.

469. T.B. was evaluated at a clinic located at 219 Hempstead Turnpike in West Hempstead, NY on December 28, 2018 by a non-party chiropractor named Peter Margulies, DC ("Margulies"). T.B. later was evaluated by non-party physician Alan Hausknecht, M.D.

("Hausknecht") at the same clinic.  Hausknecht was named as a defendant in a No-Fault fraud scheme involving false medical billing at multiple clinic locations.  *See GEICO v. Progressive Med. Care, P.C.*, No. 2:21-cv-06575-JS-SIL (E.D.N.Y.).  Margulies has also been accused of generating fraudulent prescriptions as part of a predetermined treatment protocol in connection with the 219 Hempstead Turnpike clinic.  *See GEICO v. Big Apple Med Equipment, Inc.*, No. 1:20-cv-05786-PKC-JRC (E.D.N.Y.).

470.    These providers ordered T.B. to undergo a massive number of MRIs.

471.    On February 8, 2019, Instar Medical billed Allstate for T.B.'s cervical and lumbar spine MRIs.

472.    On February 9, 2019, Instar Medical billed Allstate for T.B.'s left knee and left shoulder MRIs.

473.    On March 8, 2019, Instar Medical billed Allstate for T.B.'s right shoulder and thoracic spine MRIs.

474.    On March 9, 2019, Instar Medical billed for T.B.'s right knee MRI.

475.    Overall, Instar Medical billed Allstate over $6,000 for these unnecessary MRIs for T.B.

476.    None of these MRIs for T.B. had any clinical justification because they were ordered before any attempt was made at conservative measures and without any concerning progressive neurologic findings or concern for fracture or other significant musculoskeletal injury.

477.    Even if the MRIs were medically necessary (which they were not), Instar Medical's charges are still fraudulent because T.B.'s MRIs were purposely scheduled on different days to defeat the Fee Schedule rules for billing same-day services in contiguous body areas.

478.   Because the diagnostic medical imaging billed to Allstate by Instar Medical was excessive, medically unnecessary, and falsely charged, Instar Medical's charges for T.B. are false, and thus are not compensable under New York's No-Fault laws.

### b.   E.D. (claim no. 0528953052)

479.   Claimant E.D. was supposedly struck by a motor vehicle on December 11, 2018 as a pedestrian.

480.   E.D. was evaluated by a physician 7 days later.

481.   Instar Medical billed Allstate on January 10, 2019 for E.D.'s cervical and lumbar spine MRIs, and on January 18, 2019 for E.D.'s right knee MRI.

482.   Notably, no MRIs were indicated in the report of E.D.'s initial examination; instead, E.D.'s MRIs were ordered on an unsigned Lyons Medical pre-printed order form:



483.   Even if the MRIs were validly prescribed, Instar Medical's bills are still not compensable because E.D. did not need early MRIs.

484.   Instar Medical billed Allstate over $2,600 for these 3 unnecessary MRI scans for E.D. on January 10, 2018 (cervical and lumbar spine) and January 18, 2019 (right knee).

485.    Because the diagnostic medical imaging billed to Allstate by Instar Medical was excessive, medically unnecessary, and falsely charged, Instar Medical's charges for E.D. are false, and thus are not compensable under New York's No-Fault laws.

c.    *E.R. (claim no. 0536741085)*

486.    Claimant E.R. was supposedly involved in a motor vehicle accident on March 2, 2019.

487.    On March 5, 2019, E.R. was examined by a physician for complaints of headache, neck pain, low back pain, mid-back pain, left shoulder pain, and left hip pain.

488.    Despite the fact that E.R. had not received any conservative treatment and despite no documentation for clinical indications for early imaging studies, the physician ordered MRI scans of E.R.'s cervical spine, lumbar spine, and left shoulder on March 5, 2019.

489.    Instar Medical billed Allstate over $2,600 for these 3 MRIs for E.R. on March 11, 2019 (cervical and lumbar spine) and March 12, 2019 (left shoulder).

490.    None of these MRIs billed to Allstate by Instar Medical were clinically justified.

491.    E.R. was re-examined by this physician on multiple occasions, but the physician never reviewed or discussed the results of these MRI scans according to the reports of these follow-up examinations.

492.    Because the diagnostic medical imaging billed to Allstate by Instar Medical was excessive, medically unnecessary, and falsely charged, Instar Medical's charges for E.R. are false, and thus are not compensable under New York's No-Fault laws.

C.    FRAUDULENT BILLING FOR SERVICES BY INDEPENDENT CONTRACTORS

493.    Medical PCs are prohibited from collecting No-Fault payments for services provided by independent contractors.  *See* 11 N.Y.C.R.R. § 65-3.11.

494.     For a provider of healthcare services to be eligible to bill for and collect charges from an insurer for healthcare services pursuant to N.Y. Ins. Law § 5102(a), it must be the actual provider of the service.

495.     If a PC uses independent contractors—instead of employees—to provide medical services, then the PC is not eligible for payment under New York's No-Fault laws.  *See* DOI Opinion Letters, annexed hereto as Exhibit 1.

496.     In violation of New York law, the PC Defendants billed for services provided by individuals that were not employees of the professional corporation.

497.     Majestic Medical, Star Medical, and Medical MRI billed for services purportedly performed by non-party radiologists who have a history of working for other medical PCs on an independent-contractor basis.

498.     Upon information and belief, Dauito and Greenfield were never actually employed by any of the PC Defendants.

499.     Dauito performed radiology services for other imaging providers, including All County, through a non-party company named PKR Associates, P.C. ("PKR").  When Dauito provided services, he provided them through PKR.

500.     As illustrated in the representative examples set forth in the chart below, Majestic Medical, Star Medical, and Medical MRI all billed for services rendered by Dauito or Greenfield during the relevant period:

| Claimant | Date(s) of Service | Location of Service | PC Defendant | Reading Radiologist |
|---|---|---|---|---|
| J.A. (claim no. 0618457550) | 3/9/2021; 3/17/2021 | 101-07 Jamaica Ave, Richmond Hill, NY | Medical MRI | Alan Greenfield, M.D. |
| E.M. (claim no. 0662634773) | 4/1/2022 | 101-07 Jamaica Ave, Richmond Hill, NY | Medical MRI | Ralph Dauito, M.D. |

| Claimant | Date(s) of Service | Location of Service | PC Defendant | Reading Radiologist |
|---|---|---|---|---|
| B.B. (claim no. 0662634773) | 4/1/2022 | 101-07 Jamaica Ave, Richmond Hill, NY | Medical MRI | Ralph Dauito, M.D. |
| W.L. (claim no. 0606063881) | 11/19/2020 | 101-07 Jamaica Ave, Richmond Hill, NY | Medical MRI | Ralph Dauito, M.D. |
| L.M. (claim no. 0625399315) | 5/27/2021 | 101-07 Jamaica Ave, Richmond Hill, NY | Medical MRI | Alan Greenfield, M.D. |
| S.R. (claim no. 0632783510) | 7/26/2021 | 101-07 Jamaica Ave, Richmond Hill, NY | Medical MRI | Ralph Dauito, M.D. |
| T.D. (claim no. 0630990091) | 7/14/2021 | 101-07 Jamaica Ave, Richmond Hill, NY | Medical MRI | Ralph Dauito, M.D. |
| L.M. (claim no. 0625399315) | 6/5/2021 | 101-07 Jamaica Ave, Richmond Hill, NY | Medical MRI | Alan Greenfield, M.D. |
| S.G. (claim no. 0628036048) | 6/15/2021; 7/1/2021 | 409 Rockaway Ave, Brooklyn, NY | Majestic Medical | Ralph Dauito, M.D. |
| L.R. (claim no. 0624215935) | 10/15/2021; 10/29/2021; 11/12/2021 | 409 Rockaway Ave, Brooklyn, NY | Majestic Medical | Ralph Dauito, M.D. |
| E.W. (claim no. 0634635064) | 9/1/2021; 10/11/2021 | 409 Rockaway Ave, Brooklyn, NY | Majestic Medical | Ralph Dauito, M.D. |
| D.J. (claim no. 0580162949) | 7/20/2020 | 409 Rockaway Ave, Brooklyn, NY | Majestic Medical | Ralph Dauito, M.D. |
| D.J. (claim no. 0580162949) | 6/25/2020 | 409 Rockaway Ave, Brooklyn, NY | Majestic Medical | Alan Greenfield, M.D. |
| R.A. (claim no. 0578202475) | 3/5/2020; 3/12/2020 | 409 Rockaway Ave, Brooklyn, NY | Majestic Medical | Ralph Dauito, M.D. |
| J.D. (claim no. 0607163177) | 12/15/2020 | 409 Rockaway Ave, Brooklyn, NY | Majestic Medical | Ralph Dauito, M.D. |
| D.L. (claim no. 0610089609) | 1/4/2021; 1/18/2021 | 141 E. Merrick Road, Valley Stream, NY | Star Medical | Ralph Dauito, M.D. |

| Claimant | Date(s) of Service | Location of Service | PC Defendant | Reading Radiologist |
|---|---|---|---|---|
| A.W. (claim no. 0647551976) | 12/7/2021; 12/19/2021 | 141 E. Merrick Road, Valley Stream, NY | Star Medical | Ralph Dauito, M.D. |
| A.D. (claim no. 573172335) | 1/20/2020; 1/31/2020 | 141 E. Merrick Road, Valley Stream, NY | Star Medical | Ralph Dauito, M.D. |
| K.D. (claim no. 0572305399) | 3/9/2020 | 141 E. Merrick Road, Valley Stream, NY | Star Medical | Alan Greenfield, M.D. |
| C.W. (claim no. 0618962419) | 4/8/2021; 4/15/2021 | 141 E. Merrick Road, Valley Stream, NY | Star Medical | Alan Greenfield, M.D. |
| S.A. (claim no. 0634154974) | 7/28/2021; 8/4/2021 | 141 E. Merrick Road, Valley Stream, NY | Star Medical | Ralph Dauito, M.D. |

501.    No actual employer-employee relationship existed between Majestic Medical, Star Medical, and Medical MRI, and the physicians listed on the bills submitted to Allstate.

502.    Majestic Medical, Star Medical, and Medical MRI were not eligible to collect No-Fault payments for services provided by independent contractors.

D.    FAILURE TO COMPLY WITH THE APPLICABLE FEE SCHEDULE

1.    PC Defendants' Excessive Charges for Radiology Services

503.    The PC Defendants billed for diagnostic imaging services in excess of the Fee Schedule.

504.    The Fee Schedule uses the Current Procedural Terminology ("CPT") coding system, which is developed and published by the American Medical Association.

505.    The CPT coding system was designed to help standardize medical terminology and provide uniform language for coding medical services and procedures.

506.     Providers subject to the Health Insurance Portability and Accountability Act (HIPAA) are required to use CPT codes when submitting bills.  Providers must use accurate CPT codes when billing for services.

507.     The Fee Schedule sets forth a number of "Ground Rules" pertaining to the submission of charges for radiology services.

508.     Radiology Ground Rule 3 contains several "adjustments" that providers must make to their charges for "Multiple Diagnostic Procedures":

> A)  For two contiguous parts, the charge shall be the greater fee plus 50 percent of the lesser fee.
>
> B)  For two remote parts, the charge shall be the greater fee plus 75 percent of the lesser fee. Bilateral procedures are considered remote parts.
>
> C)  For three or more parts, whether contiguous or remote, the charge shall be the greatest fee plus 75 percent of the total of the lesser fees.

509.     Therefore, pursuant to Radiology Ground Rule 3, when two body parts are imaged in the same session, the provider must discount the procedure with the lesser fee by 50% (for two contiguous parts) or 25% (for two remote (e.g., bilateral) parts).

510.     "This discounting [under Radiology Ground Rule 3] furthers two goals of the No-Fault statute: reducing cost to consumers and discouraging fraud." *Brentwood Pain & Rehab. Servs., P.C. v. Allstate Ins. Co.*, 508 F. Supp. 2d 278, 294 (S.D.N.Y. 2007).

511.     However, the PC Defendants' charges for multiple diagnostic procedures on the same day for the same Allstate claimant routinely failed to make the reductions required by Radiology Ground Rule 3, as illustrated by the representative examples in the chart below:

| Claimant Initials | Claim Number | PC Defendant | Date of Service | CPT Codes | Description of Services | Total Amount Charged | Amount Actually Permissible Under Applicable Fee Schedule |
|---|---|---|---|---|---|---|---|
| C.V. | 0578217390 | Majestic Medical | 2/20/2020 | 72141; 72148 | Cervical MRI; Lumbar MRI | $1,791.73 | $1,571.79 |
| C.N. | 0561336520 | Majestic Medical | 3/9/2020 | 72141; 72148 | Cervical MRI; Lumbar MRI | $1,791.73 | $1,571.80 |
| N.P. | 0579621052 | Majestic Medical | 3/9/2020 | 72141; 72146 | Cervical MRI; Thoracic MRI | $1,839.34 | $1,399.47 |
| D.J. | 0580162949 | Majestic Medical | 7/20/2020 | 73721; 73221 | Right Knee MRI; Left Wrist MRI | $1,757.44 | $1,537.67 |
| R.A. | 0578202475 | Majestic Medical | 2/28/2020 | 72141; 73721 | Cervical MRI; Left Hip MRI | $1,758.40 | $1,538.47 |
| A.S. | 0509140547 | Lyons Medical | 7/11/2018 | 72141; 72148 | Cervical MRI; Lumbar MRI | $1,791.72 | $1,571.79 |
| A.S. | 0509140547 | Lyons Medical | 7/18/2018 | 73221; 73221 | Right Shoulder MRI; Left Shoulder MRI | $1,757.32 | $1,537.67 |
| A.B. | 0504130725 | Lyons Medical | 7/9/2018 | 73221; 73721 | Right Elbow MRI; Right Knee MRI | $1,757.32 | $1,537.67 |
| B.W. | 0513078782 | Lyons Medical | 9/21/2018 | 72141; 72148 | Cervical MRI; Lumbar MRI | $1,791.72 | $1,571.79 |
| B.G. | 0512202978 | Lyons Medical | 9/29/2018 | 72141; 72148 | Cervical MRI; Lumbar MRI | $1,791.72 | $1,571.79 |

| Claimant Initials | Claim Number | PC Defendant | Date of Service | CPT Codes | Description of Services | Total Amount Charged | Amount Actually Permissible Under Applicable Fee Schedule |
|---|---|---|---|---|---|---|---|
| C.C. | 0508262813 | Lyons Medical | 9/15/2018 | 72141; 72148 | Cervical MRI; Lumbar MRI | $1,791.72 | $1,571.79 |
| C.J. | 0515919793 | Lyons Medical | 9/12/2018 | 72141; 72148 | Cervical MRI; Lumbar MRI | $1,791.72 | $1,571.79 |
| D.L. | 0506534866 | Lyons Medical | 7/30/2018 | 73221; 73721 | Left Shoulder MRI; Left Hip MRI | $1,791.72 | $1,343.79 |
| D.L. | 0506534866 | Lyons Medical | 7/31/2018 | 72141; 72148 | Cervical MRI; Lumbar MRI | $1,791.72 | $1,343.79 |
| E.J. | 0509834841 | Lyons Medical | 8/1/2018 | 72141; 72148 | Cervical MRI; Lumbar MRI | $1,791.72 | $1,571.79 |
| F.P. | 0515642304 | Lyons Medical | 9/13/2018 | 72141; 72148 | Cervical MRI; Lumbar MRI | $1,791.72 | $1,571.79 |
| J.B. | 0527959092 | Instar Medical | 1/11/2019 | 72141; 72148 | Cervical MRI; Lumbar MRI | $1,791.72 | $1,571.79 |
| E.D. | 0528953052 | Instar Medical | 1/10/2019 | 72141; 72148 | Cervical MRI; Lumbar MRI | $1,791.72 | $1,571.79 |
| N.M. | 0528403371 | Instar Medical | 1/17/2019 | 73721; 73221 | Right Knee MRI; Right Shoulder MRI | $1,757.32 | $1,537.66 |
| N.M. | 0528403371 | Instar Medical | 1/23/2019 | 72141; 72148 | Cervical MRI; | $1,791.72 | $1,571.79 |

| Claimant Initials | Claim Number | PC Defendant | Date of Service | CPT Codes | Description of Services | Total Amount Charged | Amount Actually Permissible Under Applicable Fee Schedule |
|---|---|---|---|---|---|---|---|
| | | | | | Lumbar MRI | | |
| S.O. | 0533126223 | Instar Medical | 2/9/2019 | 72141; 72148 | Cervical MRI; Lumbar MRI | $1,791.72 | $1,571.79 |
| E.E. | 0527343750 | Instar Medical | 1/24/2019 | 72141; 72146 | Cervical MRI; Thoracic MRI | $1,839.32 | $1,399.46 |
| B.G. | 0527408090 | Instar Medical | 12/14/2018 | 72141; 72148 | Cervical MRI; Lumbar MRI | $1,791.72 | $1,571.79 |
| B.G. | 0527408090 | Instar Medical | 12/15/2018 | 73221; 73221 | Right Shoulder MRI; Left Shoulder MRI | $1,757.32 | $1,537.66 |
| T.B. | 0528267271 | Instar Medical | 2/8/2019 | 72141; 72148 | Cervical MRI; Lumbar MRI | $1,791.72 | $1,571.79 |
| T.B. | 0528267271 | Instar Medical | 2/9/2019 | 73221; 73721 | Left Shoulder MRI; Left Knee MRI | $1,757.32 | $1,537.66 |
| T.B. | 0528267271 | Instar Medical | 3/8/2019 | 72146; 73221 | Thoracic MRI; Right Shoulder MRI | $1,838.26 | $1,618.60 |
| C.N. | 0576814180 | Star Medical | 2/26/2020 | 73221; 73218 | Right Shoulder MRI; Right Hand MRI | $1,757.34 | $1,453.16 |
| K.D. | 0572305399 | Star Medical | 3/9/2020 | 72148; 73221 | Lumbar Spine MRI; Left | $1,790.37 | $1,571.00 |

| Claimant Initials | Claim Number | PC Defendant | Date of Service | CPT Codes | Description of Services | Total Amount Charged | Amount Actually Permissible Under Applicable Fee Schedule |
|---|---|---|---|---|---|---|---|
| | | | | | Shoulder MRI | | |
| D.M. | 0574083820 | Star Medical | 12/1/2020 | 72141; 72148 | Cervical Spine MRI; Lumbar Spine MRI | $1,970.90 | $1,728.97 |
| A.P. | 0535556988 | Royal Medical | 2/14/2019 | 72141; 72148 | Cervical Spine MRI; Lumbar Spine MRI | $1,791.72 | $1,571.80 |
| A.C. | 0546269879 | Royal Medical | 6/22/2019 | 72141; 72148 | Cervical Spine MRI; Lumbar Spine MRI | $1,791.73 | $1,571.80 |
| C.I. | 0564848959 | Royal Medical | 10/29/2019 | 73221; 73721 | Left Shoulder MRI; Left Knee MRI | $1,757.34 | $1,537.67 |
| F.G. | 0561332016 | Royal Medical | 10/3/2019 | 72148; 72141 | Lumbar Spine MRI; Cervical Spine MRI | $1,791.73 | $1,571.80 |
| G.S. | 0548784909 | Royal Medical | 6/11/2019 | 72141; 73721 | Cervical Spine MRI; Right Knee MRI | $1,758.40 | $1,538.73 |
| P.W. | 0555850569 | Royal Medical | 8/23/2019 | 73718; 73718 | Right Ankle MRI; Left Ankle MRI | $1,757.34 | $1,537.67 |
| J.A. | 0618457550 | Medical MRI | 3/17/2021 | 73721; 72148 | Left Hip MRI; Lumbar MRI | $1,969.74 | $1,728.10 |
| S.S. | 0604725424 | Medical MRI | 2/23/2021 | 72141; 72148 | Cervical MRI; Lumbar MRI | $1,970.90 | $1,728.97 |

512.     Therefore, even if the PC Defendants were eligible for reimbursement under New York's No-Fault laws (which they were not), the PC Defendants' charges submitted to Allstate nonetheless were inflated and in excess of the amounts permitted to be charged under the applicable Fee Schedule.

## 2.   PC Defendants' Failure to Determine That Imaging Was Medically Necessary

513.     The PC Defendants are not entitled to seek No-Fault reimbursement for diagnostic imaging services that are not medically necessary.

514.     Pursuant to Radiology Ground Rule 7 of the applicable Fee Schedule, "[w]hen a patient is referred to radiologists…for services covered in the Radiology Section, they *shall evaluate* the patient's problem and determine if the services or procedures are medically necessary. Such evaluation and necessary consultation with the referring physician is an integral part of the professional component relative value unit and does not merit any additional charges." (emphasis added.).

515.     The amounts charged by the PC Defendants to Allstate necessarily included the "integral" consultation with the provider referring the Allstate claimant to the PC Defendants for the diagnostic imaging services.

516.     The PC Defendants' radiologists did not take any steps to determine whether the claimants' MRI studies were medically necessary.

517.     The PC Defendants routinely billed for diagnostic imaging services that were not clinically indicated based on the claimants' documented symptoms.  The PC Defendants also billed for diagnostic imaging services before the claimants were afforded the opportunity to undergo conservative care without any justification for urgent imaging.

518.    For example, for claimant C.N. (claim no. 0561336520), Lyons reported a clinical history containing the single word "pain" as justification for the MRI study of C.N.'s lumbar spine billed by Majestic Medical on March 9, 2020.

519.    Likewise, for claimant A.D. (claim no. 0573172335), Lyons reported a clinical history summed up with just the word "pain" as the sole underlying reason for the MRI study of A.D.'s left shoulder billed by Star Medical on February 7, 2020.

520.    Similarly, for claimant A.P. (claim no. 0535556988), Lyons reported "pain" as the only descriptor of A.P.'s clinical history as the basis for the MRI studies of A.P.'s cervical and lumbar spines billed by Royal Medical on March 20, 2019.

521.    For claimant J.A. (claim no. 0618457550), Lyons and Greenfield described the claimant's history with the word "pain" as support for the MRIs billed by Medical MRI of J.A.'s left hip and lumbar spine on March 17, 2021 and left knee on March 9, 2021.

522.    However, pain, standing alone, is an insufficient basis to justify diagnostic imaging.

523.    Lyons frequently reported a patient's "pain"—by itself—as the supposed basis for the performance of the MRI studies billed to Allstate by Majestic Medical, Star Medical, Royal Medical, and Medical MRI as illustrated by the representative examples listed in the chart below.

| Claimant Initials | Claim No. | Date of Service | Description of Services | PC Defendant | Reading Radiologist | Recited "Clinical History" |
|---|---|---|---|---|---|---|
| C.V. | 0578217390 | 2/20/2020 | Cervical MRI | Majestic Medical | John Lyons, M.D. | Pain |
| C.V. | 0578217390 | 2/20/2020 | Lumbar MRI | Majestic Medical | John Lyons, M.D. | Pain |
| D.J. | 0580162949 | 6/25/2020 | Lumbar MRI | Majestic Medical | Alan Greenfield, M.D. | Pain |
| D.J. | 0580162949 | 7/20/2020 | Left Wrist MRI | Majestic Medical | John Lyons, M.D. | Pain |
| F.W. | 0576241301 | 2/17/2020 | Cervical MRI | Majestic Medical | John Lyons, M.D. | Pain |

| Claimant Initials | Claim No. | Date of Service | Description of Services | PC Defendant | Reading Radiologist | Recited "Clinical History" |
|---|---|---|---|---|---|---|
| J.G. | 0577479116 | 2/28/2020 | Lumbar MRI | Majestic Medical | John Lyons, M.D. | Pain |
| R.A. | 0578202475 | 2/28/2020 | Cervical MRI | Majestic Medical | John Lyons, M.D. | Pain |
| R.A. | 0578202475 | 2/28/2020 | Left Hip MRI | Majestic Medical | John Lyons, M.D. | Pain |
| Z.T. | 0589021310 | 10/15/2020 | Right Shoulder MRI | Majestic Medical | John Lyons, M.D. | Pain |
| C.N. | 0978107657 | 2/26/2020 | Right Shoulder MRI | Star Medical | John Lyons, M.D. | Pain |
| C.N. | 0978107657 | 2/26/2020 | Right Hand MRI | Star Medical | John Lyons, M.D. | Pain |
| K.D. | 0572305399 | 3/9/2020 | Lumbar Spine MRI | Star Medical | John Lyons, M.D. | Pain |
| D.M. | 0574083820 | 12/1/2020 | Cervical Spine MRI | Star Medical | John Lyons, M.D. | Pain |
| D.L. | 0610089609 | 1/11/2021 | Thoracic Spine MRI | Star Medical | John Lyons, M.D. | Pain |
| M.M. | 0556704039 | 1/6/2020 | Right Shoulder MRI | Star Medical | John Lyons, M.D. | Pain |
| A.T. | 0564148831 | 10/15/2019 | Cervical Spine MRI | Royal Medical | John Lyons, M.D. | Pain |
| A.T. | 0564148831 | 10/15/2019 | Lumbar Spine MRI | Royal Medical | John Lyons, M.D. | Pain |
| A.C. | 0546269879 | 6/22/2019 | Cervical Spine MRI | Royal Medical | John Lyons, M.D. | Pain |
| A.C. | 0546269879 | 6/22/2019 | Lumbar Spine MRI | Royal Medical | John Lyons, M.D. | Pain |
| S.J. | 0561845678 | 10/15/2019 | Cervical Spine MRI | Royal Medical | John Lyons, M.D. | Pain |
| O.E. | 0542166582 | 6/3/2019 | Right Shoulder MRI | Royal Medical | John Lyons, M.D. | Pain |
| O.E. | 0542166582 | 5/21/2019 | Left Wrist MRI | Royal Medical | John Lyons, M.D. | Pain |
| L.M. | 0574059929 | 2/11/2020 | Cervical Spine | Medical MRI | John Lyons, M.D. | Pain |
| Q.C. | 0625091319 | 5/10/2021 | Brain MRI | Medical MRI | John Lyons, M.D. | Pain |

| Claimant Initials | Claim No. | Date of Service | Description of Services | PC Defendant | Reading Radiologist | Recited "Clinical History" |
|---|---|---|---|---|---|---|
| S.S. | 0604725424 | 2/23/2021 | Cervical Spine | Medical MRI | John Lyons, M.D. | Pain |
| S.S. | 0604725424 | 2/23/2021 | Lumbar Spine | Medical MRI | John Lyons, M.D. | Pain |

524.    Feldmann also documented generalized complaints of pain in connection with imaging studies billed by Instar Medical, as illustrated by the following representative examples:

| Claimant Initials | Claim No. | Date of Service | Description of Services | PC Defendant | Reading Radiologist | Recited "Clinical History" |
|---|---|---|---|---|---|---|
| J.B. | 0527959092 | 1/11/2019 | Lumbar Spine MRI | Instar Medical | Eric J. Feldmann, M.D. | Lower back pain |
| J.B. | 0527959092 | 1/11/2019 | Cervical Spine MRI | Instar Medical | Eric J. Feldmann, M.D. | Posterior neck pain |
| E.D. | 0528953052 | 1/10/2019 | Cervical Spine MRI | Instar Medical | Eric J. Feldmann, M.D. | Posterior neck pain |
| E.D. | 0528953052 | 1/10/2019 | Lumbar Spine MRI | Instar Medical | Eric J. Feldmann, M.D. | Lower back pain |
| E.D. | 0528953052 | 1/18/2019 | Right Knee MRI | Instar Medical | Eric J. Feldmann, M.D. | Right knee pain |
| K.B. | 0525939906 | 12/20/2018 | Left Shoulder MRI | Instar Medical | Eric J. Feldmann, M.D. | Complains of left shoulder pain |
| N.M. | 0528403371 | 1/17/2019 | Right Knee MRI | Instar Medical | Eric J. Feldmann, M.D. | Right knee pain |
| N.M. | 0528403371 | 1/17/2019 | Right Shoulder MRI | Instar Medical | Eric J. Feldmann, M.D. | Complains of right shoulder pain |
| N.M. | 0528403371 | 1/23/2019 | Cervical Spine MRI | Instar Medical | Eric J. Feldmann, M.D. | Posterior neck pain |

| Claimant Initials | Claim No. | Date of Service | Description of Services | PC Defendant | Reading Radiologist | Recited "Clinical History" |
|---|---|---|---|---|---|---|
| N.M. | 0528403371 | 1/23/2019 | Lumbar Spine MRI | Instar Medical | Eric J. Feldmann, M.D. | Lower back pain |
| S.O. | 0533126223 | 2/5/2019 | Thoracic Spine MRI | Instar Medical | Eric J. Feldmann, M.D. | Mid back pain |
| S.O. | 0533126223 | 2/5/2019 | Left Shoulder MRI | Instar Medical | Eric J. Feldmann, M.D. | Complains of left shoulder pain |
| S.O. | 0533126223 | 2/6/2019 | Left Wrist MRI | Instar Medical | Eric J. Feldmann, M.D. | Right left wrist pain |
| E.E. | 0527343750 | 1/24/2019 | Cervical Spine MRI | Instar Medical | Eric J. Feldmann, M.D. | Posterior neck pain |
| E.D. | 0527343750 | 1/24/2019 | Thoracic Spine MRI | Instar Medical | Eric J. Feldmann, M.D. | Mid back pain |

525.   Lyons also offered identical generalized summaries of the patient's "clinical history" in connection with imaging studies billed by Lyons Medical, as illustrated by the following representative examples:

| Claimant Initials | Claim No. | Date of Service | Description of Services | PC Defendant | Reading Radiologist | Recited "Clinical History" |
|---|---|---|---|---|---|---|
| A.S. | 0509140547 | 7/11/2018 | Cervical Spine MRI | Lyons Medical | John Lyons, M.D. | History of trauma. Presented with related clinical symptoms and pain. |
| A.S. | 0509140547 | 7/11/2018 | Lumbar Spine MRI | Lyons Medical | John Lyons, M.D. | History of trauma. Presented with related |

| Claimant Initials | Claim No. | Date of Service | Description of Services | PC Defendant | Reading Radiologist | Recited "Clinical History" |
|---|---|---|---|---|---|---|
| | | | | | | clinical symptoms and pain. |
| A.S. | 0509140547 | 7/18/2018 | Right Shoulder MRI | Lyons Medical | John Lyons, M.D. | History of trauma. Presented with related clinical symptoms and pain. |
| A.S. | 0509140547 | 7/18/2018 | Left Shoulder MRI | Lyons Medical | John Lyons, M.D. | History of trauma. Presented with related clinical symptoms and pain. |
| C.C. | 090374999 | 9/15/2018 | Cervical Spine MRI | Lyons Medical | John Lyons, M.D. | History of trauma. Presented with related clinical symptoms and pain. |
| C.C. | 090374999 | 9/15/2018 | Lumbar Spine MRI | Lyons Medical | John Lyons, M.D. | History of trauma. Presented with related clinical symptoms and pain. |
| L.W. | 0511878514 | 7/27/2018 | Lumbar Spine MRI | Lyons Medical | John Lyons, M.D. | History of trauma. Presented with related clinical symptoms and pain. |

| Claimant Initials | Claim No. | Date of Service | Description of Services | PC Defendant | Reading Radiologist | Recited "Clinical History" |
|---|---|---|---|---|---|---|
| L.W. | 0511878514 | 8/27/2018 | Cervical Spine MRI | Lyons Medical | John Lyons, M.D. | History of trauma. Presented with related clinical symptoms and pain. |
| M.R. | 0507784593 | 7/9/2018 | Left Wrist MRI | Lyons Medical | John Lyons, M.D. | History of trauma. Presented with related clinical symptoms and pain. |
| M.R. | 0507784593 | 7/9/2018 | Thoracic Spine MRI | Lyons Medical | John Lyons, M.D. | History of trauma. Presented with related clinical symptoms and pain. |
| G.S. | 0515105674 | 10/5/2018 | Cervical Spine MRI | Lyons Medical | John Lyons, M.D. | History of trauma. Presented with related clinical symptoms and pain. |
| G.S. | 0515105674 | 10/5/2018 | Lumbar Spine MRI | Lyons Medical | John Lyons, M.D. | History of trauma. Presented with related clinical symptoms and pain. |
| B.G. | 0512202978 | 9/29/2018 | Cervical Spine MRI | Lyons Medical | John Lyons, M.D. | History of trauma. Presented |

| Claimant Initials | Claim No. | Date of Service | Description of Services | PC Defendant | Reading Radiologist | Recited "Clinical History" |
|---|---|---|---|---|---|---|
| | | | | | | with related clinical symptoms and pain. |
| B.G. | 0512202978 | 9/29/2018 | Lumbar Spine MRI | Lyons Medical | John Lyons, M.D. | History of trauma. Presented with related clinical symptoms and pain. |
| B.G. | 0512202978 | 10/1/2018 | Thoracic Spine MRI | Lyons Medical | John Lyons, M.D. | History of trauma. Presented with related clinical symptoms and pain. |

526.     This non-specific "clinical history" does not justify the billed-for MRI studies because it is not tailored to each patient's unique circumstances, does not even identify the mechanism of the "trauma," and does not elaborate on the particular "symptoms."

527.     The PC Defendants routinely charged Allstate for diagnostic imaging inappropriately performed less than 1 month since the alleged motor vehicle accident absent indications for urgent imaging or the opportunity for a course of conservative treatment, as illustrated by the representative examples in the chart below:

| Claimant Initials | Claim No. | Date of Loss | Date of Service | Description of Service | PC Defendant |
|---|---|---|---|---|---|
| F.W. | 0576241301 | 1/10/2020 | 2/17/2020 | Cervical MRI | Majestic Medical |
| C.V. | 0578217390 | 2/9/2020 | 2/20/2020 | Cervical MRI | Majestic Medical |

| Claimant Initials | Claim No. | Date of Loss | Date of Service | Description of Service | PC Defendant |
|---|---|---|---|---|---|
| C.V. | 0578217390 | 2/9/2020 | 2/20/2020 | Lumbar MRI | Majestic Medical |
| R.A. | 0578202475 | 2/12/2020 | 2/28/2020 | Cervical MRI | Majestic Medical |
| R.A. | 0578202475 | 2/12/2020 | 2/28/2020 | Left Hip MRI | Majestic Medical |
| N.P. | 0579621052 | 2/21/2020 | 3/9/2020 | Cervical MRI | Majestic Medical |
| N.P. | 0579621052 | 2/21/2020 | 3/9/2020 | Thoracic MRI | Majestic Medical |
| J.G. | 0577479116 | 1/31/2020 | 2/14/2020 | Cervical MRI | Majestic Medical |
| J.G. | 0577479116 | 1/31/2020 | 2/14/2020 | Left Shoulder MRI | Majestic Medical |
| J.G. | 0577479116 | 1/31/2020 | 2/21/2020 | Thoracic MRI | Majestic Medical |
| J.G. | 0577479116 | 1/31/2020 | 2/28/2020 | Lumbar MRI | Majestic Medical |
| A.S. | 0509140547 | 6/21/2018 | 7/11/2018 | Cervical MRI | Lyons Medical |
| A.S. | 0509140547 | 6/21/2018 | 7/11/2018 | Lumbar MRI | Lyons Medical |
| C.J. | 0515919793 | 9/5/2018 | 9/12/2018 | Cervical MRI | Lyons Medical |
| C.J. | 0515919793 | 9/5/2018 | 9/12/2018 | Lumbar MRI | Lyons Medical |
| F.P. | 0515642304 | 8/31/2018 | 9/13/2018 | Cervical MRI | Lyons Medical |
| F.P. | 0515642304 | 8/31/2018 | 9/13/2018 | Lumbar MRI | Lyons Medical |
| F.P. | 0515642304 | 8/31/2018 | 9/14/2018 | Thoracic MRI | Lyons Medical |
| J.D. | 0521764704 | 10/23/2018 | 11/5/2018 | Left Hip MRI | Lyons Medical |
| J.D. | 0521764704 | 10/23/2018 | 11/5/2018 | Brain MRI | Lyons Medical |
| L.W. | 0511878514 | 7/17/2018 | 7/27/2018 | Lumbar MRI | Lyons Medical |
| M.R. | 0512755307 | 7/14/2018 | 7/26/2018 | Left Knee MRI | Lyons Medical |
| M.R. | 0512755307 | 7/14/2018 | 7/24/2018 | Cervical MRI | Lyons Medical |
| M.R. | 0512755307 | 7/14/2018 | 7/24/2018 | Lumbar MRI | Lyons Medical |

| Claimant Initials | Claim No. | Date of Loss | Date of Service | Description of Service | PC Defendant |
|---|---|---|---|---|---|
| M.R. | 0507784593 | 6/28/2018 | 7/9/2018 | Left Wrist MRI | Lyons Medical |
| M.R. | 0507784593 | 6/28/2018 | 7/9/2018 | Thoracic MRI | Lyons Medical |
| S.O. | 0533126223 | 1/27/2019 | 2/5/2019 | Thoracic MRI | Instar Medical |
| S.O. | 0533126223 | 1/27/2019 | 2/5/2019 | Left Shoulder MRI | Instar Medical |
| S.O. | 0533126223 | 1/27/2019 | 2/6/2019 | Left Wrist MRI | Instar Medical |
| B.G. | 0527408090 | 12/9/2018 | 12/14/2018 | Cervical MRI | Instar Medical |
| B.G. | 0527408090 | 12/9/2018 | 12/14/2018 | Lumbar MRI | Instar Medical |
| B.G. | 0527408090 | 12/9/2018 | 12/15/2018 | Right Shoulder MRI | Instar Medical |
| B.G. | 0527408090 | 12/9/2018 | 12/15/2018 | Left Shoulder MRI | Instar Medical |
| B.G. | 0527408090 | 12/9/2018 | 12/19/2018 | Left Knee MRI | Instar Medical |
| E.R. | 0536741085 | 3/2/2019 | 3/11/2019 | Cervical MRI | Instar Medical |
| E.R. | 0536741085 | 3/2/2019 | 3/11/2019 | Lumbar MRI | Instar Medical |
| C.N. | 0576814180 | 1/30/2020 | 2/26/2020 | Right Shoulder MRI | Star Medical |
| C.N. | 0576814180 | 1/30/2020 | 2/26/2020 | Right Hand MRI | Star Medical |
| R.B. | 0574235883 | 12/20/2019 | 1/13/2020 | Cervical MRI | Star Medical |
| D.L. | 0610089609 | 12/18/2020 | 1/4/2021 | Cervical MRI | Star Medical |
| D.L. | 0610089609 | 12/18/2020 | 1/11/2021 | Thoracic MRI | Star Medical |
| C.I. | 0564848959 | 10/13/2019 | 10/29/2019 | Left Shoulder MRI | Royal Medical |
| C.I. | 0564848959 | 10/13/2019 | 10/29/2019 | Left Knee MRI | Royal Medical |
| D.M. | 0554428268 | 7/23/2019 | 7/25/2019 | Cervical MRI | Royal Medical |
| F.G. | 0561332016 | 9/13/2019 | 10/3/2019 | Lumbar MRI | Royal Medical |
| F.G. | 0561332016 | 9/13/2019 | 10/3/2019 | Cervical MRI | Royal Medical |

| Claimant Initials | Claim No. | Date of Loss | Date of Service | Description of Service | PC Defendant |
|---|---|---|---|---|---|
| G.B. | 0536790892 | 2/28/2019 | 3/13/2019 | Left Shoulder MRI | Royal Medical |
| G.S. | 0548784909 | 5/31/2019 | 6/11/2019 | Cervical MRI | Royal Medical |
| G.S. | 0548784909 | 5/31/2019 | 6/11/2019 | Right Knee MRI | Royal Medical |
| K.S. | 0548283811 | 6/3/2019 | 6/25/2019 | Cervical MRI | Royal Medical |
| S.J. | 0561845678 | 9/22/2019 | 10/15/2019 | Cervical MRI | Royal Medical |
| J.A. | 0618457550 | 3/1/2021 | 3/9/2021 | Left Knee MRI | Medical MRI |
| J.A. | 0618457550 | 3/1/2021 | 3/17/2021 | Left Hip MRI | Medical MRI |
| J.A. | 0618457550 | 3/1/2021 | 3/17/2021 | Lumbar MRI | Medical MRI |
| Q.C. | 0625091319 | 5/4/2021 | 5/10/2021 | Brain MRI | Medical MRI |

## VI.   SPECIFIC ALLEGATIONS OF MAIL FRAUD RACKETEERING ACTIVITY

528.   DeGradi, Byrne, Mullakandov, Lyons, and Feldmann, working through Majestic Medical, Lyons Medical, Instar Medical, Star Medical, Royal Medical, Medical MRI, MGM Ventures, and Javs Ventures, (a) created, prepared, and submitted (or caused to be created, prepared, and submitted) false medical documentation, (b) intentionally violated the laws of the United States by devising, and intending to devise, schemes to defraud and obtain money and property by means of false and fraudulent pretenses in representations, and (c) placed, or caused to be placed, in a post office and/or authorized depository for mail matter, things to be sent and delivered by the United States Postal Service, in violation of 18 U.S.C. § 1341 (mail fraud) for the purpose of executing, or attempting, such fraudulent schemes.

529.   Unless otherwise pled to the contrary, all documents, notes, reports, invoices, health insurance claim forms, assignment of benefit forms, other No-Fault claim reimbursement

documents, letters, and request for payments in connection with the insurance claims referenced throughout this pleading traveled through the U.S. Mail.

530.    Every automobile insurance claim detailed within this Complaint involved at least one use of the U.S. Mail, including the mailing of, among other things, the notice of claim, initial policies, insurance payments, claim-related payments, and the return of the cancelled payment instruments to the financial institution(s) from which the draft(s) were drawn.

531.    The Defendants either personally used (or caused the use of) the U.S. Mail to further this fraudulent scheme by causing medical bills/invoices and records from the PC Defendants to be mailed to Allstate (and/or counsel for claimants), or acted with knowledge that the use of the U.S. Mail would follow in the ordinary course of business.

A.     MAJESTIC MEDICAL ENTERPRISE

532.    Mullakandov, Lyons, and MGM Ventures caused Majestic Medical to falsely certify that it was eligible to be reimbursed under New York's No-Fault Laws each time that Majestic Medical mailed (or was caused to mail) a demand for payment (i.e., invoice or bill) to Allstate.

533.    Mullakandov's participation in the management and control of Majestic Medical (through MGM Ventures), combined with Mullakandov's unlawful receipt of Majestic Medical's professional physician fees and profits, rendered Majestic Medical completely ineligible for No-Fault reimbursement under New York law.

534.    Because Majestic Medical was, in fact, unlawfully controlled by Mullakandov (a person who was not licensed to practice medicine, or allowed to operate, control, or profit from a professional corporation organized to provide medical services), Mullakandov, Lyons, and MGM Ventures purposely caused Majestic Medical to make a misrepresentation each and every time that

Majestic Medical mailed (or was caused to mail) a document to Allstate claiming eligibility for reimbursement.

535.    Moreover, because (a) Mullakandov, as a non-physician, was never lawfully permitted to participate in the operation and management of Majestic Medical, (b) Mullakandov caused Majestic Medical to seek No-Fault reimbursement from Allstate (even though Majestic Medical was not lawfully entitled to such reimbursement), and (c) Majestic Medical used (or was caused to use) the U.S. Mail to seek reimbursement, it is clear that Mullakandov and Lyons committed mail fraud.

536.    At all relevant times, Mullakandov and Lyons knew that Majestic Medical (including its employees, owner(s), contractors, and agents), MGM Ventures, a patient, a claimant, an insurance carrier, patient's attorney, other medical provider, or Allstate would use (or be caused to use) the U.S. Mail in connection with each of the fraudulent claims, including issuing payments based upon the documentation mailed by (or on behalf of) Majestic Medical.

537.    Allstate estimates that the unlawful operation of the Majestic Medical enterprise generated hundreds of mailings.  A table highlighting selected examples of mailings made in furtherance of this scheme is annexed at Exhibit 4 and incorporated by reference as if set forth in its entirety.

**B.    L**YONS **M**EDICAL **E**NTERPRISE

538.    Byrne, DeGradi, Lyons, and Javs Ventures caused Lyons Medical to falsely certify that it was eligible to be reimbursed under New York's No-Fault Laws each time that Lyons Medical mailed (or was caused to mail) a demand for payment (i.e., invoice or bill) to Allstate.

539.    Byrne and DeGradi's participation in the management and control of Lyons Medical (through Javs Ventures), combined with Byrne and DeGradi's unlawful receipt of Lyons

Medical's professional physician fees and profits, rendered Lyons Medical completely ineligible for No-Fault reimbursement under New York law.

540. Because Lyons Medical was, in fact, unlawfully controlled by Byrne and DeGradi (persons who were not licensed to practice medicine, or allowed to operate, control, or profit from a professional corporation organized to provide medical services), Byrne, DeGradi, Lyons, and Javs Ventures purposely caused Lyons Medical to make a misrepresentation each and every time that Lyons Medical mailed (or was caused to mail) a document to Allstate claiming eligibility for reimbursement.

541. Moreover, because (a) Byrne and DeGradi, as non-physicians, were never lawfully permitted to participate in the operation and management of Lyons Medical, (b) Lyons, Byrne, and DeGradi caused Lyons Medical to seek No-Fault reimbursement from Allstate (even though Lyons Medical was not lawfully entitled to such reimbursement), and (c) Lyons Medical used (or was caused to use) the U.S. Mail to seek reimbursement, it is clear that Byrne, DeGradi, and Lyons committed mail fraud.

542. At all relevant times, Byrne, DeGradi, and Lyons knew that Lyons Medical (including its employees, owner(s), contractors, and agents), Javs Ventures, a patient, a claimant, an insurance carrier, patient's attorney, other medical provider, or Allstate would use (or be caused to use) the U.S. Mail in connection with each of the fraudulent claims, including issuing payments based upon the documentation mailed by (or on behalf of) Lyons Medical.

543. Allstate estimates that the unlawful operation of the Lyons Medical enterprise generated hundreds of mailings. A table highlighting selected examples of mailings made in furtherance of this scheme is annexed at Exhibit 5 and incorporated by reference as if set forth in its entirety.

C.  **I**NSTAR **M**EDICAL **E**NTERPRISE

544.  Byrne, DeGradi, Feldmann, and Javs Ventures caused Instar Medical to falsely certify that it was eligible to be reimbursed under New York's No-Fault Laws each time that Instar Medical mailed (or was caused to mail) a demand for payment (i.e., invoice or bill) to Allstate.

545.  Byrne and DeGradi's participation in the management and control of Instar Medical (through Javs Ventures), combined with Byrne and DeGradi's unlawful receipt of Instar Medical's professional physician fees and profits, rendered Instar Medical completely ineligible for No-Fault reimbursement under New York law.

546.  Because Instar Medical was, in fact, unlawfully controlled by Byrne and DeGradi (persons who were not licensed to practice medicine, or allowed to operate, control, or profit from a professional corporation organized to provide medical services), Byrne, DeGradi, Feldmann, and Javs Ventures purposely caused Instar Medical to make a misrepresentation each and every time that Instar Medical mailed (or was caused to mail) a document to Allstate claiming eligibility for reimbursement.

547.  Moreover, because (a) Byrne and DeGradi, as non-physicians, were never lawfully permitted to participate in the operation and management of Instar Medical, (b) Feldmann, Byrne, and DeGradi caused Instar Medical to seek No-Fault reimbursement from Allstate (even though Instar Medical was not lawfully entitled to such reimbursement), and (c) Instar Medical used (or was caused to use) the U.S. Mail to seek reimbursement, it is clear that Byrne, DeGradi, and Feldmann committed mail fraud.

548.  At all relevant times, Byrne, DeGradi, and Feldmann knew that Instar Medical (including its employees, owner(s), contractors, and agents), Javs Ventures, a patient, a claimant, an insurance carrier, patient's attorney, other medical provider, or Allstate would use (or be caused

to use) the U.S. Mail in connection with each of the fraudulent claims, including issuing payments based upon the documentation mailed by (or on behalf of) Instar Medical.

549.    Allstate estimates that the unlawful operation of the Instar Medical enterprise generated hundreds of mailings.  A table highlighting selected examples of mailings made in furtherance of this scheme is annexed at Exhibit 6 and incorporated by reference as if set forth in its entirety.

>    D.    **STAR MEDICAL ENTERPRISE**

550.    **Byrne, DeGradi, Lyons, and Javs Ventures** caused Star Medical to falsely certify that it was eligible to be reimbursed under New York's No-Fault Laws each time that Star Medical mailed (or was caused to mail) a demand for payment (i.e., invoice or bill) to Allstate.

551.    Byrne and DeGradi's participation in the management and control of Star Medical (through Javs Ventures), combined with Byrne and DeGradi's unlawful receipt of Star Medical's professional physician fees and profits, rendered Star Medical completely ineligible for No-Fault reimbursement under New York law.

552.    Because Star Medical was, in fact, unlawfully controlled by Byrne and DeGradi (persons who were not licensed to practice medicine, or allowed to operate, control, or profit from a professional corporation organized to provide medical services), Byrne, DeGradi, Lyons, and Javs Ventures purposely caused Star Medical to make a misrepresentation each and every time that Star Medical mailed (or was caused to mail) a document to Allstate claiming eligibility for reimbursement.

553.    Moreover, because (a) Byrne and DeGradi, as non-physicians, were never lawfully permitted to participate in the operation and management of Star Medical, (b) Lyons, Byrne, and DeGradi caused Star Medical to seek No-Fault reimbursement from Allstate (even though Star

Medical was not lawfully entitled to such reimbursement), and (c) Star Medical used (or was caused to use) the U.S. Mail to seek reimbursement, it is clear that Byrne, DeGradi, and Lyons committed mail fraud.

554. At all relevant times, Byrne, DeGradi, and Lyons knew that Star Medical (including its employees, owner(s), contractors, and agents), Javs Ventures, a patient, a claimant, an insurance carrier, patient's attorney, other medical provider, or Allstate would use (or be caused to use) the U.S. Mail in connection with each of the fraudulent claims, including issuing payments based upon the documentation mailed by (or on behalf of) Star Medical.

555. Allstate estimates that the unlawful operation of the Star Medical enterprise generated hundreds of mailings. A table highlighting selected examples of mailings made in furtherance of this scheme is annexed at Exhibit 7 and incorporated by reference as if set forth in its entirety.

### E.  ROYAL MEDICAL ENTERPRISE

556. Mullakandov, Lyons, and MGM Ventures caused Royal Medical to falsely certify that it was eligible to be reimbursed under New York's No-Fault Laws each time that Royal Medical mailed (or was caused to mail) a demand for payment (i.e., invoice or bill) to Allstate.

557. Mullakandov's participation in the management and control of Royal Medical (through MGM Ventures), combined with Mullakandov's unlawful receipt of Royal Medical's professional physician fees and profits, rendered Royal Medical completely ineligible for No-Fault reimbursement under New York law.

558. Because Royal Medical was, in fact, unlawfully controlled by Mullakandov (a person who was not licensed to practice medicine, or allowed to operate, control, or profit from a professional corporation organized to provide medical services), Mullakandov, Lyons, and MGM

Ventures purposely caused Royal Medical to make a misrepresentation each and every time that Royal Medical mailed (or was caused to mail) a document to Allstate claiming eligibility for reimbursement.

559.    Moreover, because (a) Mullakandov, as a non-physician, was never lawfully permitted to participate in the operation and management of Royal Medical, (b) Lyons and Mullakandov caused Royal Medical to seek No-Fault reimbursement from Allstate (even though Royal Medical was not lawfully entitled to such reimbursement), and (c) Royal Medical used (or was caused to use) the U.S. Mail to seek reimbursement, it is clear that Mullakandov and Lyons committed mail fraud.

560.    At all relevant times, Mullakandov and Lyons knew that Royal Medical (including its employees, owner(s), contractors, and agents), MGM Ventures, a patient, a claimant, an insurance carrier, patient's attorney, other medical provider, or Allstate would use (or be caused to use) the U.S. Mail in connection with each of the fraudulent claims, including issuing payments based upon the documentation mailed by (or on behalf of) Royal Medical.

561.    Allstate estimates that the unlawful operation of the Royal Medical enterprise generated hundreds of mailings.  A table highlighting selected examples of mailings made in furtherance of this scheme is annexed at Exhibit 8 and incorporated by reference as if set forth in its entirety.

### F.    MEDICAL MRI ENTERPRISE

562.    Mullakandov, Lyons, and MGM Ventures caused Medical MRI to falsely certify that it was eligible to be reimbursed under New York's No-Fault Laws each time that Medical MRI mailed (or was caused to mail) a demand for payment (i.e., invoice or bill) to Allstate.

116

563.    Mullakandov's participation in the management and control of Medical MRI (through MGM Ventures), combined with Mullakandov's unlawful receipt of Medical MRI's professional physician fees and profits, rendered Medical MRI completely ineligible for No-Fault reimbursement under New York law.

564.    Because Medical MRI was, in fact, unlawfully controlled by Mullakandov (a person who was not licensed to practice medicine, or allowed to operate, control, or profit from a professional corporation organized to provide medical services), Mullakandov, Lyons, and MGM Ventures purposely caused Medical MRI to make a misrepresentation each and every time that Medical MRI mailed (or was caused to mail) a document to Allstate claiming eligibility for reimbursement.

565.    Moreover, because (a) Mullakandov, as a non-physician, was never lawfully permitted to participate in the operation and management of Medical MRI, (b) Lyons and Mullakandov caused Medical MRI to seek No-Fault reimbursement from Allstate (even though Medical MRI was not lawfully entitled to such reimbursement), and (c) Medical MRI used (or was caused to use) the U.S. Mail to seek reimbursement, it is clear that Mullakandov and Lyons committed mail fraud.

566.    At all relevant times, Mullakandov and Lyons knew that Medical MRI (including its employees, owner(s), contractors, and agents), MGM Ventures, a patient, a claimant, an insurance carrier, patient's attorney, other medical provider, or Allstate would use (or be caused to use) the U.S. Mail in connection with each of the fraudulent claims, including issuing payments based upon the documentation mailed by (or on behalf of) Medical MRI.

567.    Allstate estimates that the unlawful operation of the Medical MRI enterprise generated hundreds of mailings.  A table highlighting selected examples of mailings made in

furtherance of this scheme is annexed at Exhibit 9 and incorporated by reference as if set forth in its entirety.

**G.**    **MGM VENTURES ENTERPRISE**

568.    Mullakandov knowingly used MGM Ventures to exert control over the operation and management of Majestic Medical, Royal Medical, and Medical MRI, including their finances.

569.    In furtherance of the operation and management of the MGM Ventures enterprise, Mullakandov either personally used (or caused the use of) the U.S. Mail to further this fraudulent scheme by causing Allstate claimants' medical records and invoices/bills from Majestic Medical, Royal Medical, and Medical MRI to be mailed to Allstate (and/or counsel for claimants), or acted with knowledge that the use of the U.S. Mail would follow in the ordinary course of business.

570.    As explained above, Mullakandov caused Majestic Medical, Royal Medical, and Medical MRI to falsely certify that it was eligible to be reimbursed under New York's No-Fault laws each time that Majestic Medical, Royal Medical, and Medical MRI mailed (or were caused to mail) a demand for payment (i.e., invoice or bill) to Allstate.

571.    As a result of the above-described conduct, Mullakandov purposely caused Majestic Medical, Royal Medical, and Medical MRI to make a misrepresentation each and every time that Majestic Medical, Royal Medical, and Medical MRI mailed (or were caused to mail) a document to Allstate claiming eligibility for No-Fault reimbursement even though, at all relevant times, Majestic Medical, Royal Medical, and Medical MRI were not entitled to such reimbursement under New York law.

572.    Mullakandov also caused MGM Ventures to use the U.S. Mail in the course of conducting its business of providing the lease of office space and equipment rental services (or in the course of purporting to provide equipment rental or other services) to Majestic Medical, Royal

Medical, and Medical MRI even though any such services were, in reality, a smokescreen concealing Mullakandov's involvement in expanding and controlling Majestic Medical, Royal Medical, and Medical MRI's business, including his personal enrichment from the operation of the Majestic Medical, Royal Medical, and Medical MRI enterprises.

573.     At all relevant times, Lyons and Mullakandov knew that MGM Ventures, Majestic Medical, Royal Medical, and Medical MRI (including their employees, owner(s), contractors, and agents), a customer, an Allstate claimant, an insurance carrier, an Allstate claimants' attorney, other medical provider, or Allstate would use (or be caused to use) the U.S. Mail in connection with each of the fraudulent claims, including issuing payments based upon the documentation mailed by (or on behalf of) Majestic Medical, Royal Medical, and Medical MRI.

574.     These payments issued by Allstate through the U.S. Mail in reliance on the false and fraudulent documentation mailed by (or on behalf of) Majestic Medical, Royal Medical, and Medical MRI were diverted, in part, to MGM Ventures for the benefit of Mullakandov through certain transactions engaged in between Majestic Medical, Royal Medical, Medical MRI, and MGM Ventures, including transactions arising out of a commercially unreasonable agreement with Majestic Medical, Royal Medical, and Medical MRI.

575.     As a result of the above-described conduct, it is clear that Lyons and Mullakandov committed mail fraud in the furtherance of the operation and management of the MGM Ventures enterprise.

576.     Allstate estimates that the unlawful operation of the MGM Ventures enterprise generated hundreds of mailings.  A table highlighting selected examples of mailings made in furtherance of this scheme is annexed at Exhibit 10 and incorporated herein by reference as if set forth in its entirety.

H.   **JAVS VENTURES ENTERPRISE**

577.   DeGradi and Byrne knowingly used Javs Ventures to exert control over the operation and management of Lyons Medical, Instar Medical, and Star Medical including their finances.

578.   In furtherance of the operation and management of the Javs Ventures enterprise, Lyons, Feldmann, DeGradi, and/or Byrne either personally used (or caused the use of) the U.S. Mail to further this fraudulent scheme by causing Allstate claimants' medical records and invoices/bills from Lyons Medical, Instar Medical, and Star Medical to be mailed to Allstate (and/or counsel for claimants), or acted with knowledge that the use of the U.S. Mail would follow in the ordinary course of business.

579.   As explained above, Lyons, Feldmann, DeGradi, and/or Byrne caused Lyons Medical, Instar Medical, and Star Medical to falsely certify that they were eligible to be reimbursed under New York's No-Fault laws each time that Lyons Medical, Instar Medical, and Star Medical mailed (or was caused to mail) a demand for payment (i.e., invoice or bill) to Allstate.

580.   As a result of the above-described conduct, Lyons, Feldmann, DeGradi, and/or Byrne purposely caused Lyons Medical, Instar Medical, and Star Medical to make a misrepresentation each and every time that Lyons Medical, Instar Medical, and Star Medical mailed (or were caused to mail) a document to Allstate claiming eligibility for No-Fault reimbursement even though, at all relevant times, Lyons Medical, Instar Medical, and Star Medical were not entitled to such reimbursement under New York law.

581.   Lyons, Feldmann, DeGradi, and/or Byrne also caused Javs Ventures to use the U.S. Mail in the course of conducting its business of providing equipment rental services (or in the course of purporting to provide equipment rental or other services) to Lyons Medical, Instar

Medical, and Star Medical even though any such equipment services were, in reality, a smokescreen concealing DeGradi and Byrne's involvement in expanding and controlling Lyons Medical, Instar Medical, and Star Medical's businesses, including their personal enrichment from the operation of the Lyons Medical, Instar Medical, and Star Medical enterprises.

582.   At all relevant times, Lyons, Feldmann, DeGradi, and Byrne knew that Javs Ventures, Lyons Medical, Instar Medical, and Star Medical (including their employees, owner(s), contractors, and agents), a customer, an Allstate claimant, an insurance carrier, an Allstate claimants' attorney, other medical provider, or Allstate would use (or be caused to use) the U.S. Mail in connection with each of the fraudulent claims, including issuing payments based upon the documentation mailed by (or on behalf of) Lyons Medical, Instar Medical, and Star Medical.

583.   These payments issued by Allstate through the U.S. Mail in reliance on the false and fraudulent documentation mailed by (or on behalf of) Lyons Medical, Instar Medical, and Star medical were diverted, in part, to Javs Ventures for the benefit of DeGradi and Byrne through certain transactions engaged in between Lyons Medical, Instar Medical, and Star Medical and Javs Ventures, including transactions arising out of a commercially unreasonable agreement with Lyons Medical, Instar Medical, and Star Medical.

584.   As a result of the above-described conduct, it is clear that Lyons, Feldmann, DeGradi, and Byrne committed mail fraud in the furtherance of the operation and management of the Javs Ventures enterprise.

585.   Allstate estimates that the unlawful operation of the Javs Ventures enterprise generated hundreds of mailings.  A table highlighting selected examples of mailings made in furtherance of this scheme is annexed at Exhibit 11 and incorporated herein by reference as if set forth in their entirety.

## VII.   SPECIFIC ALLEGATIONS OF FRAUDULENT CONCEALMENT AND MISREPRESENTATIONS MADE TO AND RELIED UPON BY ALLSTATE

### A.   MAJESTIC MEDICAL ENTERPRISE

586.   Lyons is registered with the State of New York as the sole officer, director, and shareholder of Majestic Medical.

587.   Mullakandov induced Lyons to cede control over the operation and management of Majestic Medical at the Brooklyn Facility to Mullakandov during the relevant period.

588.   The documents created and filed with the State of New York related to Majestic Medical deliberately omitted any reference to Mullakandov's or MGM Ventures' involvement with Majestic Medical.

589.   Based on the representations contained within documents filed with the State of New York on behalf of Majestic Medical, Allstate—even acting with reasonable diligence—could not possibly have discovered the nature and extent of Mullakandov's domination of and control over Lyons and Majestic Medical.

590.   Mullakandov took purposeful steps to conceal his involvement in the day-to-day operations of Majestic Medical.  Further, he disguised payments of professional fees and profits (that he otherwise would not be eligible to receive) as legitimate costs for office space and equipment rental services.

591.   For instance, Mullakandov used a sham entity—i.e., MGM Ventures—for the purposes of controlling Majestic Medical and funneling professional fees and profits to himself for his own personal gain.

592.   MGM Ventures also was used by Mullakandov for the purpose of evading detection and preventing Allstate (or anyone else) from uncovering that Mullakandov operated, controlled, and profited from Majestic Medical.

593.     The purposeful concealment of Mullakandov's controlling interests in Majestic Medical allowed Mullakandov to unlawfully control Majestic Medical undetected.

594.     Overall, the purposeful concealment of Mullakandov's controlling interests in Majestic Medical enabled him to violate New York law while also preventing Allstate from discovering his unlawful acts for a prolonged period.

595.     At all relevant times during the operation of Majestic Medical, Mullakandov purposely caused Majestic Medical to falsely certify that it was eligible to be reimbursed under New York's No-Fault laws as a means to induce Allstate to promptly pay charges related to medical services purportedly provided to patients.

596.     Mullakandov used his roles as the owner, operator, agent, and/or employee of MGM Ventures to directly participate in the operation and management of the Majestic Medical enterprise.

597.     Because Mullakandov was not licensed to practice medicine, or allowed to operate, control, or profit from a professional corporation organized to provide professional physician services, and because Majestic Medical was organized as a physician-owned professional service corporation, Mullakandov was never lawfully entitled to participate in, or in any way direct, the operation and management of Majestic Medical.

598.     Accordingly, because Mullakandov unlawfully participated in the operation and management of Majestic Medical throughout the relevant period, Majestic Medical was caused to falsely claim eligibility for No-Fault reimbursement each and every time that it sought No-Fault reimbursement from Allstate.

599.     Further, Lyons attested (or caused the attestation) to the validity of the charges for the services allegedly performed in connection with Majestic Medical's patients.

123

600.    At all relevant times, Lyons, as a duly licensed medical provider, was legally and ethically obligated to act honestly and with integrity.

601.    As alleged above, Lyons (or those persons acting under his control) caused Majestic Medical to create and submit to Allstate treatment records and demands for payment relative to medical services that were (a) unnecessary, (b) charged at excessive rates, (c) performed pursuant to an unlawful referral relationship, and (d) performed by an independent contractor as opposed to an employee or owner of Majestic Medical.

602.    Such conduct is unlawful, and rendered each such claim non-compensable under New York's No-Fault laws.

603.    Many of these facts—particularly (a) Mullakandov's participation in and control over the operation and management of Majestic Medical, and (b) Majestic Medical's unlawful splitting of professional physician fees and profits with Mullakandov—including, but not necessarily limited to, through transactions between Majestic Medical and MGM Ventures—are not readily evident within documents submitted to Allstate by these Defendants and upon which Allstate relied in adjusting the claims and tendering payment in connection with each discrete patient claim.

604.    Claims under New York's No-Fault laws can only be submitted, and reimbursed, for services that were provided in accord with all applicable New York state licensing requirements.

605.    Thus, every time that Lyons and Mullakandov caused Majestic Medical to submit No-Fault reimbursement demands to Allstate, Lyons and Mullakandov (and those individuals working under their control) necessarily certified that Majestic Medical was eligible to be reimbursed under New York's No-Fault laws.

606.    The full extent of Lyons and Mullakandov's fraudulent and unlawful acts relative to their control over the Majestic Medical enterprise—including (a) Mullakandov's participation in and control over the operation and management of Majestic Medical, and (b) the unlawful channeling of Majestic Medical's professional proceeds to Mullakandov—including, but not necessarily limited to, through transactions that were structured between Majestic Medical and MGM Ventures—were not known to Allstate until shortly before it commenced this action.

    **B.**    **Lyons Medical Enterprise**

607.    Lyons is registered with the State of New York as the sole officer, director, and shareholder of Lyons Medical.

608.    Byrne and DeGradi induced Lyons to cede control over the operation and management of Lyons Medical at the Valley Stream Facility to Byrne and DeGradi during the relevant period.

609.    The documents created and filed with the State of New York related to Lyons Medical deliberately omitted any reference to Byrne, DeGradi, or Javs Ventures' involvement with Lyons Medical.

610.    Based on the representations contained within the documents filed with the State of New York on behalf of Lyons Medical, Allstate—even acting with reasonable diligence—could not possibly have discovered the nature and extent of Byrne and DeGradi's domination of and control over Lyons and Lyons Medical.

611.    Byrne and DeGradi took purposeful steps to conceal their involvement in the day-to-day operations of Lyons Medical.  Further, they disguised payments of professional fees and profits (that they otherwise would not be eligible to receive) as legitimate costs for equipment rental services.

612. For instance, Byrne and DeGradi used a sham entity—i.e., Javs Ventures—for the purposes of controlling Lyons Medical and funneling professional fees and profits to themselves for their own personal gain.

613. Javs Ventures was used by Byrne and DeGradi for the purpose of evading detection and preventing Allstate (or anyone else) from uncovering that Byrne and DeGradi operated, controlled, and profited from Lyons Medical.

614. The purposeful concealment of Byrne and DeGradi's controlling interests in Lyons Medical allowed Byrne and DeGradi to unlawfully control Lyons Medical undetected.

615. Overall, the purposeful concealment of Byrne and DeGradi's controlling interests in Lyons Medical enabled them to violate New York law while also preventing Allstate from discovering their unlawful acts for a prolonged period.

616. At all relevant times during the operation of Lyons Medical, Lyons, Byrne, and DeGradi purposely caused Lyons Medical to falsely certify that it was eligible to be reimbursed under New York's No-Fault laws as a means to induce Allstate to promptly pay charges related to medical services purportedly provided to patients.

617. Byrne and DeGradi used their roles as the owners, operators, agents, and/or employees of Javs Ventures to directly participate in the operation and management of Lyons Medical.

618. Because Byrne and DeGradi were persons who were not licensed to practice medicine, or allowed to operate, control, or profit from a professional corporation organized to provide professional physician services, and because Lyons Medical was organized as a physician-owned professional service corporation, Byrne and DeGradi were never lawfully entitled to participate in, or in any way direct, the operation and management of Lyons Medical.

126

619. Accordingly, because Byrne and DeGradi unlawfully participated in the operation and management of Lyons Medical throughout the relevant period, Lyons Medical was caused to falsely claim eligibility for No-Fault reimbursement each and every time that it sought No-Fault reimbursement from Allstate.

620. Further, Lyons attested (or caused the attestation) to the validity of the charges for the services allegedly performed in connection with Lyons Medical's patients.

621. At all relevant times, Lyons, as a duly licensed medical provider, was legally and ethically obligated to act honestly and with integrity.

622. As alleged above, Lyons (or those persons acting under his control) caused Lyons Medical to create and submit to Allstate treatment records and demands for payment relative to medical services that were (a) unnecessary, (b) performed pursuant to an unlawful referral relationship, and (c) charged at excessive rates.

623. Such conduct is unlawful, and rendered each such claim non-compensable under New York's No-Fault laws.

624. Many of these facts—particularly (a) Byrne and DeGradi's participation in and control over the operation and management of Lyons Medical, and (b) Lyons Medical's unlawful splitting of professional physician fees and profits with Byrne and DeGradi—including, but not necessarily limited to, through transactions between Lyons Medical and Javs Ventures—are not readily evident within the documents submitted to Allstate by these Defendants and upon which Allstate relied in adjusting the claims and tendering payment in connection with each discrete patient claim.

127

625.     Claims under New York's No-Fault laws can only be submitted, and reimbursed, for services that were provided in accord with all applicable New York state licensing requirements.

626.     Thus, every time that Lyons, Byrne, and DeGradi caused Lyons Medical to submit No-Fault reimbursement demands to Allstate, Lyons, Byrne, and DeGradi (and those individuals working under their control) necessarily certified that Lyons Medical was eligible to be reimbursed under New York's No-Fault laws.

627.     The full extent of Lyons, Byrne, and DeGradi's fraudulent and unlawful acts relative to their control over the Lyons Medical enterprise—including (a) Byrne and DeGradi's participation in and control over the operation and management of Lyons Medical, and (b) the unlawful channeling of Lyons Medical's professional proceeds to Byrne and DeGradi—including, but not necessarily limited to, through transactions between Lyons Medical and Javs Ventures— were not known to Allstate until shortly before it commenced this action.

## C.     INSTAR MEDICAL ENTERPRISE

628.     Feldmann is registered with the State of New York as the sole officer, director, and shareholder of Instar Medical.

629.     Byrne and DeGradi induced Feldmann to cede control over the operation and management of Instar Medical at the Valley Stream Facility to Byrne and DeGradi during the relevant period.

630.     The documents created and filed with the State of New York related to Instar Medical deliberately omitted any reference to Byrne, DeGradi, and Javs Ventures' involvement with Instar Medical.

631.     Based on the representations contained within the documents filed with the State of New York on behalf of Instar Medical, Allstate—even acting with reasonable diligence—could not possibly have discovered the nature and extent of Byrne and DeGradi's domination of and control over Feldmann and Instar Medical.

632.     Byrne and DeGradi took purposeful steps to conceal their involvement in the day-to-day operations of Instar Medical.  Further, they disguised payments of professional fees and profits (that they otherwise would not be eligible to receive) as legitimate costs for equipment rental services.

633.     For instance, Byrne and DeGradi used a sham entity—i.e., Javs Ventures—for the purposes of controlling Instar Medical and funneling professional fees and profits to themselves for their own personal gain.

634.     Javs Ventures was used by Byrne and DeGradi for the purpose of evading detection and preventing Allstate (or anyone else) from uncovering that Byrne and DeGradi operated, controlled, and profited from Instar Medical.

635.     The purposeful concealment of Byrne and DeGradi's controlling interests in Instar Medical allowed Byrne and DeGradi to unlawfully control Instar Medical undetected.

636.     Overall, the purposeful concealment of Byrne and DeGradi's controlling interests in Instar Medical enabled them to violate New York law while also preventing Allstate from discovering their unlawful acts for a prolonged period.

637.     At all relevant times during the operation of Instar Medical, Feldmann, Byrne, and DeGradi purposely caused Instar Medical to falsely certify that it was eligible to be reimbursed under New York's No-Fault laws as a means to induce Allstate to promptly pay charges related to medical services purportedly provided to patients.

638.     Byrne and DeGradi used their roles as the owners, operators, agents, and/or employees of Javs Ventures to directly participate in the operation and management of Instar Medical.

639.     Because Byrne and DeGradi were persons who were not licensed to practice medicine, or allowed to operate, control, or profit from a professional corporation organized to provide professional physician services, and because Instar Medical was organized as a physician-owned professional service corporation, Byrne and DeGradi were never lawfully entitled to participate in, or in any way direct, the operation and management of Instar Medical.

640.     Accordingly, because Byrne and DeGradi unlawfully participated in the operation and management of Instar Medical throughout the relevant period, Instar Medical was caused to falsely claim eligibility for No-Fault reimbursement each and every time that it sought No-Fault reimbursement from Allstate.

641.     Further, Feldmann attested (or caused the attestation) to the validity of the charges for the services allegedly performed in connection with Instar Medical's patients.

642.     At all relevant times, Feldmann, as a duly licensed medical provider, was legally and ethically obligated to act honestly and with integrity.

643.     As alleged above, Feldmann (or those persons acting under his control) caused Instar Medical to create and submit to Allstate treatment records and demands for payment relative to medical services that were (a) unnecessary, (b) performed pursuant to an unlawful referral relationship, and (c) charged at excessive rates.

644.     Such conduct is unlawful, and rendered each such claim non-compensable under New York's No-Fault laws.

645. Many of these facts—particularly (a) Byrne and DeGradi's participation in and control over the operation and management of Instar Medical, and (b) Instar Medical's unlawful splitting of professional physician fees and profits with Byrne and DeGradi—including, but not necessarily limited to, through transactions between Instar Medical and Javs Ventures—are not readily evident within the documents submitted to Allstate by these Defendants and upon which Allstate relied in adjusting the claims and tendering payment in connection with each discrete patient claim.

646. Claims under New York's No-Fault laws can only be submitted, and reimbursed, for services that were provided in accord with all applicable New York state licensing requirements.

647. Thus, every time that Feldmann, Byrne, and DeGradi caused Instar Medical to submit No-Fault reimbursement demands to Allstate, Feldmann, Byrne, and DeGradi (and those individuals working under their control) necessarily certified that Instar Medical was eligible to be reimbursed under New York's No-Fault laws.

648. The full extent of Feldmann, Byrne, and DeGradi's fraudulent and unlawful acts relative to their control over the Instar Medical enterprise—including (a) Byrne and DeGradi's participation in and control over the operation and management of Instar Medical, and (b) the unlawful channeling of Instar Medical's professional proceeds to Byrne and DeGradi—including, but not necessarily limited to, through transactions between Instar Medical and Javs Ventures— were not known to Allstate until shortly before it commenced this action.

**D.   STAR MEDICAL ENTERPRISE**

649. Lyons is registered with the State of New York as the sole officer, director, and shareholder of Star Medical.

650.    Byrne and DeGradi induced Lyons to cede control over the operation and management of Star Medical at the Valley Stream Facility to Byrne and DeGradi during the relevant period.

651.    The documents created and filed with the State of New York related to Star Medical deliberately omitted any reference to Byrne, DeGradi, and Javs Ventures' involvement with Star Medical.

652.    Based on the representations contained within the documents filed with the State of New York on behalf of Star Medical, Allstate—even acting with reasonable diligence—could not possibly have discovered the nature and extent of Byrne and DeGradi's domination of and control over Lyons and Star Medical.

653.    Byrne and DeGradi took purposeful steps to conceal their involvement in the day-to-day operations of Star Medical.  Further, they disguised payments of professional fees and profits (that they otherwise would not be eligible to receive) as legitimate costs for equipment rental services.

654.    For instance, Byrne and DeGradi used a sham entity—i.e., Javs Ventures—for the purposes of controlling Star Medical and funneling professional fees and profits to themselves for their own personal gain.

655.    Javs Ventures was used by Byrne and DeGradi for the purpose of evading detection and preventing Allstate (or anyone else) from uncovering that Byrne and DeGradi operated, controlled, and profited from Star Medical.

656.    The purposeful concealment of Byrne and DeGradi's controlling interests in Star Medical allowed Byrne and DeGradi to unlawfully control Star Medical undetected.

657.    Overall, the purposeful concealment of Byrne and DeGradi's controlling interests in Star Medical enabled them to violate New York law while also preventing Allstate from discovering their unlawful acts for a prolonged period.

658.    At all relevant times during the operation of Star Medical, Lyons, Byrne, and DeGradi purposely caused Star Medical to falsely certify that it was eligible to be reimbursed under New York's No-Fault laws as a means to induce Allstate to promptly pay charges related to medical services purportedly provided to patients.

659.    Byrne and DeGradi used their roles as the owners, operators, agents, and/or employees of Javs Ventures to directly participate in the operation and management of Star Medical.

660.    Because Byrne and DeGradi were persons who were not licensed to practice medicine, or allowed to operate, control, or profit from a professional corporation organized to provide professional physician services, and because Star Medical was organized as a physician-owned professional service corporation, Byrne and DeGradi were never lawfully entitled to participate in, or in any way direct, the operation and management of Star Medical.

661.    Accordingly, because Byrne and DeGradi unlawfully participated in the operation and management of Star Medical throughout the relevant period, Star Medical was caused to falsely claim eligibility for No-Fault reimbursement each and every time that it sought No-Fault reimbursement from Allstate.

662.    Further, Lyons attested (or caused the attestation) to the validity of the charges for the services allegedly performed in connection with Star Medical's patients.

663.    At all relevant times, Lyons, as a duly licensed medical provider, was legally and ethically obligated to act honestly and with integrity.

664.    As alleged above, Lyons (or those persons acting under his control) caused Star Medical to create and submit to Allstate treatment records and demands for payment relative to medical services that were (a) unnecessary, (b) performed pursuant to an unlawful referral relationship, (c) charged at excessive rates, and (d) performed by an independent contractor as opposed to an employee or owner of Star Medical.

665.    Such conduct is unlawful, and rendered each such claim non-compensable under New York's No-Fault laws.

666.    Many of these facts—particularly (a) Byrne and DeGradi's participation in and control over the operation and management of Star Medical, and (b) Star Medical's unlawful splitting of professional physician fees and profits with Byrne and DeGradi—including, but not necessarily limited to, through transactions between Star Medical and Javs Ventures—are not readily evident within the documents submitted to Allstate by these Defendants and upon which Allstate relied in adjusting the claims and tendering payment in connection with each discrete patient claim.

667.    Claims under New York's No-Fault laws can only be submitted, and reimbursed, for services that were provided in accord with all applicable New York state licensing requirements.

668.    Thus, every time that Lyons, Byrne, and DeGradi caused Star Medical to submit No-Fault reimbursement demands to Allstate, Lyons, Byrne, and DeGradi (and those individuals working under their control) necessarily certified that Star Medical was eligible to be reimbursed under New York's No-Fault laws.

669.    The full extent of Lyons, Byrne, and DeGradi's fraudulent and unlawful acts relative to their control over the Star Medical enterprise—including (a) Byrne and DeGradi's

134

participation in and control over the operation and management of Star Medical, and (b) the unlawful channeling of Star Medical's professional proceeds to Byrne and DeGradi—including, but not necessarily limited to, through transactions that were structured between Star Medical and Javs Ventures—were not known to Allstate until shortly before it commenced this action.

E.   **ROYAL MEDICAL ENTERPRISE**

670.   Lyons is registered with the State of New York as the sole officer, director, and shareholder of Royal Medical.

671.   Mullakandov induced Lyons to cede control over the operation and management of Royal Medical at the Richmond Hill Facility to Mullakandov during the relevant period.

672.   The documents created and filed with the State of New York related to Royal Medical deliberately omitted any reference to Mullakandov's or MGM Ventures' involvement with Royal Medical.

673.   Based on the representations contained within the documents filed with the State of New York on behalf of Royal Medical, Allstate—even acting with reasonable diligence—could not possibly have discovered the nature and extent of Mullakandov's domination of and control over Lyons and Royal Medical.

674.   Mullakandov took purposeful steps to conceal his involvement in the day-to-day operations of Royal Medical.

675.   For instance, Mullakandov used a sham entity—i.e., MGM Ventures—for the purposes of controlling Royal Medical and funneling professional fees and profits to himself for his own personal gain.

676.    MGM Ventures also was used by Mullakandov for the purpose of evading detection and preventing Allstate (or anyone else) from uncovering that Mullakandov operated, controlled, and profited from Royal Medical.

677.    The purposeful concealment of Mullakandov's controlling interests in Royal Medical allowed Mullakandov to unlawfully control Royal Medical undetected.

678.    Overall, the purposeful concealment of Mullakandov's controlling interests in Royal Medical enabled him to violate New York law while also preventing Allstate from discovering his unlawful acts for a prolonged period.

679.    At all relevant times during the operation of Royal Medical, Lyons and Mullakandov purposely caused Royal Medical to falsely certify that it was eligible to be reimbursed under New York's No-Fault laws as a means to induce Allstate to promptly pay charges related to medical services purportedly provided to patients.

680.    Mullakandov used his roles as the owner, operator, agent, and/or employee of MGM Ventures to directly participate in the operation and management of the Royal Medical enterprise.

681.    Because Mullakandov was a person who was not licensed to practice medicine, or allowed to operate, control, or profit from a professional corporation organized to provide professional physician services, and because Royal Medical was organized as a physician-owned professional service corporation, Mullakandov was never lawfully entitled to participate in, or in any way direct, the operation and management of Royal Medical.

682.    Accordingly, because Mullakandov unlawfully participated in the operation and management of Royal Medical throughout the relevant period, Royal Medical was caused to

falsely claim eligibility for No-Fault reimbursement each and every time that it sought No-Fault reimbursement from Allstate.

683.    Further, Lyons attested (or caused the attestation) to the validity of the charges for the services allegedly performed in connection with Royal Medical's patients.

684.    At all relevant times, Lyons, as a duly licensed medical provider, was legally and ethically obligated to act honestly and with integrity.

685.    As alleged above, Lyons (or those persons acting under his control) caused Royal Medical to create and submit to Allstate treatment records and demands for payment relative to medical services that were (a) unnecessary, (b) performed pursuant to an unlawful referral relationship, and (c) charged at excessive rates.

686.    Such conduct is unlawful, and rendered each such claim non-compensable under New York's No-Fault laws.

687.    Many of these facts—particularly (a) Mullakandov's participation in and control over the operation and management of Royal Medical, and (b) Royal Medical's unlawful splitting of professional physician fees and profits with Mullakandov—including, but not necessarily limited to, through transactions between Royal Medical and MGM Ventures—are not readily evident within the documents submitted to Allstate by these Defendants and upon which Allstate relied in adjusting the claims and tendering payment in connection with each discrete patient claim.

688.    Claims under New York's No-Fault laws can only be submitted, and reimbursed, for services that were provided in accord with all applicable New York state licensing requirements.

689.    Thus, every time that Lyons and Mullakandov caused Royal Medical to submit No-Fault reimbursement demands to Allstate, Lyons and Mullakandov (and those individuals working

under their control) necessarily certified that Royal Medical was eligible to be reimbursed under New York's No-Fault laws.

690.    The full extent of Lyons and Mullakandov's fraudulent and unlawful acts relative to their control over the Royal Medical enterprise—including (a) Mullakandov's participation in and control over the operation and management of Royal Medical, and (b) the unlawful channeling of Royal Medical's professional proceeds to Mullakandov—including, but not necessarily limited to, through transactions that were structured between Royal Medical and MGM Ventures—were not known to Allstate until shortly before it commenced this action.

### F.    MEDICAL MRI ENTERPRISE

691.    Lyons is registered with the State of New York as the sole officer, director, and shareholder of Medical MRI.

692.    Mullakandov induced Lyons to cede control over the operation and management of Medical MRI at the Richmond Hill Facility to Mullakandov during the relevant period.

693.    The documents created and filed with the State of New York related to Medical MRI deliberately omitted any reference to Mullakandov's or MGM Ventures' involvement with Medical MRI.

694.    Based on the representations contained within the documents filed with the State of New York on behalf of Medical MRI, Allstate—even acting with reasonable diligence—could not possibly have discovered the nature and extent of Mullakandov's domination of and control over Lyons and Medical MRI.

695.    Mullakandov took purposeful steps to conceal his involvement in the day-to-day operations of Medical MRI.

696.    For instance, Mullakandov used a sham entity—i.e., MGM Ventures—for the purposes of controlling Medical MRI and funneling professional fees and profits to himself for his own personal gain.

697.    MGM Ventures also was used by Mullakandov for the purpose of evading detection and preventing Allstate (or anyone else) from uncovering that Mullakandov operated, controlled, and profited from Medical MRI.

698.    The purposeful concealment of Mullakandov's controlling interests in Medical MRI allowed Mullakandov to unlawfully control Medical MRI undetected.

699.    Overall, the purposeful concealment of Mullakandov's controlling interests in Medical MRI enabled him to violate New York law while also preventing Allstate from discovering his unlawful acts for a prolonged period.

700.    At all relevant times during the operation of Medical MRI, Lyons and Mullakandov purposely caused Medical MRI to falsely certify that it was eligible to be reimbursed under New York's No-Fault laws as a means to induce Allstate to promptly pay charges related to medical services purportedly provided to patients.

701.    Mullakandov used his roles as the owner, operator, agent, and/or employee of MGM Ventures to directly participate in the operation and management of the Medical MRI enterprise.

702.    Because Mullakandov was a person who was not licensed to practice medicine, or allowed to operate, control, or profit from a professional corporation organized to provide professional physician services, and because Medical MRI was organized as a physician-owned professional service corporation, Mullakandov was never lawfully entitled to participate in, or in any way direct, the operation and management of Medical MRI.

703.     Accordingly, because Mullakandov unlawfully participated in the operation and management of Medical MRI throughout the relevant period, Medical MRI was caused to falsely claim eligibility for No-Fault reimbursement each and every time that it sought No-Fault reimbursement from Allstate.

704.     Further, Lyons attested (or caused the attestation) to the validity of the charges for the services allegedly performed in connection with Medical MRI's patients.

705.     At all relevant times, Lyons, as a duly licensed medical provider, was legally and ethically obligated to act honestly and with integrity.

706.     As alleged above, Lyons (or those persons acting under his control) caused Medical MRI to create and submit to Allstate treatment records and demands for payment relative to medical services that were (a) unnecessary, (b) charged at excessive rates, (c) performed pursuant to unlawful financial relationships with referring providers and clinics, and (d) performed by an independent contractor as opposed to an employee or owner of Medical MRI.

707.     Such conduct is unlawful, and rendered each such claim non-compensable under New York's No-Fault laws.

708.     Many of these facts—particularly (a) Mullakandov's participation in and control over the operation and management of Medical MRI, and (b) Medical MRI's unlawful splitting of professional physician fees and profits with Mullakandov—including, but not necessarily limited to, through transactions between Medical MRI and MGM Ventures—are not readily evident within the documents submitted to Allstate by these Defendants and upon which Allstate relied in adjusting the claims and tendering payment in connection with each discrete patient claim.

140

709.    Claims under New York's No-Fault laws can only be submitted, and reimbursed, for services that were provided in accord with all applicable New York state licensing requirements.

710.    Thus, every time that Lyons and Mullakandov caused Medical MRI to submit No-Fault reimbursement demands to Allstate, Lyons and Mullakandov (and those individuals working under their control) necessarily certified that Medical MRI was eligible to be reimbursed under New York's No-Fault laws.

711.    The full extent of Lyons and Mullakandov's fraudulent and unlawful acts relative to their control over the Medical MRI enterprise—including (a) Mullakandov's participation in and control over the operation and management of Medical MRI, and (b) the unlawful channeling of Medical MRI's professional proceeds to Mullakandov—including, but not necessarily limited to, through transactions that were structured between Medical MRI and MGM Ventures—were not known to Allstate until shortly before it commenced this action.

### G.    MGM VENTURES ENTERPRISE

712.    MGM Ventures was used by Mullakandov for the purpose of evading detection and preventing Allstate (or anyone else) from uncovering that Mullakandov operated, controlled, and profited from Majestic Medical, Royal Medical, and Medical MRI.

713.    Such concealment was necessary to perpetuate and preserve the Defendants' fraudulent scheme, which hinged upon Mullakandov's unlawful exertion of control over the operation and management of Majestic Medical, Royal Medical, and Medical MRI because, at all relevant times, Mullakandov was not licensed to practice medicine in the State of New York, or allowed to operate, control, or profit from a professional corporation organized to provide medical services.

714.    Therefore, because Majestic Medical, Royal Medical, and Medical MRI were organized as physician-owned professional service corporations, Mullakandov was never lawfully entitled to participate in, or in any way direct, the operation and management of Majestic Medical, Royal Medical, and Medical MRI.

715.    Therefore, to circumvent this prohibition, Mullakandov used MGM Ventures to unlawfully exert such control and siphon the professional fees and profits of Majestic Medical, Royal Medical, and Medical MRI for his own personal use and benefit in violation of New York law.

716.    Overall, Mullakandov used MGM Ventures to serve as a vehicle to funnel and disguise payments from Majestic Medical, Royal Medical, and Medical MRI as legitimate transactions when, in actuality, such payments were merely a means for Mullakandov to unlawfully share in Majestic Medical, Royal Medical, and Medical MRI's professional medical fees and profits that he otherwise would not be eligible to receive.

717.    Therefore, MGM Ventures was used to lend an air of false legitimacy to the transactions between MGM Ventures and Majestic Medical, Royal Medical, and Medical MRI when, in fact, MGM Ventures was intentionally used as a tool to conceal Mullakandov's involvement in the day-to-day operations of Majestic Medical, Royal Medical, and Medical MRI.

718.    Consequently, Mullakandov's purposeful concealment of his controlling interests in Majestic Medical, Royal Medical, and Medical MRI allowed him to unlawfully control Majestic Medical, Royal Medical, and Medical MRI undetected.

719.    The documents created and filed with the State of New York related to Majestic Medical, Royal Medical, and Medical MRI deliberately omitted any reference to Mullakandov and MGM Ventures' involvement and thus gave no indication to Allstate or the general public that

Mullakandov in any way maintained a controlling interest in Majestic Medical, Royal Medical, and Medical MRI.

720.    At all relevant times, Lyons, as a duly licensed physician, was legally and ethically obligated to act honestly and with integrity.

721.    Many of these facts—particularly (a) Mullakandov's participation in and control over the operation and management of Majestic Medical, Royal Medical, and Medical MRI and (b) Majestic Medical, Royal Medical, and Medical MRI's unlawful splitting of professional medical fees and profits with Mullakandov—including, but not necessarily limited to, through transactions between Majestic Medical, Royal Medical, and Medical MRI and MGM Ventures— are not readily evident within the documents submitted to Allstate by Majestic Medical, Royal Medical, and Medical MRI and upon which Allstate relied in adjusting the claims and tendering payment in connection with each discrete patient claim.

722.    Claims under New York's No-Fault laws can only be submitted, and reimbursed, for services that were provided in accord with all applicable New York state licensing requirements.

723.    Based on the above-described conduct, every time that Mullakandov caused Majestic Medical, Royal Medical, and Medical MRI to submit No-Fault reimbursement demands to Allstate, Lyons and Mullakandov (and those individuals working under their control) necessarily certified that Majestic Medical, Royal Medical, and Medical MRI were eligible to be reimbursed under New York's No-Fault laws.

724.    The full extent of Lyons and Mullakandov's fraudulent and unlawful acts relative to their participation in the MGM Ventures enterprise—including (a) Mullakandov's participation in and control over the operation and management of Majestic Medical, Royal Medical, and

Medical MRI through the MGM Ventures enterprise, and (b) the unlawful channeling of Majestic Medical, Royal Medical, and Medical MRI's professional proceeds to Mullakandov—including, but not necessarily limited to, through transactions that were structured between Majestic Medical, Royal Medical, and Medical MRI and MGM Ventures—were not known to Allstate until shortly before it commenced this action.

### H.   JAVS VENTURES ENTERPRISE

725.   Javs Ventures was used by Byrne and DeGradi for the purpose of evading detection and preventing Allstate (or anyone else) from uncovering that Byrne and DeGradi operated, controlled, and profited from Lyons Medical, Instar Medical, and Star Medical.

726.   Such concealment was necessary to perpetuate and preserve the Defendants' fraudulent scheme, which hinged upon Byrne and DeGradi's unlawful exertion of control over the operation and management of Lyons Medical, Instar Medical, and Star Medical because, at all relevant times, Byrne and DeGradi were not licensed to practice medicine in the State of New York, or allowed to operate, control, or profit from a professional corporation organized to provide medical services.

727.   Therefore, because Lyons Medical, Instar Medical, and Star Medical were organized as physician-owned professional service corporations, Byrne and DeGradi were never lawfully entitled to participate in, or in any way direct, the operation and management of Lyons Medical, Instar Medical, and Star Medical.

728.   Therefore, to circumvent this prohibition, Byrne and DeGradi used Javs Ventures to unlawfully exert such control and siphon the professional fees and profits of Lyons Medical, Instar Medical, and Star Medical for their own personal use and benefit in violation of New York law.

729.   Overall, Byrne and DeGradi used Javs Ventures to serve as a vehicle to funnel and disguise payments from Lyons Medical, Instar Medical, and Star Medical as legitimate transactions when, in actuality, such payments were merely a means for Byrne and DeGradi to unlawfully share in Lyons Medical, Instar Medical, and Star Medical's professional medical fees and profits that they otherwise would not be eligible to receive.

730.   Therefore, Javs Ventures was used to lend an air of false legitimacy to the transactions between Javs Ventures and Lyons Medical, Instar Medical, and Star Medical when, in fact, Javs Ventures was intentionally used as a tool to conceal Byrne and DeGradi's involvement in the day-to-day operations of Lyons Medical, Instar Medical, and Star Medical.

731.   Consequently, Lyons, Feldmann, Byrne, and DeGradi's purposeful concealment of Byrne and DeGradi's controlling interests in Lyons Medical, Instar Medical, and Star Medical allowed Byrne and DeGradi to unlawfully control Lyons Medical, Instar Medical, and Star Medical undetected.

732.   The documents created and filed with the State of New York related to Lyons Medical, Instar Medical, and Star Medical deliberately omitted any reference to Byrne, DeGradi, and Javs Ventures' involvement and thus gave no indication to Allstate or the general public that Byrne and DeGradi in any way maintained a controlling interest in Lyons Medical, Instar Medical, and Star Medical.

733.   At all relevant times, Lyons and Feldmann, as duly licensed physicians, were legally and ethically obligated to act honestly and with integrity.

734.   Many of these facts—particularly (a) Byrne and DeGradi's participation in and control over the operation and management of Lyons Medical, Instar Medical, and Star Medical, and (b) Lyons Medical, Instar Medical, and Star Medical's unlawful splitting of professional

medical fees and profits with Byrne and DeGradi—including, but not necessarily limited to, through transactions between Lyons Medical, Instar Medical, and Star Medical and Javs Ventures—are not readily evident within the documents submitted to Allstate by Lyons Medical, Instar Medical, and Star Medical and upon which Allstate relied in adjusting the claims and tendering payment in connection with each discrete patient claim.

735.    Claims under New York's No-Fault laws can only be submitted, and reimbursed, for services that were provided in accord with all applicable New York state licensing requirements.

736.    Based on the above-described conduct, every time that Lyons, Feldmann, Byrne, and DeGradi caused Lyons Medical, Instar Medical, and Star Medical to submit No-Fault reimbursement demands to Allstate, Lyons, Feldmann, Byrne, and DeGradi (and those individuals working under their control) necessarily certified that Lyons Medical, Instar Medical, and Star Medical were eligible to be reimbursed under New York's No-Fault laws.

737.    The full extent of Byrne and DeGradi's fraudulent and unlawful acts relative to their participation in the Javs Ventures enterprise—including (a) Byrne and DeGradi's participation in and control over the operation and management of Lyons Medical, Instar Medical, and Star Medical through the Javs Ventures enterprise, and (b) the unlawful channeling of Lyons Medical, Instar Medical, and Star Medical's professional proceeds to Byrne and DeGradi—including, but not necessarily limited to, through transactions that were structured between Lyons Medical, Instar Medical, and Star Medical and Javs Ventures—were not known to Allstate until shortly before it commenced this action.

## VIII. ALLSTATE'S JUSTIFIABLE RELIANCE

738. Each claim submitted to Allstate by the PC Defendants was verified pursuant to Insurance Law § 403.

739. Lyons and Feldmann, as duly licensed physicians, were legally and ethically obligated to act honestly and with integrity.

740. To induce Allstate to promptly pay the PC Defendants' patient invoices, the Defendants submitted (or caused to be submitted) to Allstate NF-3 forms certifying that the PC Defendants were eligible to be reimbursed under New York's No-Fault Laws.

741. Further, to induce Allstate to promptly pay the fraudulent charges for diagnostic imaging services purportedly provided to patients of the PC Defendants, the Defendants hired attorneys to pursue collection of the fraudulent and/or non-compensable charges from Allstate. These attorneys routinely file time-consuming and expensive lawsuits and arbitration matters against Allstate.

742. Allstate is under statutory and contractual obligations to promptly and fairly process claims within 30 days. The facially valid documents submitted to Allstate in support of the fraudulent and/or non-compensable charges at issue, combined with the material misrepresentations described above, were designed to, and did, cause Allstate to justifiably rely on them.

743. The Defendants concealed from Allstate the truth regarding the PC Defendants' reimbursement eligibility under New York law.

744. In reasonable reliance on these misrepresentations, Allstate paid money to the PC Defendants to its detriment.

745.     Allstate would not have paid these monies had the Defendants provided true and accurate information about the PC Defendants' reimbursement eligibility under New York law, including the PC Defendants' No-Fault reimbursement eligibility under N.Y. Insurance Law § 5101, *et seq*.

746.     As a result, Allstate was caused to make No-Fault benefit payments totaling over $472,791.00 to the PC Defendants in reasonable reliance on the PC Defendants' false No-Fault claim reimbursement documentation, and their false representations regarding the PC Defendants' eligibility for reimbursement under New York's No-Fault Laws.

## IX.   **DAMAGES**

747.     The Defendants' pattern of fraudulent conduct injured Allstate in its business and property by reason of the aforesaid violations of state and federal law.  Although it is not necessary for Allstate to calculate damages with specificity at this stage in the litigation (whereas Allstate's damages continue to accrue), Allstate's injury includes, but is not limited to, compensatory damages for:

a.   Payments made to Majestic Medical in connection with first-party ("No-Fault") claims in excess of $44,072.71, the exact amount to be determined at trial.  The chart annexed as Exhibit 12, and incorporated herein as if set forth in its entirety, identifies Allstate's payments to Majestic Medical in connection with first-party ("No-Fault") claims determined to be fraudulent and not compensable as of the filing of this Complaint.

b.   Payments made to Lyons Medical in connection with first-party ("No-Fault") claims in excess of $67,551.95, the exact amount to be determined at trial.  The chart annexed as Exhibit 13, and incorporated herein as if set forth in its entirety, identifies Allstate's payments to Lyons Medical in connection with first-party ("No-Fault") claims determined to be fraudulent and not compensable as of the filing of this Complaint.

c.   Payments made to Instar Medical in connection with first-party ("No-Fault") claims in excess of $24,641.88, the exact amount to be determined at trial.  The chart annexed as Exhibit 14, and incorporated herein as if set forth in its entirety, identifies Allstate's payments to Instar Medical in connection with

first-party ("No-Fault") claims determined to be fraudulent and not compensable as of the filing of this Complaint.

d.  Payments made to Star Medical in connection with first-party ("No-Fault") claims in excess of $236,008.96, the exact amount to be determined at trial. The chart annexed as Exhibit 15, and incorporated herein as if set forth in its entirety, identifies Allstate's payments to Star Medical in connection with first-party ("No-Fault") claims determined to be fraudulent and not compensable as of the filing of this Complaint.

e.  Payments made to Royal Medical in connection with first-party ("No-Fault") claims in excess of $68,290.15, the exact amount to be determined at trial. The chart annexed as Exhibit 16, and incorporated herein as if set forth in its entirety, identifies Allstate's payments to Royal Medical in connection with first-party ("No-Fault") claims determined to be fraudulent and not compensable as of the filing of this Complaint.

f.  Payments made to Medical MRI in connection with first-party ("No-Fault") claims in excess of $32,225.47, the exact amount to be determined at trial. The chart annexed as Exhibit 17, and incorporated herein as if set forth in its entirety, identifies Allstate's payments to Medical MRI in connection with first-party ("No-Fault") claims determined to be fraudulent and not compensable as of the filing of this Complaint.

## X.    CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### MAJESTIC MEDICAL IMAGING, P.C. ENTERPRISE
### (Against John S. Lyons, M.D. a/k/a Jack Lyons, M.D., Gary Mullakandov, and MGM Ventures Inc)

748.    Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-747 as if set forth fully herein.

749.    In furtherance of their operation and management of Majestic Medical Imaging, P.C. ("Majestic Medical"), Defendants John S. Lyons, M.D. a/k/a Jack Lyons, M.D., Gary Mullakandov, and MGM Ventures Inc (collectively, "Count I Defendants") intentionally prepared and mailed (or caused to be prepared and mailed) false medical documentation in connection with Allstate insurance claims in furtherance of their scheme to defraud.

750.    The Count I Defendants employed one or more mailings to demand and/or receive payment from Allstate on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 4.

751.    Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

752.    Policies of insurance were delivered to insureds through the U.S. Mail.

753.    Payments made by Allstate to Majestic Medical were delivered through the U.S. Mail.

754.    As documented above, the Count I Defendants repeatedly and intentionally submitted, or caused to be submitted, NF-3 forms and other claim-related documentation to Allstate related to expenses and/or services that were purportedly performed at Majestic Medical for the purpose of collecting payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

755.    As a result of, and in reasonable reliance upon, the mailing and/or submission of these misleading documents and materially false representations, Allstate, by its agents and employees, issued drafts to Majestic Medical, for the benefit of one or more of the Count I Defendants, that would not otherwise have been paid.

756.    The Count I Defendants' pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents and other claim-related materials, each appearing legitimate on their face, also prevented Allstate from discovering this scheme for a long period of time, thus enabling the Count I Defendants to continue without being detected.

757. The facts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

758. By creating and then mailing to Allstate (or directing the creation and subsequent mailing to Allstate) of numerous fraudulent documents and other claim-related materials in an ongoing scheme, the Count I Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

759. The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to Majestic Medical for the benefit of the Count I Defendants.

760. Allstate is in the business of writing insurance and paying claims in the State of New York. Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

761. Majestic Medical constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

762. The Count I Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of the Majestic Medical enterprise through a pattern of racketeering activities.

763. Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count I Defendants' conduct.

764. The Count I Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

765. By virtue of the Count I Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted

by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT II**
**VIOLATION 18 U.S.C. § 1962(d)**
**MAJESTIC MEDICAL IMAGING, P.C. ENTERPRISE**
**(Against John S. Lyons, M.D. a/k/a Jack Lyons, M.D., Gary Mullakandov, and MGM Ventures Inc)**

766.    Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-747 as if set forth fully herein.

767.    Throughout their participation in the operation and management of Majestic Medical Imaging, P.C. ("Majestic Medical"), Defendants John S. Lyons, M.D. a/k/a Jack Lyons, M.D., Gary Mullakandov, and MGM Ventures Inc (collectively, "Count II Defendants") conspired with each other to violate 18 U.S.C. § 1962(c).

768.    The Count II Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of Majestic Medical by means of a pattern of racketeering activity, including numerous instances of mail fraud as set forth in Exhibit 4, and through the preparation and mailing of fraudulent documents and other claim-related documents, including NF-3 forms, to Allstate.

769.    The purpose of the conspiracy was to obtain No-Fault benefit payments from Allstate on behalf of Majestic Medical, even though Majestic Medical, as a result of the Count II Defendants' unlawful conduct, was not eligible to collect such No-Fault benefit payments.  The Count II Defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation of and mailing of documents and other claim-related materials, including NF-3 forms, containing misrepresentations and/or material omissions.

152

770.    Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the Count II Defendants' unlawful conduct described herein.

771.    By virtue of this violation of 18 U.S.C. § 1962(d), the Count II Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the Count II Defendants three times the damages sustained by reason of the claims submitted by the defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT III**
**VIOLATIONS OF 18 U.S.C. § 1962(c)**
**LYONS MEDICAL, P.C. ENTERPRISE**
**(Against John S. Lyons, M.D. a/k/a Jack Lyons, M.D.,**
**Jeffrey Byrne, Anthony DeGradi, and Javs Ventures Inc.)**

772.    Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-747 as if set forth fully herein.

773.    In furtherance of their operation and management of Lyons Medical, P.C. ("Lyons Medical"), Defendants John S. Lyons, M.D. a/k/a Jack Lyons, M.D., Jeffrey Byrne, Anthony DeGradi, and Javs Ventures Inc. (collectively, "Count III Defendants") intentionally prepared and mailed (or caused to be prepared and mailed) false medical documentation in connection with Allstate insurance claims in furtherance of their scheme to defraud.

774.    The Count III Defendants employed one or more mailings to demand and/or receive payment from Allstate on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 5.

775.   Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

776.   Policies of insurance were delivered to insureds through the U.S. Mail.

777.   Payments made by Allstate to Lyons Medical were delivered through the U.S. Mail.

778.   As documented above, the Count III Defendants repeatedly and intentionally submitted, or caused to be submitted, NF-3 forms and other claim-related documentation to Allstate related to expenses and/or services that were purportedly performed at Lyons Medical for the purpose of collecting payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

779.   As a result of, and in reasonable reliance upon, the mailing and/or submission of these misleading documents and materially false representations, Allstate, by its agents and employees, issued drafts to Lyons Medical, for the benefit of one or more of the Count III Defendants, that would not otherwise have been paid.

780.   The Count III Defendants' pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents and other claim-related materials, each appearing legitimate on their face, also prevented Allstate from discovering this scheme for a long period of time, thus enabling the Count III Defendants to continue without being detected.

781.   The facts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

782.   By creating and then mailing to Allstate (or directing the creation and subsequent mailing to Allstate) of numerous fraudulent documents and other claim-related materials in an

ongoing scheme, the Count III Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

783.    The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to Lyons Medical for the benefit of the Count III Defendants.

784.    Allstate is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

785.    Lyons Medical constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

786.    The Count III Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of the Lyons Medical enterprise through a pattern of racketeering activities.

787.    Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count III Defendants' conduct.

788.    The Count III Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

789.    By virtue of the Count III Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT IV**
**VIOLATION 18 U.S.C. § 1962(d)**
**LYONS MEDICAL, P.C. ENTERPRISE**
**(Against John S. Lyons, M.D. a/k/a Jack Lyons, M.D., Jeffrey Byrne,**
**Anthony DeGradi, and Javs Ventures Inc.)**

790.    Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-747 as if set forth fully herein.

791.    Throughout their participation in the operation and management of Lyons Medical, P.C. ("Lyons Medical"), Defendants John S. Lyons, M.D. a/k/a Jack Lyons, M.D., Jeffrey Byrne, Anthony DeGradi, and Javs Ventures Inc. (collectively, "Count IV Defendants") conspired with each other to violate 18 U.S.C. § 1962(c).

792.    The Count IV Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of Lyons Medical by means of a pattern of racketeering activity, including numerous instances of mail fraud as set forth in Exhibit 5, and through the preparation and mailing of fraudulent documents and other claim-related documents, including NF-3 forms, to Allstate.

793.    The purpose of the conspiracy was to obtain No-Fault benefit payments from Allstate on behalf of Lyons Medical, even though Lyons Medical, as a result of the Count VI Defendants' unlawful conduct, was not eligible to collect such No-Fault benefit payments.  The Count VI Defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation of and mailing of documents and other claim-related materials, including NF-3 forms, containing misrepresentations and/or material omissions.

794.    Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the Count IV Defendants' unlawful conduct described herein.

795.    By virtue of this violation of 18 U.S.C. § 1962(d), the Count IV Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the Count IV Defendants three times the damages sustained by reason of the claims submitted by the

defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT V**
**VIOLATIONS OF 18 U.S.C. § 1962(c)**
**INSTAR MEDICAL, P.C. ENTERPRISE**
**(Against Eric Feldmann, M.D., Jeffrey Byrne, Anthony DeGradi, and**
**Javs Ventures Inc.)**

796.    Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-747 as if set forth fully herein.

797.    In furtherance of their operation and management of Instar Medical, P.C. ("Instar Medical"), Defendants Eric Feldmann, M.D., Jeffrey Byrne, Anthony DeGradi, and Javs Ventures Inc. (collectively, "Count V Defendants") intentionally prepared and mailed (or caused to be prepared and mailed) false medical documentation in connection with Allstate insurance claims in furtherance of their scheme to defraud.

798.    The Count V Defendants employed one or more mailings to demand and/or receive payment from Allstate on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 6.

799.    Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

800.    Policies of insurance were delivered to insureds through the U.S. Mail.

801.    Payments made by Allstate to Instar Medical were delivered through the U.S. Mail.

802.    As documented above, the Count V Defendants repeatedly and intentionally submitted, or caused to be submitted, NF-3 forms and other claim-related documentation to Allstate related to expenses and/or services that were purportedly performed at Instar Medical for

157

the purpose of collecting payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

803.    As a result of, and in reasonable reliance upon, the mailing and/or submission of these misleading documents and materially false representations, Allstate, by its agents and employees, issued drafts to Instar Medical, for the benefit of one or more of the Count V Defendants, that would not otherwise have been paid.

804.    The Count V Defendants' pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents and other claim-related materials, each appearing legitimate on their face, also prevented Allstate from discovering this scheme for a long period of time, thus enabling the Count V Defendants to continue without being detected.

805.    The facts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

806.    By creating and then mailing to Allstate (or directing the creation and subsequent mailing to Allstate) of numerous fraudulent documents and other claim-related materials in an ongoing scheme, the Count V Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

807.    The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to Instar Medical for the benefit of the Count V Defendants.

808.    Allstate is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

809.    Instar Medical constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

810.    The Count V Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of the Instar Medical enterprise through a pattern of racketeering activities.

811.    Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count V Defendants' conduct.

812.    The Count V Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

813.    By virtue of the Count V Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT VI**
**VIOLATION 18 U.S.C. § 1962(d)**
**INSTAR MEDICAL, P.C. ENTERPRISE**
**(Against Eric Feldmann, M.D., Jeffrey Byrne, Anthony DeGradi, and**
**Javs Ventures Inc.)**

814.    Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-747 as if set forth fully herein.

815.    Throughout their participation in the operation and management of Instar Medical, P.C. ("Instar Medical"), Defendants Eric Feldmann, M.D., Jeffrey Byrne, Anthony DeGradi, and Javs Ventures Inc. (collectively, "Count VI Defendants") conspired with each other to violate 18 U.S.C. § 1962(c).

816.    The Count VI Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of Instar Medical by means of a pattern of racketeering activity, including numerous instances of mail fraud as set forth in Exhibit 6, and

through the preparation and mailing of fraudulent documents and other claim-related documents, including NF-3 forms, to Allstate.

817.    The purpose of the conspiracy was to obtain No-Fault benefit payments from Allstate on behalf of Instar Medical, even though Instar Medical, as a result of the Count VI Defendants' unlawful conduct, was not eligible to collect such No-Fault benefit payments.  The Count VI Defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation of and mailing of documents and other claim-related materials, including NF-3 forms, containing misrepresentations and/or material omissions.

818.    Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the Count VI Defendants' unlawful conduct described herein.

819.    By virtue of this violation of 18 U.S.C. § 1962(d), the Count VI Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the Count VI Defendants three times the damages sustained by reason of the claims submitted by the defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

### COUNT VII
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### STAR MEDICAL IMAGING, P.C. ENTERPRISE
### (Against John S. Lyons, M.D. a/k/a Jack Lyons, M.D., Jeffrey Byrne, Anthony DeGradi, and Javs Ventures Inc.)

820.    Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-747 as if set forth fully herein.

821.    In furtherance of their operation and management of Star Medical Imaging, P.C. ("Star Medical"), Defendants John S. Lyons, M.D. a/k/a Jack Lyons, M.D., Jeffrey Byrne,

Anthony DeGradi, and Javs Ventures Inc. (collectively, "Count VII Defendants") intentionally prepared and mailed (or caused to be prepared and mailed) false medical documentation in connection with Allstate insurance claims in furtherance of their scheme to defraud.

822.   The Count VII Defendants employed one or more mailings to demand and/or receive payment from Allstate on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 7.

823.   Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

824.   Policies of insurance were delivered to insureds through the U.S. Mail.

825.   Payments made by Allstate to Star Medical were delivered through the U.S. Mail.

826.   As documented above, the Count VII Defendants repeatedly and intentionally submitted, or caused to be submitted, NF-3 forms and other claim-related documentation to Allstate related to expenses and/or services that were purportedly performed at Star Medical for the purpose of collecting payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

827.   As a result of, and in reasonable reliance upon, the mailing and/or submission of these misleading documents and materially false representations, Allstate, by its agents and employees, issued drafts to Star Medical, for the benefit of one or more of the Count VII Defendants, that would not otherwise have been paid.

828.   The Count VII Defendants' pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents and other claim-related materials, each appearing

legitimate on their face, also prevented Allstate from discovering this scheme for a long period of time, thus enabling the Count VII Defendants to continue without being detected.

829.    The facts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

830.    By creating and then mailing to Allstate (or directing the creation and subsequent mailing to Allstate) of numerous fraudulent documents and other claim-related materials in an ongoing scheme, the Count VII Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

831.    The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to Star Medical for the benefit of the Count VII Defendants.

832.    Allstate is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

833.    Star Medical constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

834.    The Count VII Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of the Star Medical enterprise through a pattern of racketeering activities.

835.    Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count VII Defendants' conduct.

836.    The Count VII Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

837.    By virtue of the Count VII Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT VIII**
**VIOLATION 18 U.S.C. § 1962(d)**
**STAR MEDICAL IMAGING, P.C. ENTERPRISE**
**(Against John S. Lyons, M.D. a/k/a Jack Lyons, M.D., Jeffrey Byrne,**
**Anthony DeGradi, and Javs Ventures Inc.)**

838.    Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-747 as if set forth fully herein.

839.    Throughout their participation in the operation and management of Star Medical Imaging, P.C. ("Star Medical"), Defendants John S. Lyons, M.D. a/k/a Jack Lyons, M.D., Jeffrey Byrne, Anthony DeGradi, and Javs Ventures Inc. (collectively, "Count VIII Defendants") conspired with each other to violate 18 U.S.C. § 1962(c).

840.    The Count VIII Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of Star Medical by means of a pattern of racketeering activity, including numerous instances of mail fraud as set forth in Exhibit 7, and through the preparation and mailing of fraudulent documents and other claim-related documents, including NF-3 forms, to Allstate.

841.    The purpose of the conspiracy was to obtain No-Fault benefit payments from Allstate on behalf of Star Medical, even though Star Medical, as a result of the Count VIII Defendants' unlawful conduct, was not eligible to collect such No-Fault benefit payments.  The Count VIII Defendants were aware of this purpose and agreed to take steps to meet the

conspiracy's objectives, including the creation of and mailing of documents and other claim-related materials, including NF-3 forms, containing misrepresentations and/or material omissions.

842.     Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the Count VIII Defendants' unlawful conduct described herein.

843.     By virtue of this violation of 18 U.S.C. § 1962(d), the Count VIII Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the Count VIII Defendants three times the damages sustained by reason of the claims submitted by the defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

### COUNT IX
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### ROYAL MEDICAL IMAGING, P.C. ENTERPRISE
### (Against John S. Lyons, M.D. a/k/a Jack Lyons, M.D., Gary Mullakandov, and MGM Ventures Inc)

844.     Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-747 as if set forth fully herein.

845.     In furtherance of their operation and management of Royal Medical Imaging, P.C. ("Royal Medical"), Defendants John S. Lyons, M.D. a/k/a Jack Lyons, M.D., Gary Mullakandov, and MGM Ventures Inc (collectively, "Count IX Defendants") intentionally prepared and mailed (or caused to be prepared and mailed) false medical documentation in connection with Allstate insurance claims in furtherance of their scheme to defraud.

846.     The Count IX Defendants employed one or more mailings to demand and/or receive payment from Allstate on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 8.

847.    Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

848.    Policies of insurance were delivered to insureds through the U.S. Mail.

849.    Payments made by Allstate to Royal Medical were delivered through the U.S. Mail.

850.    As documented above, the Count IX Defendants repeatedly and intentionally submitted, or caused to be submitted, NF-3 forms and other claim-related documentation to Allstate related to expenses and/or services that were purportedly performed at Royal Medical for the purpose of collecting payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

851.    As a result of, and in reasonable reliance upon, the mailing and/or submission of these misleading documents and materially false representations, Allstate, by its agents and employees, issued drafts to Royal Medical, for the benefit of one or more of the Count IX Defendants, that would not otherwise have been paid.

852.    The Count IX Defendants' pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents and other claim-related materials, each appearing legitimate on their face, also prevented Allstate from discovering this scheme for a long period of time, thus enabling the Count IX Defendants to continue without being detected.

853.    The facts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

854.    By creating and then mailing to Allstate (or directing the creation and subsequent mailing to Allstate) of numerous fraudulent documents and other claim-related materials in an

ongoing scheme, the Count IX Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

855.    The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to Royal Medical for the benefit of the Count IX Defendants.

856.    Allstate is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

857.    Royal Medical constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

858.    The Count IX Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of the Royal Medical enterprise through a pattern of racketeering activities.

859.    Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count IX Defendants' conduct.

860.    The Count IX Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

861.    By virtue of the Count IX Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT X
### VIOLATION 18 U.S.C. § 1962(d)
### ROYAL MEDICAL IMAGING, P.C. ENTERPRISE
### (Against John S. Lyons, M.D. a/k/a Jack Lyons, M.D., Gary Mullakandov, and MGM Ventures Inc)

862.    Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-747 as if set forth fully herein.

863.    Throughout their participation in the operation and management of Royal Medical Imaging, P.C. ("Royal Medical"), Defendants John S. Lyons, M.D. a/k/a Jack Lyons, M.D., Gary Mullakandov, and MGM Ventures Inc (collectively, "Count X Defendants") conspired with each other to violate 18 U.S.C. § 1962(c).

864.    The Count X Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of Royal Medical by means of a pattern of racketeering activity, including numerous instances of mail fraud as set forth in Exhibit 8, and through the preparation and mailing of fraudulent documents and other claim-related documents, including NF-3 forms, to Allstate.

865.    The purpose of the conspiracy was to obtain No-Fault benefit payments from Allstate on behalf of Royal Medical, even though Royal Medical, as a result of the Count X Defendants' unlawful conduct, was not eligible to collect such No-Fault benefit payments.  The Count X Defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation of and mailing of documents and other claim-related materials, including NF-3 forms, containing misrepresentations and/or material omissions.

866.    Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the Count X Defendants' unlawful conduct described herein.

867.    By virtue of this violation of 18 U.S.C. § 1962(d), the Count X Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the Count X Defendants three times the damages sustained by reason of the claims submitted by the defendants,

and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

### COUNT XI
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### MEDICAL MRI, P.C. ENTERPRISE
### (Against John S. Lyons, M.D. a/k/a Jack Lyons, M.D., Gary Mullakandov, and MGM Ventures Inc)

868.    Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-747 as if set forth fully herein.

869.    In furtherance of their operation and management of Medical MRI, P.C. ("Medical MRI"), Defendants John S. Lyons, M.D. a/k/a Jack Lyons, M.D., Gary Mullakandov, and MGM Ventures Inc (collectively, "Count XI Defendants") intentionally prepared and mailed (or caused to be prepared and mailed) false medical documentation in connection with Allstate insurance claims in furtherance of their scheme to defraud.

870.    The Count XI Defendants employed one or more mailings to demand and/or receive payment from Allstate on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 9.

871.    Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

872.    Policies of insurance were delivered to insureds through the U.S. Mail.

873.    Payments made by Allstate to Medical MRI were delivered through the U.S. Mail.

874.    As documented above, the Count XI Defendants repeatedly and intentionally submitted, or caused to be submitted, NF-3 forms and other claim-related documentation to Allstate related to expenses and/or services that were purportedly performed at Medical MRI for

the purpose of collecting payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

875.   As a result of, and in reasonable reliance upon, the mailing and/or submission of these misleading documents and materially false representations, Allstate, by its agents and employees, issued drafts to Medical MRI, for the benefit of one or more of the Count XI Defendants, that would not otherwise have been paid.

876.   The Count XI Defendants' pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents and other claim-related materials, each appearing legitimate on their face, also prevented Allstate from discovering this scheme for a long period of time, thus enabling the Count XI Defendants to continue without being detected.

877.   The facts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

878.   By creating and then mailing to Allstate (or directing the creation and subsequent mailing to Allstate) of numerous fraudulent documents and other claim-related materials in an ongoing scheme, the Count XI Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

879.   The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to Medical MRI for the benefit of the Count XI Defendants.

880.   Allstate is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

881.   Medical MRI constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

882.    The Count XI Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of the Medical MRI enterprise through a pattern of racketeering activities.

883.    Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count XI Defendants' conduct.

884.    The Count XI Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

885.    By virtue of the Count XI Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XII
### VIOLATION 18 U.S.C. § 1962(d)
### MEDICAL MRI, P.C. ENTERPRISE
### (Against John S. Lyons, M.D. a/k/a Jack Lyons, M.D., Gary Mullakandov, and MGM Ventures Inc)

886.    Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-747 as if set forth fully herein.

887.    Throughout their participation in the operation and management of Medical MRI, P.C. ("Medical MRI"), Defendants John S. Lyons, M.D. a/k/a Jack Lyons, M.D., Gary Mullakandov, and MGM Ventures Inc (collectively, "Count XII Defendants") conspired with each other to violate 18 U.S.C. § 1962(c).

888.    The Count XII Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of Medical MRI by means of a pattern of racketeering activity, including numerous instances of mail fraud as set forth in Exhibit 9, and

through the preparation and mailing of fraudulent documents and other claim-related documents, including NF-3 forms, to Allstate.

889.    The purpose of the conspiracy was to obtain No-Fault benefit payments from Allstate on behalf of Medical MRI, even though Medical MRI, as a result of the Count XII Defendants' unlawful conduct, was not eligible to collect such No-Fault benefit payments.  The Count XII Defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation of and mailing of documents and other claim-related materials, including NF-3 forms, containing misrepresentations and/or material omissions.

890.    Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the Count XII Defendants' unlawful conduct described herein.

891.    By virtue of this violation of 18 U.S.C. § 1962(d), the Count XII Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the Count XII Defendants three times the damages sustained by reason of the claims submitted by the defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT XIII**
**VIOLATIONS OF 18 U.S.C. § 1962(c)**
**MGM VENTURES INC ENTERPRISE**
**(Against Majestic Medical Imaging, P.C., Royal Medical Imaging, P.C., Medical MRI, P.C., John S. Lyons, M.D. a/k/a Jack Lyons, M.D., and Gary Mullakandov)**

892.    Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-747 as if set forth fully herein.

893.    In furtherance of their operation and management of MGM Ventures Inc ("MGM Ventures"), Defendants Majestic Medical Imaging, P.C., Royal Medical Imaging, P.C., Medical

MRI, P.C., John S. Lyons, M.D. a/k/a Jack Lyons, M.D., and Gary Mullakandov (collectively, "Count XIII Defendants") intentionally prepared and mailed (or caused to be prepared and mailed) false medical documentation in connection with Allstate insurance claims in furtherance of their scheme to defraud.

894.    The Count XIII Defendants employed one or more mailings to demand and/or receive payment from Allstate on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 10.

895.    Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

896.    Policies of insurance were delivered to insureds through the U.S. Mail.

897.    Payments made by Allstate to Majestic Medical Imaging, P.C., Royal Medical Imaging, P.C., and Medical MRI, P.C.—the proceeds of which were, in part, diverted to MGM Ventures for the benefit of Gary Mullakandov—were delivered through the U.S. Mail.

898.    As documented above, the Count XIII Defendants repeatedly and intentionally submitted documentation to Allstate for medical expenses and/or services that were purportedly performed at Majestic Medical Imaging, P.C., Royal Medical Imaging, P.C., and Medical MRI, P.C. to collect payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

899.    The use of MGM Ventures' agreements with and relationships to Majestic Medical Imaging, P.C., Royal Medical Imaging, P.C., and Medical MRI, P.C. allowed Gary Mullakandov and MGM Ventures to exercise control over the operation and management of Majestic Medical Imaging, P.C., Royal Medical Imaging, P.C., and Medical MRI, P.C., and further permitted Gary

Mullakandov to share in the professional physician fees and profits collected by Majestic Medical Imaging, P.C., Royal Medical Imaging, P.C., and Medical MRI, P.C.

900.    The use of MGM Ventures to siphon the professional physician fees and profits from Majestic Medical Imaging, P.C., Royal Medical Imaging, P.C., and Medical MRI, P.C. to Gary Mullakandov for his own personal use and financial gain was unlawful.

901.    Overall, Majestic Medical Imaging, P.C., Royal Medical Imaging, P.C., and Medical MRI, P.C.'s relationship with MGM Ventures facilitated Gary Mullakandov's unlawful control over Majestic Medical Imaging, P.C., Royal Medical Imaging, P.C., and Medical MRI, P.C., and further rendered Majestic Medical Imaging, P.C., Royal Medical Imaging, P.C., and Medical MRI, P.C. ineligible to seek or collect No-Fault payments.

902.    When the Count XIII Defendants mailed (or caused the mailing of) NF-3 forms and other claim-related documents to Allstate seeking No-Fault reimbursement, the Count XIII Defendants materially misrepresented Majestic Medical Imaging, P.C., Royal Medical Imaging, P.C., and Medical MRI, P.C.'s No-Fault reimbursement eligibility under New York law.

903.    As a result of, and in reasonable reliance upon, the mailing and/or submission of these misleading documents and materially false representations, Allstate, by its agents and employees, issued drafts to Majestic Medical Imaging, P.C., Royal Medical Imaging, P.C., and Medical MRI, P.C., for the benefit of Gary Mullakandov, that would not otherwise have been paid.

904.    The Count XIII Defendants' pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents and other claim-related materials, each appearing legitimate on their face, also prevented Allstate from discovering this scheme for a long period of time, thus enabling the Count XIII Defendants to continue without being detected.

905.    The facts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

906.    By creating and then mailing to Allstate (or directing the creation and subsequent mailing to Allstate) of numerous fraudulent documents and other claim-related materials in an ongoing scheme, the Count XIII Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

907.    The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to Majestic Medical Imaging, P.C., Royal Medical Imaging, P.C., and Medical MRI, P.C. for the benefit of the Count XIII Defendants.

908.    The unlawful activities alleged in this case also had the direct effect of causing these funds, including professional physician fees and profits, to be channeled to MGM Ventures, and then from MGM Ventures to Gary Mullakandov for his own personal use and financial gain.

909.    Allstate is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

910.    MGM Ventures constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

911.    The Count XIII Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

912.    Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count XIII Defendants' conduct.

913.     The Count XIII Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

914.     By virtue of the Count XIII Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT XIV**
**VIOLATION 18 U.S.C. § 1962(d)**
**MGM VENTURES INC ENTERPRISE**
**(Against Majestic Medical Imaging, P.C., Royal Medical Imaging, P.C., Medical MRI, P.C., John S. Lyons, M.D. a/k/a Jack Lyons, M.D., and Gary Mullakandov)**

915.     Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-747 as if set forth fully herein.

916.     Through their participation in the operation and management of MGM Ventures Inc ("MGM Ventures"), Defendants Majestic Medical Imaging, P.C., Royal Medical Imaging, P.C., Medical MRI, P.C., John S. Lyons, M.D. a/k/a Jack Lyons, M.D., and Gary Mullakandov (collectively, "Count XIV Defendants") conspired with each other to violate 18 U.S.C. § 1962(c).

917.     The Count XIV Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of MGM Ventures by means of a pattern of racketeering activity through Majestic Medical Imaging, P.C., Royal Medical Imaging, P.C., and Medical MRI, P.C., including numerous instances of mail fraud as set forth in Exhibit 10, and through the preparation and mailing of fraudulent documents and other claim-related documents, including NF-3 forms, to Allstate.

918.     The purpose of the conspiracy was to obtain, for MGM Ventures' benefit, No-Fault payments from Allstate on behalf of Majestic Medical Imaging, P.C., Royal Medical Imaging,

P.C., and Medical MRI, P.C., even though Majestic Medical Imaging, P.C., as a result of the Count XIV Defendants' unlawful conduct, was not eligible to collect such No-Fault benefit payments.

919.    The purpose the conspiracy was also to cause professional physician fees and profits collected by Majestic Medical Imaging, P.C., Royal Medical Imaging, P.C., and Medical MRI, P.C. to be channeled to MGM Ventures for the benefit of Gary Mullakandov.

920.    The Count XIV Defendants' use of MGM Ventures to funnel professional physician fees and profits from Majestic Medical Imaging, P.C., Royal Medical Imaging, P.C., and Medical MRI, P.C. to Gary Mullakandov was unlawful, and allowed the Count XIV Defendants to exercise control over the operation and management of Majestic Medical Imaging, P.C., Royal Medical Imaging, P.C., and Medical MRI, P.C., and further permitted Gary Mullakandov to share in the professional physician fees and profits collected by Majestic Medical Imaging, P.C., Royal Medical Imaging, P.C., and Medical MRI, P.C.

921.    The Count XIV Defendants were aware of these purposes, and agreed to take steps to meet the conspiracy's objectives, including the creation of and mailing of documents and other claim-related materials, including NF-3 forms, containing misrepresentations and/or material omissions.

922.    Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the Count XIV Defendants' unlawful conduct described herein.

923.    By virtue of this violation of 18 U.S.C. § 1962(d), the Count XIV Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the Count XIV Defendants three times the damages sustained by reason of the claims submitted by the

Defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XV
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### JAVS VENTURES INC. ENTERPRISE
**(Against Lyons Medical, P.C., Instar Medical, P.C., Star Medical Imaging, P.C., John S. Lyons, M.D. a/k/a Jack Lyons, M.D., Eric Feldmann, M.D., Anthony DeGradi, and Jeffrey Byrne)**

924.    Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-747 as if set forth fully herein.

925.    In furtherance of their operation and management of Javs Ventures Inc. ("Javs Ventures"), Defendants Lyons Medical, P.C., Instar Medical, P.C., Star Medical Imaging, P.C., John S. Lyon, M.D. a/k/a Jack Lyons, M.D., Eric Feldmann, M.D., Anthony DeGradi, and Jeffrey Byrne (collectively, "Count XV Defendants") intentionally prepared and mailed (or caused to be prepared and mailed) false medical documentation in connection with Allstate insurance claims in furtherance of their scheme to defraud.

926.    The Count XV Defendants employed one or more mailings to demand and/or receive payment from Allstate on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 11.

927.    Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

928.    Policies of insurance were delivered to insureds through the U.S. Mail.

929.    Payments made by Allstate to Defendants Lyons Medical, P.C., Instar Medical, P.C., and Star Medical Imaging, P.C.—the proceeds of which were, in part, diverted to Javs

Ventures for the benefit of Anthony DeGradi and Jeffrey Byrne—were delivered through the U.S. Mail.

930.    As documented above, the Count XV Defendants repeatedly and intentionally submitted documentation to Allstate for medical expenses and/or services that were purportedly performed at Lyons Medical, P.C., Instar Medical, P.C., and Star Medical Imaging, P.C. to collect payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

931.    The use of Javs Ventures' agreements with and relationships to Lyons Medical, P.C., Instar Medical, P.C., and Star Medical Imaging, P.C. allowed Jeffrey Byrne and Anthony DeGradi to exercise control over the operation and management of Lyons Medical, P.C., Instar Medical, P.C., and Star Medical Imaging, P.C., and further permitted Jeffrey Byrne and Anthony DeGradi to share in the professional physician fees and profits collected by Lyons Medical, P.C., Instar Medical, P.C., and Star Medical Imaging, P.C.

932.    The use of Javs Ventures to siphon the professional physician fees and profits from Lyons Medical, P.C., Instar Medical, P.C., and Star Medical Imaging, P.C. to Jeffrey Byrne and Anthony DeGradi for their own personal use and financial gain was unlawful.

933.    Overall, Lyons Medical, P.C., Instar Medical, P.C., and Star Medical Imaging, P.C.'s relationships with Javs Ventures facilitated Jeffrey Byrne and Anthony DeGradi's unlawful control over Lyons Medical, P.C., Instar Medical, P.C., and Star Medical Imaging, P.C., and further rendered Lyons Medical, P.C., Instar Medical, P.C., and Star Medical Imaging, P.C. ineligible to seek or collect No-Fault payments.

934.    When the Count XV Defendants mailed (or caused the mailing of) NF-3 forms and other claim-related documents to Allstate seeking No-Fault reimbursement, the Count XV

Defendants materially misrepresented Lyons Medical, P.C., Instar Medical, P.C., and Star Medical Imaging, P.C.'s No-Fault reimbursement eligibility under New York law.

935.   As a result of, and in reasonable reliance upon, the mailing and/or submission of these misleading documents and materially false representations, Allstate, by its agents and employees, issued drafts to Lyons Medical, P.C., Instar Medical, P.C., and Star Medical Imaging, P.C., for the benefit of Jeffrey Byrne and Anthony DeGradi, that would not otherwise have been paid.

936.   The Count XV Defendants' pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents and other claim-related materials, each appearing legitimate on their face, also prevented Allstate from discovering this scheme for a long period of time, thus enabling the Count XV Defendants to continue without being detected.

937.   The facts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

938.   By creating and then mailing to Allstate (or directing the creation and subsequent mailing to Allstate) of numerous fraudulent documents and other claim-related materials in an ongoing scheme, the Count XV Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

939.   The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to Lyons Medical, P.C., Instar Medical, P.C., and Star Medical Imaging, P.C. for the benefit of the Count XV Defendants.

940.   The unlawful activities alleged in this case also had the direct effect of causing these funds, including professional physician fees and profits, to be channeled to Javs Ventures,

and then from Javs Ventures to Jeffrey Byrne and Anthony DeGradi for their own personal use and financial gain.

941.     Allstate is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

942.     Javs Ventures constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

943.     The Count XV Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

944.     Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count XV Defendants' conduct.

945.     The Count XV Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

946.     By virtue of the Count XV Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

<u>**COUNT XVI**</u>
**VIOLATION 18 U.S.C. § 1962(d)**
**JAVS VENTURES INC. ENTERPRISE**
**(Against Lyons Medical, P.C., Instar Medical, P.C., Star Medical Imaging, P.C., John S. Lyons, M.D. a/k/a Jack Lyons, M.D., Eric Feldmann, M.D., Anthony DeGradi, and Jeffrey Byrne)**

947.     Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-747 as if set forth fully herein.

948.     Through their participation in the operation and management of Javs Ventures Inc. ("Javs Ventures"), Defendants Lyons Medical, P.C., Instar Medical, P.C., Star Medical Imaging, P.C., John S. Lyon, M.D. a/k/a Jack Lyons, M.D., Eric Feldmann, M.D., Anthony DeGradi, and Jeffrey Byrne (collectively, "Count XVI Defendants") conspired with each other to violate 18 U.S.C. § 1962(c).

949.     The Count XVI Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of Javs Ventures by means of a pattern of racketeering activity through Lyons Medical, P.C., Instar Medical, P.C., and Star Medical Imaging, P.C., including numerous instances of mail fraud as set forth in Exhibit 11, and through the preparation and mailing of fraudulent documents and other claim-related documents, including NF-3 forms, to Allstate.

950.     The purpose of the conspiracy was to obtain, for Javs Ventures' benefit, No-Fault payments from Allstate on behalf of Lyons Medical, P.C., Instar Medical, P.C., and Star Medical Imaging, P.C., even though Lyons Medical, P.C., Instar Medical, P.C., and Star Medical Imaging, P.C., as a result of the Count XVI Defendants' unlawful conduct, were not eligible to collect such No-Fault benefit payments.

951.     The purpose the conspiracy was also to cause professional physician fees and profits collected by Lyons Medical, P.C., Instar Medical, P.C., and Star Medical Imaging, P.C. to be channeled to Javs Ventures for the benefit of Jeffrey Byrne and Anthony DeGradi.

952.     The Count XVI Defendants' use of Javs Ventures to funnel professional physician fees and profits from Lyons Medical, P.C., Instar Medical, P.C., and Star Medical Imaging, P.C. to Jeffrey Byrne and Anthony DeGradi was unlawful, and allowed the Count XVI Defendants to exercise control over the operation and management of Lyons Medical, P.C., Instar Medical, P.C.,

and Star Medical Imaging, P.C., and further permitted Jeffrey Byrne and Anthony DeGradi to share in the professional physician fees and profits collected by Lyons Medical, P.C., Instar Medical, P.C., and Star Medical Imaging, P.C.

953.     The Count XVI Defendants were aware of these purposes, and agreed to take steps to meet the conspiracy's objectives, including the creation of and mailing of documents and other claim-related materials, including NF-3 forms, containing misrepresentations and/or material omissions.

954.     Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the Count XVI Defendants' unlawful conduct described herein.

955.     By virtue of this violation of 18 U.S.C. § 1962(d), the Count XVI Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the Count XVI Defendants three times the damages sustained by reason of the claims submitted by the Defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XVII
## COMMON-LAW FRAUD
### (Against All Defendants)

956.     Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-747 as if set forth fully herein.

957.     The Defendants intentionally and knowingly made false and fraudulent statements of material fact to Allstate, and also concealed material facts from Allstate during the course of this scheme and in the course of their submission of bills seeking payment for medical services under New York's No-Fault laws.

958.   The false and fraudulent statements of material fact and acts of fraudulent concealment include: (a) in every claim, the representation that Majestic Medical Imaging, P.C., Lyons Medical, P.C., Instar Medical, P.C., Star Medical Imaging, P.C., Royal Medical Imaging, P.C., and Medical MRI, P.C. were properly licensed and therefore eligible to seek and collect No-Fault benefit payments under Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12) even though they were unlawfully owned and controlled by non-physicians, and (b) in every claim, the representation that Majestic Medical Imaging, P.C., Lyons Medical, P.C., Instar Medical, P.C., Star Medical Imaging, P.C., Royal Medical Imaging, P.C., and Medical MRI, P.C. were eligible to seek and collect No-Fault benefit payments directly from Allstate under Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12) for the diagnostic medical imaging services purportedly provided to Allstate claimants when, in fact, Majestic Medical Imaging, P.C., Lyons Medical, P.C., Instar Medical, P.C., Star Medical Imaging, P.C., Royal Medical Imaging, P.C., and Medical MRI, P.C. were not eligible to seek or collect No-Fault benefit payments for these services because they were (a) purposely designed to financially enrich one or more non-physician at the expense of patient care, (b) medically unnecessary and not clinically indicated, (c) purportedly performed pursuant to an unlawful referral arrangement, and/or (d) provided by an individual who was not employed by the PC Defendants, including, but not necessarily limited to, Majestic Medical, Star Medical, and Medical MRI.

959.   The Count XVII Defendants intentionally made the above-described false and fraudulent statements, and purposely concealed material facts for the purpose of inducing Allstate to pay charges submitted by (or on behalf of) Majestic Medical Imaging, P.C., Lyons Medical, P.C., Instar Medical, P.C., Star Medical Imaging, P.C., Royal Medical Imaging, P.C., and Medical MRI, P.C. that were not compensable under New York's No-Fault laws.

960.     Allstate reasonably relied, to its detriment, upon the Count XVII Defendants' material misrepresentations concerning Majestic Medical Imaging, P.C., Lyons Medical, P.C., Instar Medical, P.C., Star Medical Imaging, P.C., Royal Medical Imaging, P.C., and Medical MRI, P.C.'s eligibility to receive No-Fault reimbursement when making payments for medical services purportedly provided to patients through Majestic Medical Imaging, P.C., Lyons Medical, P.C., Instar Medical, P.C., Star Medical Imaging, P.C., Royal Medical Imaging, P.C., and Medical MRI, P.C.

961.     Allstate has been injured in its business and property by reason of the above-described conduct because Allstate has made No-Fault benefit payments totaling over $472,791.00 in connection with fraudulent bills submitted by the Count XVII Defendants through Majestic Medical Imaging, P.C., Lyons Medical, P.C., Instar Medical, P.C., Star Medical Imaging, P.C., Royal Medical Imaging, P.C., and Medical MRI, P.C.

## COUNT XVIII
## UNJUST ENRICHMENT
### (Against All Defendants)

962.     Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-747 as if set forth fully herein.

963.     As detailed above, the Defendants have engaged in improper, unlawful, and unjust acts, all to the harm and detriment of Allstate.

964.     The Count XVIII Defendants have each been enriched at Allstate's expense through their receipt of payments made by Allstate in connection with No-Fault benefit claims submitted by (or on behalf of) Majestic Medical Imaging, P.C., Lyons Medical, P.C., Instar Medical, P.C., Star Medical Imaging, P.C., Royal Medical Imaging, P.C., and Medical MRI, P.C.

965.    The payments received by the Count XVIII Defendants constituted a benefit that they willingly and voluntarily accepted despite their commission of improper, unlawful, and unjust acts in furtherance of this scheme.  The Count XVIII Defendants' retention of Allstate's payments violates fundamental principles of justice, equity and good conscience.

966.    By reason of the improper, unlawful, and unjust conduct described throughout this Complaint, the Count XVIII Defendants have been unjustly enriched in an amount totaling $472,791.00, the exact amount to be determined at trial.

**COUNT XIX**
**DECLARATORY RELIEF UNDER 28 U.S.C. § 2201**
**(Against Majestic Medical Imaging, P.C.)**

967.    Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-747 as if set forth fully herein.

968.    To be eligible to receive assigned No-Fault benefits, an assignee provider must adhere to all applicable New York statutes that grant the authority to provide medical services in New York.

969.    In view of its (a) illegal corporate structure, (b) unlawful control by one or more non-physician (i.e., Mullakandov), (c) unlawful sharing of professional physician fees with one or more non-physician (i.e., Mullakandov), (d) billing for diagnostic imaging services that were not medically necessary or clinically indicated, (e) billing for diagnostic imaging services ordered pursuant to an unlawful financial arrangement with the referring provider and/or clinic, (f) billing for diagnostic imaging services that were provided by independent contractors rather than an employee or owner of Majestic Medical Imaging, P.C., and (g) submission of charges in excess of the amounts permitted by the applicable Fee Schedule, Majestic Medical Imaging, P.C. has, at all relevant times, been operating in violation of one or more New York or local licensing

requirements necessary to provide professional medical services (including, but not limited to, New York Insurance Law, New York Education Law, and New York Business Corporation Law (and other statutory provisions)), and thus has no standing to seek or collect any No-Fault benefit payments from Allstate, including, but not limited to, No-Fault benefits that were assigned to Majestic Medical Imaging, P.C. by its patients.

970.    Majestic Medical Imaging, P.C. continues to submit assigned No-Fault claims to Allstate demanding payment, and other assigned No-Fault claims remain pending with Allstate.

971.    Majestic Medical Imaging, P.C. continues to challenge Allstate's prior claim denials.

972.    Majestic Medical Imaging, P.C. continues to commence litigation and arbitrations against Allstate seeking payment of No-Fault benefits allegedly due and owing.

973.    A justifiable controversy exists between Allstate and Majestic Medical Imaging, P.C. because Majestic Medical Imaging, P.C. rejects Allstate's ability to deny such claims.

974.    Allstate has no adequate remedy at law.

975.    Majestic Medical Imaging, P.C. will also continue to demand No-Fault benefits payments from Allstate absent a declaration by this Court that its activities are unlawful, and that Allstate has no obligation to pay the pending, previously-denied, and/or any future No-Fault claims submitted by Majestic Medical Imaging, P.C.

976.    Accordingly, Allstate requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Majestic Medical Imaging, P.C., at all relevant times, was (a) fraudulently incorporated, (b) unlawfully owned, operated, managed, and controlled by one or more non-physician, (c) engaged in billing for medically unnecessary diagnostic imaging services, (d) engaged in the unlawful sharing of fees derived from the provision of professional

186

physician services, (e) engaged in billing for diagnostic imaging services ordered pursuant to an unlawful financial arrangement with the referring provider and/or clinic, (f) engaged in billing for diagnostic imaging services that were provided by independent contractors rather than an employee or owner of Majestic Medical Imaging, P.C., and (g) engaged in the submission of fraudulent charges in excess of the amounts permissible under the applicable Fee Schedule, and thus has no standing to submit or receive assigned No-Fault benefits.

**COUNT XX**
**DECLARATORY RELIEF UNDER 28 U.S.C. § 2201**
**(Against Lyons Medical, P.C.)**

977.    Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-747 as if set forth fully herein.

978.    To be eligible to receive assigned No-Fault benefits, an assignee provider must adhere to all applicable New York statutes that grant the authority to provide medical services in New York.

979.    In view of its (a) illegal corporate structure, (b) unlawful control by one or more non-physician (i.e., Byrne and DeGradi), (c) unlawful sharing of professional physician fees with one or more non-physician (i.e., Byrne and DeGradi), (d) billing for diagnostic imaging services that were not medically necessary or clinically indicated, (e) billing for diagnostic imaging services ordered pursuant to an unlawful financial arrangement with the referring provider and/or clinic, and (f) submission of charges in excess of the amounts permitted by the applicable Fee Schedule, Lyons Medical, P.C. has, at all relevant times, been operating in violation of one or more New York or local licensing requirements necessary to provide professional medical services (including, but not limited to, New York Insurance Law, New York Education Law, and New York Business Corporation Law (and other statutory provisions)), and thus has no standing to seek or

187

collect any No-Fault benefit payments from Allstate, including, but not limited to, No-Fault benefits that were assigned to Lyons Medical, P.C. by its patients.

980.    Lyons Medical, P.C. continues to submit assigned No-Fault claims to Allstate demanding payment, and/or other assigned No-Fault claims remain pending with Allstate.

981.    Lyons Medical, P.C. continues to challenge Allstate's prior claim denials.

982.    A justifiable controversy exists between Allstate and Lyons Medical, P.C. because Lyons Medical, P.C. rejects Allstate's ability to deny such claims.

983.    Allstate has no adequate remedy at law.

984.    Lyons Medical, P.C. will also continue to demand No-Fault benefits payments from Allstate absent a declaration by this Court that its activities are unlawful, and that Allstate has no obligation to pay the pending, previously-denied, and/or any future No-Fault claims submitted by Lyons Medical, P.C.

985.    Accordingly, Allstate requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Lyons Medical, P.C., at all relevant times, was (a) fraudulently incorporated, (b) unlawfully owned, operated, managed, and controlled by one or more non-physician, (c) engaged in billing for medically unnecessary diagnostic imaging services, (d) engaged in the unlawful sharing of fees derived from the provision of professional physician services, (e) engaged in billing for diagnostic imaging services ordered pursuant to an unlawful financial arrangement with the referring provider and/or clinic, and (f) engaged in the submission of fraudulent charges in excess of the amounts permissible under the applicable Fee Schedule, and thus has no standing to submit or receive assigned No-Fault benefits.

## COUNT XXI
## DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
### (Against Instar Medical, P.C.)

986.    Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-747 as if set forth fully herein.

987.    To be eligible to receive assigned No-Fault benefits, an assignee provider must adhere to all applicable New York statutes that grant the authority to provide medical services in New York.

988.    In view of its (a) illegal corporate structure, (b) unlawful control by one or more non-physician (i.e., Byrne and DeGradi), (c) unlawful sharing of professional physician fees with one or more non-physician (i.e., Byrne and DeGradi), (d) billing for diagnostic imaging services that were not medically necessary or clinically indicated, (e) billing for diagnostic imaging services ordered pursuant to an unlawful financial arrangement with the referring provider and/or clinic, and (f) submission of charges in excess of the amounts permitted by the applicable Fee Schedule, Instar Medical, P.C. has, at all relevant times, been operating in violation of one or more New York or local licensing requirements necessary to provide professional medical services (including, but not limited to, New York Insurance Law, New York Education Law, and New York Business Corporation Law (and other statutory provisions)), and thus has no standing to seek or collect any No-Fault benefit payments from Allstate, including, but not limited to, No-Fault benefits that were assigned to Instar Medical, P.C. by its patients.

989.    Instar Medical, P.C. continues to submit assigned No-Fault claims to Allstate demanding payment, and other assigned No-Fault claims remain pending with Allstate.

990.    Instar Medical, P.C. continues to challenge Allstate's prior claim denials.

991.    A justifiable controversy exists between Allstate and Instar Medical, P.C. because Instar Medical, P.C. rejects Allstate's ability to deny such claims.

992.    Allstate has no adequate remedy at law.

993.    Instar Medical, P.C. will also continue to demand No-Fault benefits payments from Allstate absent a declaration by this Court that its activities are unlawful, and that Allstate has no obligation to pay the pending, previously-denied, and/or any future No-Fault claims submitted by Instar Medical, P.C.

994.    Accordingly, Allstate requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Instar Medical, P.C., at all relevant times, was (a) fraudulently incorporated, (b) unlawfully owned, operated, managed, and controlled by one or more non-physician, (c) engaged in billing for medically unnecessary diagnostic imaging services, (d) engaged in the unlawful sharing of fees derived from the provision of professional physician services, (e) engaged in billing for diagnostic imaging services ordered pursuant to an unlawful financial arrangement with the referring provider and/or clinic, and (f) engaged in the submission of fraudulent charges in excess of the amounts permissible under the applicable Fee Schedule, and thus has no standing to submit or receive assigned No-Fault benefits.

## COUNT XXII
### DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
### (Against Star Medical Imaging, P.C.)

995.    Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-747 as if set forth fully herein.

996.    To be eligible to receive assigned No-Fault benefits, an assignee provider must adhere to all applicable New York statutes that grant the authority to provide medical services in New York.

997.   In view of its (a) illegal corporate structure, (b) unlawful control by one or more non-physician (i.e., Byrne and DeGradi), (c) unlawful sharing of professional physician fees with one or more non-physician (i.e., Byrne and DeGradi), (d) billing for diagnostic imaging services that were not medically necessary or clinically indicated, (e) billing for diagnostic imaging services ordered pursuant to an unlawful financial arrangement with the referring provider and/or clinic, (f) billing for diagnostic imaging services that were provided by independent contractors rather than an employee or owner of Star Medical Imaging, P.C., and (g) submission of charges in excess of the amounts permitted by the applicable Fee Schedule, Star Medical Imaging, P.C. has, at all relevant times, been operating in violation of one or more New York or local licensing requirements necessary to provide professional medical services (including, but not limited to, New York Insurance Law, New York Education Law, and New York Business Corporation Law (and other statutory provisions)), and thus has no standing to seek or collect any No-Fault benefit payments from Allstate, including, but not limited to, No-Fault benefits that were assigned to Star Medical Imaging, P.C. by its patients.

998.   Star Medical Imaging, P.C. continues to submit assigned No-Fault claims to Allstate demanding payment, and other assigned No-Fault claims remain pending with Allstate.

999.   Star Medical Imaging, P.C. continues to challenge Allstate's prior claim denials.

1000.   Star Medical Imaging, P.C. continues to commence litigation and arbitrations against Allstate seeking payment of No-Fault benefits allegedly due and owing.

1001.   A justifiable controversy exists between Allstate and Star Medical Imaging, P.C. because Star Medical Imaging, P.C. rejects Allstate's ability to deny such claims.

1002.   Allstate has no adequate remedy at law.

1003.   Star Medical Imaging, P.C. will also continue to demand No-Fault benefits payments from Allstate absent a declaration by this Court that its activities are unlawful, and that Allstate has no obligation to pay the pending, previously-denied, and/or any future No-Fault claims submitted by Star Medical Imaging, P.C.

1004.   Accordingly, Allstate requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Star Medical Imaging, P.C., at all relevant times, was (a) fraudulently incorporated, (b) unlawfully owned, operated, managed, and controlled by one or more non-physician, (c) engaged in billing for medically unnecessary diagnostic imaging services, (d) engaged in the unlawful sharing of fees derived from the provision of professional physician services, (e) engaged in billing for diagnostic imaging services ordered pursuant to an unlawful financial arrangement with the referring provider and/or clinic, (f) engaged in billing for diagnostic imaging services that were provided by independent contractors rather than an employee or owner of Star Medical Imaging, P.C., and (g) engaged in the submission of fraudulent charges in excess of the amounts permissible under the applicable Fee Schedule, and thus has no standing to submit or receive assigned No-Fault benefits.

## COUNT XXIII
### DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
### (Against Royal Medical Imaging, P.C.)

1005.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-747 as if set forth fully herein.

1006.   To be eligible to receive assigned No-Fault benefits, an assignee provider must adhere to all applicable New York statutes that grant the authority to provide medical services in New York.

1007.   In view of its (a) illegal corporate structure, (b) unlawful control by one or more non-physician (i.e., Mullakandov), (c) unlawful sharing of professional physician fees with one or more non-physician (i.e., Mullakandov), (d) billing for diagnostic imaging services that were not medically necessary or clinically indicated, (e) billing for diagnostic imaging services ordered pursuant to an unlawful financial arrangement with the referring provider and/or clinic, and (f) submission of charges in excess of the amounts permitted by the applicable Fee Schedule, Royal Medical Imaging, P.C. has, at all relevant times, been operating in violation of one or more New York or local licensing requirements necessary to provide professional medical services (including, but not limited to, New York Insurance Law, New York Education Law, and New York Business Corporation Law (and other statutory provisions)), and thus has no standing to seek or collect any No-Fault benefit payments from Allstate, including, but not limited to, No-Fault benefits that were assigned to Royal Medical Imaging, P.C. by its patients.

1008.   Royal Medical Imaging, P.C. continues to submit assigned No-Fault claims to Allstate demanding payment, and other assigned No-Fault claims remain pending with Allstate.

1009.   Royal Medical Imaging, P.C. continues to challenge Allstate's prior claim denials.

1010.   Royal Medical Imaging, P.C. continues to commence litigation against Allstate seeking payment of No-Fault benefits allegedly due and owing.

1011.   A justifiable controversy exists between Allstate and Royal Medical Imaging, P.C. because Royal Medical Imaging, P.C. rejects Allstate's ability to deny such claims.

1012.   Allstate has no adequate remedy at law.

1013.   Royal Medical Imaging, P.C. will also continue to demand No-Fault benefits payments from Allstate absent a declaration by this Court that its activities are unlawful, and that

Allstate has no obligation to pay the pending, previously-denied, and/or any future No-Fault claims submitted by Royal Medical Imaging, P.C.

1014.   Accordingly, Allstate requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Royal Medical Imaging, P.C., at all relevant times, was (a) fraudulently incorporated, (b) unlawfully owned, operated, managed, and controlled by one or more non-physician, (c) engaged in billing for medically unnecessary diagnostic imaging services, (d) engaged in the unlawful sharing of fees derived from the provision of professional physician services, (e) engaged in billing for diagnostic imaging services ordered pursuant to an unlawful financial arrangement with the referring provider and/or clinic, and (f) engaged in the submission of fraudulent charges in excess of the amounts permissible under the applicable Fee Schedule, and thus has no standing to submit or receive assigned No-Fault benefits.

## COUNT XXIV
## DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
### (Against Medical MRI, P.C.)

1015.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-747 as if set forth fully herein.

1016.   To be eligible to receive assigned No-Fault benefits, an assignee provider must adhere to all applicable New York statutes that grant the authority to provide medical services in New York.

1017.   In view of its (a) illegal corporate structure, (b) unlawful control by one or more non-physician (i.e., Mullakandov), (c) unlawful sharing of professional physician fees with one or more non-physician (i.e., Mullakandov), (d) billing for diagnostic imaging services that were not medically necessary or clinically indicated, (e) billing for diagnostic imaging services ordered pursuant to an unlawful financial arrangement with the referring provider and/or clinic, (f) billing

for diagnostic imaging services that were provided by independent contractors rather than an employee or owner of Medical MRI, P.C., and (f) submission of charges in excess of the amounts permitted by the applicable Fee Schedule, Medical MRI, P.C. has, at all relevant times, been operating in violation of one or more New York or local licensing requirements necessary to provide professional medical services (including, but not limited to, New York Insurance Law, New York Education Law, and New York Business Corporation Law (and other statutory provisions)), and thus has no standing to seek or collect any No-Fault benefit payments from Allstate, including, but not limited to, No-Fault benefits that were assigned to Medical MRI, P.C. by its patients.

1018.   Medical MRI, P.C. continues to submit assigned No-Fault claims to Allstate demanding payment, and other assigned No-Fault claims remain pending with Allstate.

1019.   Medical MRI, P.C. continues to challenge Allstate's prior claim denials.

1020.   Medical MRI, P.C. continues to commence litigation and arbitrations against Allstate seeking payment of No-Fault benefits allegedly due and owing.

1021.   A justifiable controversy exists between Allstate and Medical MRI, P.C. because Medical MRI, P.C. rejects Allstate's ability to deny such claims.

1022.   Allstate has no adequate remedy at law.

1023.   Medical MRI, P.C. will also continue to demand No-Fault benefits payments from Allstate absent a declaration by this Court that its activities are unlawful, and that Allstate has no obligation to pay the pending, previously-denied, and/or any future No-Fault claims submitted by Medical MRI, P.C.

1024.   Accordingly, Allstate requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Medical MRI, P.C., at all relevant times, was (a)

fraudulently incorporated, (b) unlawfully owned, operated, managed, and controlled by one or more non-physician, (c) engaged in billing for medically unnecessary diagnostic imaging services, (d) engaged in the unlawful sharing of fees derived from the provision of professional physician services, (e) engaged in billing for diagnostic imaging services ordered pursuant to an unlawful financial arrangement with the referring provider and/or clinic, (f) engaged in billing for diagnostic imaging services that were provided by independent contractors rather than an employee or owner of Medical MRI, P.C., and (g) engaged in the submission of fraudulent charges in excess of the amounts permissible under the applicable Fee Schedule, and thus has no standing to submit or receive assigned No-Fault benefits.

## XI.   **DEMAND FOR RELIEF**

### **COUNT I**
### **VIOLATIONS OF 18 U.S.C. § 1962(c)**
### **MAJESTIC MEDICAL IMAGING, P.C. ENTERPRISE**
### **(Against John S. Lyons, M.D. a/k/a Jack Lyons, M.D., Gary Mullakandov, and MGM Ventures Inc)**

(a)    AWARD Allstate's actual and consequential damages to be established at trial;

(b)    AWARD Allstate treble damages, interests, costs and reasonable attorneys' fees;

(c)    GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)    GRANT all other relief this Court deems just.

### **COUNT II**
### **VIOLATION 18 U.S.C. § 1962(d)**
### **MAJESTIC MEDICAL IMAGING, P.C. ENTERPRISE**
### **(Against John S. Lyons, M.D. a/k/a Jack Lyons, M.D., Gary Mullakandov, and MGM Ventures Inc)**

(a)    AWARD Allstate's actual and consequential damages to be established at trial;

(b)    AWARD Allstate treble damages, interests, costs and reasonable attorneys' fees;

(c)    GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)    GRANT all other relief this Court deems just.

## COUNT III
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### LYONS MEDICAL, P.C. ENTERPRISE
**(Against John S. Lyons, M.D. a/k/a Jack Lyons, M.D., Jeffrey Byrne, Anthony DeGradi, and Javs Ventures Inc.)**

(a)    AWARD Allstate's actual and consequential damages to be established at trial;

(b)    AWARD Allstate treble damages, interests, costs and reasonable attorneys' fees;

(c)    GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)    GRANT all other relief this Court deems just.

## COUNT IV
### VIOLATION 18 U.S.C. § 1962(d)
### LYONS MEDICAL, P.C. ENTERPRISE
**(Against John S. Lyons, M.D. a/k/a Jack Lyons, M.D., Jeffrey Byrne, Anthony DeGradi, and Javs Ventures Inc.)**

(a)    AWARD Allstate's actual and consequential damages to be established at trial;

(b)    AWARD Allstate treble damages, interests, costs and reasonable attorneys' fees;

(c)    GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)    GRANT all other relief this Court deems just.

## COUNT V
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### INSTAR MEDICAL, P.C. ENTERPRISE
**(Against Eric Feldmann, M.D., Jeffrey Byrne, Anthony DeGradi, and Javs Ventures Inc.)**

(a)    AWARD Allstate's actual and consequential damages to be established at trial;

(b)     AWARD Allstate treble damages, interests, costs and reasonable attorneys' fees;

(c)     GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT VI
### VIOLATION 18 U.S.C. § 1962(d)
### INSTAR MEDICAL, P.C. ENTERPRISE
### (Against Eric Feldmann, M.D., Jeffrey Byrne, Anthony DeGradi, and Javs Ventures Inc.)

(a)     AWARD Allstate's actual and consequential damages to be established at trial;

(b)     AWARD Allstate treble damages, interests, costs and reasonable attorneys' fees;

(c)     GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT VII
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### STAR MEDICAL IMAGING, P.C. ENTERPRISE
### (Against John S. Lyons, M.D. a/k/a Jack Lyons, M.D., Jeffrey Byrne, Anthony DeGradi, and Javs Ventures Inc.)

(a)     AWARD Allstate's actual and consequential damages to be established at trial;

(b)     AWARD Allstate treble damages, interests, costs and reasonable attorneys' fees;

(c)     GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT VIII
### VIOLATION 18 U.S.C. § 1962(d)
### STAR MEDICAL IMAGING, P.C. ENTERPRISE
### (Against John S. Lyons, M.D. a/k/a Jack Lyons, M.D., Jeffrey Byrne, Anthony DeGradi, and Javs Ventures Inc.)

(a)     AWARD Allstate's actual and consequential damages to be established at trial;

(b)     AWARD Allstate treble damages, interests, costs and reasonable attorneys' fees;

(c)     GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT IX
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### ROYAL MEDICAL IMAGING, P.C. ENTERPRISE
### (Against John S. Lyons, M.D. a/k/a Jack Lyons, M.D., Gary Mullakandov, and MGM Ventures Inc)

(a)     AWARD Allstate's actual and consequential damages to be established at trial;

(b)     AWARD Allstate treble damages, interests, costs and reasonable attorneys' fees;

(c)     GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT X
### VIOLATION 18 U.S.C. § 1962(d)
### ROYAL MEDICAL IMAGING, P.C. ENTERPRISE
### (Against John S. Lyons, M.D. a/k/a Jack Lyons, M.D., Gary Mullakandov, and MGM Ventures Inc)

(a)     AWARD Allstate's actual and consequential damages to be established at trial;

(b)     AWARD Allstate treble damages, interests, costs and reasonable attorneys' fees;

(c)     GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT XI
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### MEDICAL MRI, P.C. ENTERPRISE
### (Against John S. Lyons, M.D. a/k/a Jack Lyons, M.D., Gary Mullakandov, and MGM Ventures Inc)

(a)    AWARD Allstate's actual and consequential damages to be established at trial;

(b)    AWARD Allstate treble damages, interests, costs and reasonable attorneys' fees;

(c)    GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)    GRANT all other relief this Court deems just.

## COUNT XII
### VIOLATIONS OF 18 U.S.C. § 1962(d)
### MEDICAL MRI, P.C. ENTERPRISE
### (Against John S. Lyons, M.D. a/k/a Jack Lyons, M.D., Gary Mullakandov, and MGM Ventures Inc)

(a)    AWARD Allstate's actual and consequential damages to be established at trial;

(b)    AWARD Allstate treble damages, interests, costs and reasonable attorneys' fees;

(c)    GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)    GRANT all other relief this Court deems just.

## COUNT XIII
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### MGM VENTURES INC ENTERPRISE
### (Against Majestic Medical Imaging, P.C., Royal Medical Imaging, P.C., Medical MRI, P.C., John S. Lyons, M.D. a/k/a Jack Lyons, M.D., and Gary Mullakandov)

(a)    AWARD Allstate's actual and consequential damages to be established at trial;

(b)    AWARD Allstate treble damages, interests, costs and reasonable attorneys' fees;

(c)    GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT XIV
### VIOLATION 18 U.S.C. § 1962(d)
### MGM VENTURES INC ENTERPRISE
### (Against Majestic Medical Imaging, P.C., Royal Medical Imaging, P.C., Medical MRI, P.C., John S. Lyons, M.D. a/k/a Jack Lyons, M.D., and Gary Mullakandov)

(a)     AWARD Allstate's actual and consequential damages to be established at trial;

(b)     AWARD Allstate treble damages, interests, costs and reasonable attorneys' fees;

(c)     GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT XV
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### JAVS VENTURES INC. ENTERPRISE
### (Against Lyons Medical, P.C., Instar Medical, P.C., Star Medical Imaging, P.C., John S. Lyons, M.D. a/k/a Jack Lyons, M.D., Eric Feldmann, M.D., Anthony DeGradi, and Jeffrey Byrne)

(a)     AWARD Allstate's actual and consequential damages to be established at trial;

(b)     AWARD Allstate treble damages, interests, costs and reasonable attorneys' fees;

(c)     GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT XVI
### VIOLATION 18 U.S.C. § 1962(d)
### JAVS VENTURES INC. ENTERPRISE
### (Against Lyons Medical, P.C., Instar Medical, P.C., Star Medical Imaging, P.C., John S. Lyons, M.D. a/k/a Jack Lyons, M.D., Eric Feldmann, M.D., Anthony DeGradi, and Jeffrey Byrne)

(a)     AWARD Allstate's actual and consequential damages to be established at trial;

(b)     AWARD Allstate treble damages, interests, costs and reasonable attorneys' fees;

(c)     GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct

alleged in the Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT XVII
## COMMON-LAW FRAUD
### (Against All Defendants)

(a)     AWARD Allstate its actual damages in an amount to be determined at trial;

(b)     AWARD Allstate its costs, including, but not limited to, investigative costs incurred in the

detection of Defendants' illegal conduct;

(c)     AWARD Allstate its costs in defending No-Fault suits filed by Defendants seeking

payment of false and fraudulent invoices; and

(d)     GRANT any other relief this Court deems just.

## COUNT XVIII
## UNJUST ENRICHMENT
### (Against All Defendants)

(a)     AWARD Allstate's actual and consequential damages to be determined at trial;

(b)     GRANT any other relief this Court deems just.

## COUNT XIX
## DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
### (Against Majestic Medical Imaging, P.C.)

(a)     DECLARE that Majestic Medical Imaging, P.C., at all relevant times, has been operated

in violation of at least one New York state and/or local licensing requirement necessary to

provide and bill for professional physician services in New York;

 (b)     DECLARE that Majestic Medical Imaging, P.C.'s activities are unlawful;

(c)     DECLARE that Allstate has no obligation to pay pending, previously-denied and/or future

No-Fault insurance claims submitted by Majestic Medical Imaging, P.C.; and

(d)    GRANT all other relief this Court deems just and appropriate.

## COUNT XX
### DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
### (Against Lyons Medical, P.C.)

(a)    DECLARE that Lyons Medical, P.C., at all relevant times, has been operated in violation of at least one New York state and/or local licensing requirement necessary to provide and bill for professional physician services in New York;

(b)    DECLARE that Lyons Medical, P.C.'s activities are unlawful;

(c)    DECLARE that Allstate has no obligation to pay pending, previously-denied and/or future No-Fault insurance claims submitted by Lyons Medical, P.C.; and

(d)    GRANT all other relief this Court deems just and appropriate.

## COUNT XXI
### DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
### (Against Instar Medical, P.C.)

(a)    DECLARE that Instar Medical, P.C., at all relevant times, has been operated in violation of at least one New York state and/or local licensing requirement necessary to provide and bill for professional physician services in New York;

(b)    DECLARE that Instar Medical, P.C.'s activities are unlawful;

(c)    DECLARE that Allstate has no obligation to pay pending, previously-denied and/or future No-Fault insurance claims submitted by Instar Medical, P.C.; and

(d)    GRANT all other relief this Court deems just and appropriate.

## COUNT XXII
### DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
### (Against Star Medical Imaging, P.C.)

(a)   DECLARE that Star Medical Imaging, P.C., at all relevant times, has been operated in violation of at least one New York state and/or local licensing requirement necessary to provide and bill for professional physician services in New York;

(b)   DECLARE that Star Medical Imaging, P.C.'s activities are unlawful;

(c)   DECLARE that Allstate has no obligation to pay pending, previously-denied and/or future No-Fault insurance claims submitted by Star Medical Imaging, P.C.; and

(d)   GRANT all other relief this Court deems just and appropriate.

## COUNT XXIII
### DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
### (Against Royal Medical Imaging, P.C.)

(a)   DECLARE that Royal Medical Imaging, P.C., at all relevant times, has been operated in violation of at least one New York state and/or local licensing requirement necessary to provide and bill for professional physician services in New York;

(b)   DECLARE that Royal Medical Imaging, P.C.'s activities are unlawful;

(c)   DECLARE that Allstate has no obligation to pay pending, previously-denied and/or future No-Fault insurance claims submitted by Royal Medical Imaging, P.C.; and

(d)   GRANT all other relief this Court deems just and appropriate.

## COUNT XXIV
### DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
### (Against Medical MRI, P.C.)

(a)   DECLARE that Medical MRI, P.C., at all relevant times, has been operated in violation of at least one New York state and/or local licensing requirement necessary to provide and bill for professional physician services in New York;

(b)      DECLARE that Medical MRI, P.C.'s activities are unlawful;

(c)      DECLARE that Allstate has no obligation to pay pending, previously-denied and/or future No-Fault insurance claims submitted by Medical MRI, P.C.; and

(d)      GRANT all other relief this Court deems just and appropriate.

## JURY TRIAL DEMAND

The plaintiffs demand a trial by jury on all claims.

KING, TILDEN, MCETTRICK & BRINK, P.C.

*/s/ Michael W. Whitcher*

_____
Richard D. King, Jr. (RK8381)
rking@ktmpc.com
Nathan A. Tilden (NT0571)
ntilden@ktmpc.com
Michael W. Whitcher (MW7455)
mwhitcher@ktmpc.com
100 Ring Road West, Suite 211
Garden City, NY 11530
(347) 710-0050

Attorneys for the Plaintiffs,
*Allstate Insurance Company,*
*Allstate Indemnity Company,*
*Allstate Property & Casualty Insurance Company,*
*and Allstate Fire and Casualty Insurance Company*

Dated: October 27, 2023